**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| DANIEL ABRAMOV, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>FLUENCE ENERGY, INC., JULIAN NEBREDA, and AHMED PASHA,<br><br>   Defendants. | Case No.: 1:25-cv-00444-PTG-IDD<br><br>Hon. Patricia Tolliver Giles |
| IGOR KRAMER, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>v.<br><br>FLUENCE ENERGY, INC., MANUEL PÉREZ DUBUC, DENNIS FEHR, JULIAN NEBREDA, MANAVENDRA SIAL, AES CORPORATION, and AES GRID STABILITY, LLC,<br><br>   Defendants. | Case No.: 1:25-cv-00634-PTG-IDD<br><br>Hon. Patricia Tolliver Giles |

**MEMORANDUM OF LAW IN SUPPORT OF CATHY J. SNYDER'S**
**MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD**
**PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

**Page**

I.    FACTUAL BACKGROUND .................................................................................. 2

II.   PROCEDURAL HISTORY .................................................................................. 5

III.  ARGUMENT ....................................................................................................... 5

    A.    Consolidation of the Actions Is Appropriate ................................................... 5

    B.    Appointing Movant as Lead Plaintiff Is Appropriate ....................................... 6

        1.    Movant Filed a Timely Motion. .................................................................. 8

        2.    Movant Has the Largest Financial Interest in the Relief Sought. .............. 8

        3.    Movant Satisfies the Relevant Requirements of Rule 23. ......................... 9

            a.    Movant's Claims Are Typical. ........................................................... 9

            b.    Movant Is An Adequate Representative. ........................................... 10

    C.    Approving Lead Plaintiff's Choice of Counsel Is Appropriate. .................................. 11

IV.   CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Top Ships Inc.,*
  324 F. Supp. 3d 335 (E.D.N.Y. 2018) ........................................................................... 7, 9

*In re Cendant Corp.*,
  264 F.3d 201 (3d Cir. 2001)........................................................................................... 11

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.,*
  269 F.R.D. 291 (S.D.N.Y. 2010) ................................................................................... 10

*In re E-Trade Financial Corp.* Securuties Litigation,
  No. 07-cv-8538 (S.D.N.Y.).............................................................................................. 11

*Ferrari v. Impath, Inc.,*
  2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004) .............................................. 6

*Ford v. VOXX Int'l Corp.,*
  No. 14-cv-4183-JS-AYS, 2015 U.S. Dist. LEXIS 92705 (E.D.N.Y. Apr. 13, 2015)............... 9

*In re Gentiva Sec. Litig.,*
  281 F.R.D. 108 (E.D.N.Y. 2012) .................................................................................... 9

*Gurevitch v. KeyCorp, et al.*,
  No. 1:23-cv-01520 (N.D. Ohio Dec. 26, 2023) ............................................................ 12

*Jaramillo v. Dish Network Corporation, et al.*,
  No. 1:23-cv-00734 (D. Colo. Aug. 16, 2023)................................................................ 12

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990).......................................................................................... 6

*Kuriakose v. Fed. Home Loan Mortg. Co.,*
  No. 1:08-cv-7281-JFK, 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) ........................ 10

*Martin v. BioXcel Therapeutics, Inc. et al.,*
  No. 3:23-cv-00915 (D. Conn. Oct. 4, 2023) .................................................................. 12

*Martingano v. Am. Int'l Grp., Inc.,*
  Nos. 06-cv-1625-JG-JMA, 2006 U.S. Dist. LEXIS 47855 (E.D.N.Y. July 11, 2006)............. 6

*Petersen v. Stem, Inc. et. al.,*
  No. 3-23-cv-02329 (N.D. Cal. Aug 22, 2023)................................................................ 12

*Rensin, Trustee of the Rensin Joint Trust v. United States Cellular Corporation, et al.*,
  No. 1:23-cv-02764 (N.D. Ill. July 11, 2023) ................................................................. 12

ii

*Solomon v. Peloton Interactive, Inc. et al.,*
    No. 1:23-cv-04279 (E.D.N.Y. Sept 7, 2023) ............................................................... 12

*In re Tesla Inc. Securities Litigation,*
    No. 3:18-cv-4865 (N.D. Cal.) ..................................................................................... 11

*Thant v. Rain Oncology Inc. et al.,*
    5:23-cv-03518 (N.D. Cal. Nov. 1, 2023) .................................................................... 12

*Thant v. Veru, Inc. et al.,*
    No. 1:22-cv-23960 (S.D. Fla. July 27, 2023)............................................................... 12

*In re U.S. Steel Securities Litigation,*
    No. 2:17-579-CB (W.D. Pa.) ....................................................................................... 11

*Villanueva v. Proterra Inc. et al.,*
    No. 5:23-cv-03519 (N.D. Cal. Oct. 23, 2023) ............................................................ 12

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.,*
    No. 10-cv-00864-SLT, 2011 U.S. Dist. LEXIS 88552 (E.D.N.Y. May 31, 2011)................. 10

*Weltz v. Lee,*
    199 F.R.D. 129 (S.D.N.Y. 2001) ................................................................................... 6

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................ *passim*

**Rules**

FED. R. CIV. P. 23............................................................................................... 1, 7, 9, 10

Fed. R. Civ. P. 42(a) ....................................................................................................... 6

Cathy J. Snyder ("Movant") respectfully submits this memorandum of law in support of her motion ("Motion") to appoint her as lead plaintiff and approve her selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel pursuant to Section 21D of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), on behalf of all those who purchased, or otherwise acquired, Fluence Energy, Inc. ("Fluence" or the "Company") common stock between October 28, 2021 and February 10, 2025, inclusive (the "Class" who purchased during the "Class Period")[1], concerning claims under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5), against Defendants Fluence, Julian Nebreda ("Nebreda"), Ahmed Pasha ("Pasha"), Manuel Pérez Dubuc ("Dubuc"), Dennis Fehr ("Fehr"), Manavendra Sial ("Sial"), AES Corporation ("AES Corp."), and AES Grid Stability, LLC ("AES Grid Stability") (collectively, "Defendants").

Pursuant to the PSLRA, the person or group of persons with the largest financial interest in the relief sought by the Class who also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure are presumed to be the "most adequate" plaintiff—*i.e.*, the plaintiff most capable of adequately representing the interests of Class members. The PSLRA provides that the Court shall appoint the most adequate movant as lead plaintiff. Movant believes that she is the

---

[1] The action entitled *Abramov v. Fluence Energy, Inc., et. al.,* No. 1:25-cv-00444-PTG-IDD (the "*Abramov* Action") defines the Class Period as November 29, 2023 through February 10, 2025, inclusive. The action styled *Kramer v. Fluence Energy, Inc., et al.,* No. 1:25-cv-00634-PTG-IDD (the "*Kramer* Action") defines the Class Period as October 28, 2021 through February 10, 2025, inclusive. Movant adopts the most-inclusive Class Period defined in the *Kramer* Action, which is appropriate at this stage of the litigation. *See e.g. Ferreira v. Funko, Inc.,* No. 2:20-cv-02319-VAP-PJWx, 2020 U.S. Dist. LEXIS 106515, at *3 n.2 (C.D. Cal. June 11, 2020); *Hom v. Vale, S.A.,* Nos. 1:15-cv-9539-GHW, et. al., 2016 U.S. Dist. LEXIS 28863, at *10 (S.D.N.Y. Mar. 7, 2016) ("[T]he Court finds that the use of the longer, more inclusive class period is proper . . . because the longer class period encompasses more potential class members and damages.").

"most adequate" movant, as defined by the PSLRA, and should be appointed lead plaintiff based on the substantial financial losses she suffered as a result of defendants' wrongful conduct as alleged in this litigation. Moreover, Movant satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as her claims are typical of other Class members' claims and she will fairly and adequately represent the interests of the Class. In addition, Movant's selection of Levi & Korsinsky as Lead Counsel should be approved because the firm has substantial experience in securities class action litigation and the experience and resources to efficiently prosecute the Actions.

I.    FACTUAL BACKGROUND[2]

Fluence, through its subsidiaries, offers energy storage products and solutions, delivery services, recurring operational and maintenance services, and digital applications and solutions for energy storage and other power assets. ¶ 2. The Company represents that it has established relationships with third-party regional manufacturers for the fabrication, manufacture, assembly and integration of its proprietary battery energy storage systems. *Id.*

Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material facts, including that: (1) Fluence's relationship with its founders and largest sources of revenue, Siemens AG and The AES Corporation, was poised to decline; (2) Siemens Energy, Siemens AG's U.S. affiliate, had accused the Company of engineering failures and fraud; (3) Fluence's margins and revenue growth were inflated as Siemens and AES were moving to divest; and (4) based on the foregoing, Defendants lacked a reasonable basis for their

---

[2] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*Abramov* Complaint") filed in the *Abramov* Action. Citations to "*Kramer* ¶ __" are to paragraphs of the Class Action Complaint (the "*Kramer* Complaint") filed in the *Kramer* Action. Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *Abramov* and *Kramer* Complaints. The facts set forth in the *Abramov* and *Kramer* Complaints are incorporated herein by reference.

positive statements related to Fluence's battery energy storage business, as well as related financial results, growth, and prospects. ¶ 3.

On December 20, 2023, *Energy Storage News* published a news article revealing that Fluence's work on the Diablo project suffered from a "litany of 'defects, deficiencies, and failures.'" *Kramer* ¶ 83. The article detailed the numerous alleged defects and failures that plagued Fluence's work. *Id.* The *Energy News Storage* article further revealed that Fluence had completed the Diablo project approximately eight months past the contracted delivery date and that Fluence had failed to address and resolve related warranty claims on the defective work. *Id.*

As the market reacted to these disclosures, the price of Fluence Class A common stock fell from $27.22 per share on December 19, 2023 to $23.01 per share on December 20, 2023, or approximately 15%, on above-average trading volume of more than 10 million shares traded. *Kramer* ¶ 84.

On February 22, 2024, Blue Orca Capital issued a report revealing that Siemens and AES had been divesting their interest in Fluence and that Siemens Energy, the U.S. affiliate of Siemens, filed a lawsuit in November 2023 accusing Fluence of misrepresentations, breach of contract, and fraud. ¶ 4. The Blue Orca report also revealed that while Fluence appeared to steadily move towards generating positive earnings, much of its sales and earnings growth were the result of aggressive revenue pull-forwards and selectively applied earnings adjustments. *Id.* As a result, Fluence's reported revenues were revealed to be unreliable and facing a sharp decline as a result of the diminishing support from Siemens and AES. *Id.*

On this news, the price of Fluence common stock dropped by $2.28 per share, or 13%, from a closing price of $17.01 per share on February 21, 2024 to $14.73 per share on February 22, 2024. ¶ 5.

Then on November 25, 2024, Fluence issued a press release providing the Company's financial results for its fourth fiscal quarter and full year 2024 ("4Q24 Release"). *Kramer* ¶ 94. The 4Q24 Release issued annual revenue guidance for fiscal 2025 of approximately $3.6 billion to $4.4 billion, representing year-over-year growth of approximately 48% at the midpoint of the range. *Id.* The 4Q24 Release revealed that only 65% of Fluence's fiscal 2025 revenue guidance (at the midpoint) was "covered by the Company's current backlog," indicating that Fluence did not have sufficient work contracted and would need to secure additional new orders to meet its revenue targets. *Id.* During the corresponding conference call held the following day, Fluence's then-CFO Ahmed Pasha further revealed that Fluence's fiscal 2025 revenue would be "back-end loaded," with the Company recognizing approximately 80% of all revenues during the second half of fiscal 2025, while only 20% of its annual revenue would be recognized in the first half of fiscal 2025. *Id.*

In response to this news, the price of Fluence Class A common stock declined from $23.50 per share on November 25, 2024 to $18.37 per share on November 27, 2024, a decline of approximately 22% over a two-day trading period, on above-average trading volume. *Kramer* ¶ 95.

Then, on February 10, 2025, Fluence issued a press release announcing its financial results for the first quarter of its fiscal year 2025. ¶ 7. Fluence reported a net loss of $57 million, or $0.32 per share, compared to a loss of $25.6 million, or $0.14 per share, for the same period in the prior year, with revenues falling 49% year-over-year to $186.8 million. *Id.* For fiscal year 2025, Fluence lowered its revenue guidance to a range of $3.1 billion to $3.7 billion, from its prior outlook of $3.6 billion to $4.4 billion, and stated "[w]e have experienced customer-driven delays in signing certain contracts that, coupled with competitive pressures, result in the need to lower our fiscal

4

year 2025 outlook." *Id.*

As the market digested this news, the price of Fluence stock dropped 46.44%, or $6.07 per share, to close at $7.00 per share on February 11, 2025. ¶ 8.

Overall on this news, the price of Fluence Class A common stock plummeted from $13.07 per share on February 10, 2025 to $6.18 per share on February 13, 2025, a more than 52% decline over a three-day trading period, on above-average trading volume. *Kramer* ¶ 97.

## II.    PROCEDURAL HISTORY

Pending before this Court is the above-captioned *Abramov* Action against the Defendants. Plaintiff Daniel Abramov ("Abramov") commenced the first-filed action on March 11, 2025. On that same day, counsel acting on Abramov's behalf published a notice on *Globe Newswire* announcing that a securities class action had been initiated against the Defendants. *See* Exhibit C ("Press Release") to the Declaration of Elizabeth K. Tripodi in Support of Movant's Motion ("Tripodi Decl.").

On April 15, 2025, a substantially similar action was filed against Fluence in this Court, the *Kramer* Action. Movant has requested consolidation of the *Abramov* and *Kramer* Actions.

## III.    ARGUMENT

### A.    Consolidation of the Actions Is Appropriate

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter have been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered. 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id*.

Under the Federal Rules of Civil Procedure, consolidation is appropriate when the actions

5

involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). "[C]ourts have taken the view that considerations of judicial economy favor consolidation." *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)). Consolidation is particularly appropriate in securities class action litigation. *See Martingano v. Am. Int'l Grp., Inc.,* Nos. 06-cv-1625-JG-JMA, 2006 U.S. Dist. LEXIS 47855, at *3-5 (E.D.N.Y. July 11, 2006) (citing *Ferrari v. Impath, Inc.,* 2004 U.S. Dist. LEXIS 13898, at *2 (S.D.N.Y. July 15, 2004)) ("In securities class action cases…courts have deemed consolidation particularly appropriate where the actions are based on the same public statements and reports, if there are common questions of law and fact and [if] the defendant will not be prejudiced…" (citation and quotations omitted)); Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements.

The Actions present similar factual and legal issues, as they all involve the same subject matter and are based on the same wrongful course of conduct. The Actions name substantially the same parties as defendants. Because they arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) is appropriate. *See Celotex Corp.*, 899 F.2d at 1285.

### B.    Appointing Movant as Lead Plaintiff Is Appropriate

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the

6

Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" — *i.e.*, the plaintiffs most capable of adequately representing the interests of the Class — is the class member or group of class members that:

> (aa) has either filed the complaint or made a motion in response to a notice. . .

> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

The presumption "may be rebutted only upon proof by a purported member of the plaintiff class that the presumptively most adequate plaintiff—

> (aa) will not fairly and adequately protect the interest of the class; or

> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Movant satisfies the forgoing criteria and has complied with all of the PSLRA's requirements to be appointed lead plaintiff. Movant has, to the best of her knowledge, the largest financial interest in this litigation—having lost $104,503.67 as a result of her transactions and meets the relevant requirements of Federal Rule of Civil Procedure 23. *See* Loss Chart, Ex. B to Tripodi Decl. In addition, Movant is not aware of any unique defenses that Defendants could raise against her that would render her inadequate to represent the Class. Accordingly, Movant respectfully submits that she should be appointed as lead plaintiff. *See Brady v. Top Ships Inc.,* 324 F. Supp. 3d 335, 350 (E.D.N.Y. 2018).

### 1.    Movant Filed a Timely Motion.

On March 11, 2025, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), counsel for Plaintiff published the Press Release on *Globe Newswire*—a widely circulated national business-oriented wire service—announcing that a securities class action had been filed against defendants herein and advising purchasers of Fluence common stock that they had 60 days from the publication of the March 11, 2025 notice to file a motion to be appointed as lead plaintiff. *See* Tripodi Decl., Ex. C.

Movant timely filed his motion within the 60-day period following publication of the March 11, 2025 Press Release and submitted herewith a sworn certification attaching her transactions in Fluence common stock and attesting that she is willing to serve as representative of the Class. *See* PSLRA Certification, Ex. A to Tripodi Decl. By making a timely motion in response to a PSLRA notice, Movant satisfies the first PSLRA requirement to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa).

### 2.    Movant Has the Largest Financial Interest in the Relief Sought.

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). At the time of this filing, Movant believes that she has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and, accordingly, is presumed to be the "most adequate plaintiff."

Movant acquired Fluence common stock at prices alleged to have been artificially inflated by Defendants' materially false and misleading statements and was injured thereby. As a result of Defendants' false statements, Movant suffered an approximate loss of $104,503.67. *See* Tripodi Decl., Ex. B. Movant is unaware of any other Class member claiming a larger financial interest in

this matter that has filed a motion for appointment as lead plaintiff. Consequently, Movant believes that she has the "largest financial interest in the relief sought by the Class." Thus, Movant satisfies the second PSLRA requirement—the largest financial interest—and should be appointed as lead plaintiff for the Class. *See Top Ships,* 324 F. Supp. 3d at 350.

### 3. Movant Satisfies the Relevant Requirements of Rule 23.

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

FED. R. CIV. P. 23(a).

In making its determination that a lead plaintiff candidate satisfies the requirements of Rule 23, typicality and adequacy are the only provisions of Rule 23 that are to be considered. *Ford v. VOXX Int'l Corp.,* No. 14-cv-4183-JS-AYS, 2015 U.S. Dist. LEXIS 92705, at *6 (E.D.N.Y. Apr. 13, 2015) (citing *In re Gentiva Sec. Litig.,* 281 F.R.D. 108, 112 (E.D.N.Y. 2012)). At the lead plaintiff stage of the litigation, Movant need only make a preliminary showing that she satisfies Rule 23's typicality and adequacy requirements. *Id.* at *6.

### a. Movant's Claims Are Typical.

The Rule 23(a) typicality requirement is satisfied when a lead plaintiff's claims arise from the same event, practice, or course of conduct that gives rise to other class members' claims, and lead plaintiff's claims are based on the same legal theory. *See Kuriakose v. Fed. Home Loan Mortg.*

9

*Co.,* No. 1:08-cv-7281-JFK, 2008 WL 4974839, at \*5 (S.D.N.Y. Nov. 24, 2008); Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id.*

Movant's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that Defendants' material misstatements and omissions concerning Fluence's business, operational and financial results violated the federal securities laws. Movant, like all members of the Class, purchased or otherwise acquired Fluence common stock during the Class Period. *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-cv-00864-SLT, 2011 U.S. Dist. LEXIS 88552, at \*12 (E.D.N.Y. May 31, 2011) (typicality satisfied where movants purchased stock at artificially inflated prices "and suffered damages as a result"). Accordingly, Movant's interests and claims are "typical" of the interests and claims of the Class.

### b.    Movant Is An Adequate Representative.

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.,* 269 F.R.D. 291, 297 (S.D.N.Y. 2010). Movant has demonstrated her adequacy by retaining competent and experienced counsel, Levi & Korsinsky, with the resources and expertise to efficiently prosecute the Actions, and Movant's financial losses ensure that she has sufficient incentive to ensure the vigorous advocacy of the Actions. *See* Tripodi Decl., Ex. B. Movant is not aware that any conflict exists between her claims and those asserted on behalf of the Class.

Moreover, Movant considers herself to be a sophisticated investor, having been investing in the stock market for 40 years. She resides in Redington Shores, Florida, and possesses a high

school diploma with continuing education. Movant is currently retired, but prior to that she was employed as Vice President, Energy & Environment, Government Relations, Lockheed Martin Corporation. Further, Movant has experience overseeing attorneys, as she has hired attorneys for creating a trust. Therefore, Movant will prosecute the Actions vigorously on behalf of the Class. *See* Tripodi Decl., Ex. D, Movant's Declaration in support of her motion.

Accordingly, Movant meets the adequacy requirement of Rule 23.

### C.      Approving Lead Plaintiff's Choice of Counsel Is Appropriate.

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp.*, 264 F.3d 201, 274 (3d Cir. 2001). Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Movant has selected Levi & Korsinsky to pursue this litigation on her behalf and has retained the firm as the Class' Lead Counsel in the event she is appointed as lead plaintiff. Levi & Korsinsky possesses adequate experience in securities litigation and has successfully prosecuted numerous securities class actions on behalf of injured investors, as reflected by the Firm Résumé attached to the Tripodi Decl. as Ex. E. Moreover, Levi & Korsinsky has often been appointed as lead counsel in similar actions across the country arising under the federal securities laws on behalf of investors. As lead counsel in *In re U.S. Steel Securities Litigation,* No. 2:17-579-CB (W.D. Pa.), Levi & Korsinsky secured a $40 million recovery on behalf of investors in the securities of U.S. Steel. The firm also secured a $79 million recovery on behalf of E-Trade investors in *In re E-Trade Financial Corp.* Securities Litigation, No. 07-cv-8538 (S.D.N.Y.). Levi & Korsinsky also has trial experience relating to *In re Tesla Inc. Securities Litigation,* No. 3:18-cv-4865 (N.D. Cal.), representing Tesla investors who were harmed by Elon Musk's "funding secured" tweet from

11

August 7, 2018. *Id*. In the last year alone, Levi & Korsinsky has been appointed lead or co-lead counsel in a number of actions in this Circuit and across the Country including *Thant v. Rain Oncology Inc. et al.*, 5:23-cv-03518 (N.D. Cal. Nov. 1, 2023); *Jaramillo v. Dish Network Corporation, et al.*, No. 1:23-cv-00734 (D. Colo. Aug. 16, 2023); *Villanueva v. Proterra Inc. et al.,* No. 5:23-cv-03519 (N.D. Cal. Oct. 23, 2023); *Martin v. BioXcel Therapeutics, Inc. et al.,* No. 3:23-cv-00915 (D. Conn. Oct. 4, 2023); *Rensin, Trustee of the Rensin Joint Trust v. United States Cellular Corporation, et al.*, No. 1:23-cv-02764 (N.D. Ill. July 11, 2023); *Petersen v. Stem, Inc. et al.,* No. 3-23-cv-02329 (N.D. Cal. Aug 22, 2023); *Solomon v. Peloton Interactive, Inc. et al.,* No. 1:23-cv-04279 (E.D.N.Y. Sept 7, 2023); *Gurevitch v. KeyCorp, et al.*, No. 1:23-cv-01520 (N.D. Ohio Dec. 26, 2023); *Thant v. Veru, Inc. et al.,* No. 1:22-cv-23960 (S.D. Fla. July 27, 2023). Thus, the Court may rest assured that by granting Movant's motion, the Class will receive the highest caliber of legal representation possible.

## IV.    CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant her Motion and enter an Order: (1) consolidating the Actions, (2) appointing Movant as Lead Plaintiff, (3) approving her selection of Levi & Korsinsky as Lead Counsel for the Class, and (4) granting such other relief as the Court may deem just and proper.

Dated: May 12, 2025                          Respectfully Submitted,

                                             **LEVI & KORSINSKY, LLP**

                                             By: /s/ *Elizabeth K. Tripodi*
                                                 Elizabeth K. Tripodi (VA Bar #73483)
                                                 **LEVI & KORSINSKY, LLP**
                                                 1101 Vermont Ave., NW, Suite 800
                                                 Washington, DC 20005
                                                 Tel: (202) 524-4290

Fax: (202) 333-2121
Email: etripodi@zlk.com

Adam M. Apton (*pro hac vice* forthcoming)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Movant and [Proposed]*
*Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I, Elizabeth K. Tripodi, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this 12th day of May, 2025.

/s/ *Elizabeth K. Tripodi*
Elizabeth K. Tripodi