UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| DANIEL ABRAMOV, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLUENCE ENERGY, INC., JULIAN NEBREDA, and AHMED PASHA,<br><br>Defendants. | Case No.  1:25-cv-00444-PTG-IDD |
| IGOR KRAMER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FLUENCE ENERGY, INC., MANUEL PÉREZ DUBUC, DENNIS FEHR, JULIAN NEBREDA, MANAVENDRA SIAL, AES CORPORATION, and AES GRID STABILITY, LLC,<br><br>Defendants. | Case No.  1:25-cv-00634-PTG-IDD |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF KAI CHEN FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT.......................................................................................................................... 10

    I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL
          PURPOSES.............................................................................................................. 10

    II.    CHEN SHOULD BE APPOINTED LEAD PLAINTIFF .................................... 11

          A.    Chen Is Willing to Serve as Class Representative and Has Timely Filed
                This Motion to Be Appointed Lead Plaintiff. .......................................... 12

          B.    Chen Has the "Largest Financial Interest.".............................................. 13

          C.    Chen Otherwise Satisfies the Requirements of Rule 23. .......................... 14

          D.    Chen Will Fairly and Adequately Represent the Interests of the Class
                and Is Not Subject to Unique Defenses. ................................................... 16

    III.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
          APPROVED .............................................................................................................. 16

CONCLUSION....................................................................................................................... 18

i

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Bousso v. Spire Glob., Inc.*,
    No. 1:24-CV-01458-MSN-WEF, 2024 WL 4873311 (E.D. Va. Nov. 21, 2024) .................. 13

*Chamblee v. Terraform Power, Inc.*,
    No. PX 16-981, 2016 WL 4039178 (D. Md. July 28, 2016) ......................................... 14, 15

*Hirtenstein v. Cempra, Inc.*,
    Nos. 1:16cv1303 *et al.*, 2017 WL 2874588 (M.D.N.C. July 5, 2017) .................................. 14

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .............................................................................................. 13, 14

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ...................... 13

*In re Microstrategy Sec. Litig.*,
    110 F. Supp. 2d 427 (E.D. Va. 2000) ............................................................................. 11, 16

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...................................................................................... 13

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    219 F.R.D. 343 (D. Md. 2003) .............................................................................................. 14

*Johnson v. Pozen, Inc.*,
    No. 1:07CV599, 2008 WL 474334 (M.D.N.C. Feb. 15, 2008) ....................................... 14, 15

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) .......................................................................................... 17

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) .................................................. 13

*Palm Tran, Inc. - Amalgamated Transit Union Loc. 1577 Pension Plan v. Emergent
Biosolutions Inc.*,
    No. PWG-21-1189, 2021 WL 6072812 (D. Md. Dec. 23, 2021) .......................................... 13

*Rice v. Genworth Fin. Inc.*,
    No. 3:17cv59, 2017 WL 3699859 (E.D. Va. Aug. 25, 2017) ............................................... 15

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986) ............................................................................................. 15

*Tchatchou v. India Globalization Cap., Inc.*,
    No. 8:18-CV-03396-PWG, 2019 WL 1004591 (D. Md. Feb. 28, 2019) .............................. 13

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)....................................................................................17

**Statutes**

Private Securities Litigation Reform Act of 1995 ...............................................................*passim*

Securities Exchange Act of 1934.......................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23.............................................................................................................*passim*

Fed. R. Civ. P. 42....................................................................................................... 1, 11

Rule 10b-5.................................................................................................................... 11

Kai Chen ("Chen") respectfully submits this memorandum of law in support of his motion pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Chen as Lead Plaintiff on behalf of a class (the "Class") consisting of all those who purchased, or otherwise acquired, Fluence Energy, Inc. ("Fluence" or the "Company") common stock between October 28, 2021 and February 10, 2025, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and The Kaplan Law Firm ("Kaplan Law") as Liaison Counsel for the Class.[1]

## PRELIMINARY STATEMENT

The complaints in the Related Actions allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. Fluence investors, including Chen, incurred significant losses following the disclosures of the alleged fraud, which caused Fluence's stock price to fall sharply, damaging Chen and other Fluence investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact. Here, the Related Actions are putative class actions alleging violations of the Exchange

---

[1] On March 11, 2025, the first-filed of the Related Actions was filed in this District, styled *Abramov v. Fluence Energy, Inc. et al.*, No. 1:25-cv-00444 (the "*Abramov* Action"), alleging a class period including all those who purchased, or otherwise acquired, Fluence common stock during the period from November 29, 2023 to February 10, 2025, inclusive. *See* Dkt. No. 1 ¶ 1. Then, on April 15, 2025, a second action alleging substantially the same wrongdoing as the *Abramov* Action against overlapping defendants was filed in this District, styled *Kramer v. Fluence Energy, Inc. et al.*, No. 1:25-cv-00634 (the "*Kramer* Action"), alleging a larger class period including all purchasers of Fluence Class A common stock between October 28, 2021 and February 10, 2025, inclusive. *See Kramer* Action, Dkt. No. 1 ¶ 1. Therefore, without conceding that this is the appropriate class period, to avoid excluding any potential class members, this motion has adopted the largest class period alleged in the *Kramer* Action.

Act by overlapping defendants arising from substantially the same alleged fraud.  As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the litigation and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  During the Class Period, Chen purchased 10,500 shares of Fluence Class A common stock, expended $194,500 on these purchases, retained 10,500 of his shares of Fluence Class A common stock, and as a result of the disclosures of the alleged fraud, incurred losses of approximately $141,564.  *See* Declaration of Matthew B. Kaplan in Support of Motion ("Kaplan Decl."), Exhibit ("Ex.") A. Chen is unaware of any other movant with a greater financial interest in the relief sought in this litigation.  Beyond his considerable financial interest, Chen also meets the applicable requirements of Rule 23 because his claims are typical of those of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute this litigation on behalf of the Class, Chen has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is a nationally recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors, including a recovery of $3 billion on behalf of investors in the securities of Petrobras, the fifth-largest class action settlement ever achieved in the United States.  In addition, Chen has selected Kaplan Law, whose principal attorney has considerable experience in complex federal litigation, including securities litigation, as its Liaison Counsel for the Class.

Accordingly, Chen respectfully requests that the Court enter an Order consolidating the Related Actions, appointing him as Lead Plaintiff for the Class, and approving his selection of Pomerantz as Lead Counsel and Kaplan Law as Liaison Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaints in the Related actions, Fluence is a global provider of battery-based energy storage products, services, and artificial intelligence-enabled digital applications for renewable energy storage. The Company represents that it has established relationships with third-party regional manufacturers for the fabrication, manufacture, assembly and integration of its proprietary battery energy storage systems.

AES Corporation ("AES Corp.") is a global energy company that operates utilities and power generation facilities. AES Grid Stability, LLC ("AES Grid Stability" and, together with AES Corp., "AES") is an indirect subsidiary of AES Corp.

Fluence is a holding company and conducts all of its business through Fluence Energy, LLC. Fluence Energy, LLC was established in 2018 as a joint venture between AES and Siemens Industry, Inc., an indirect subsidiary of Siemens AG (collectively referred to herein as "Siemens"). Fluence's customers include utilities, developers, independent power producers, and commercial and industrial customers. In October 2021, AES and Siemens took Fluence public in an initial public offering (the "IPO").

Fluence's energy storage products are based upon the Company's technology stack that the Company claims is comprised of factory-built hardware, a proprietary edge-based control platform, and digital applications that optimize electrical market bidding for storage assets. The hardware component of Fluence's sixth-generation technology stack consists of a modular 8'x8'x8' building block that houses batteries and other components.

3

During the Class Period, Fluence offered four energy storage products that were specifically designed to address common customer use cases. The four products each varied in scale and application. The Company's "Gridstack" solution, for example, was Fluence's industrial-strength energy storage product intended to meet large grid-scale demands. By contrast, Fluence's "Edgestack" product was intended for smaller commercial applications.

Fluence generates the vast majority of its revenues from the provision of energy storage solutions. In fiscal 2023, Fluence generated approximately $2.2 billion in revenues from the sale of energy storage products, while the Company's other businesses (*i.e.*, services and digital applications) collectively generated only $20 million.[2] As part of its provision of energy storage products, Fluence also provides design, engineering, installation, and commissioning services, and allows its customers to select from the full range of project design to complete installation.

Since its inception, Fluence has relied significantly on AES and Siemens for financial and operational assistance. Through various agreements entered into between Fluence and its corporate parents, Fluence has historically obtained access to critically needed support services, including intellectual property licenses, established sales organizations and customer relationships, equipment supplies, and credit support, among other things.

Notably, both Siemens and AES entered into purchase agreements with Fluence, which required them to purchase energy storage equipment (and related services) from Fluence under preferred purchasing conditions, with prices purportedly set by reference to sales arrangements with Fluence's other customers. Pursuant to these agreements, the purchasing obligations for AES and Siemens would cease in the event that either held less than 10% of the outstanding voting

---

[2] Fluence's fiscal year ends on September 30 of the calendar year. For example, Fluence's fiscal 2023 ended on September 30, 2023.

4

power of Fluence stock.  The Company's agreement with AES was particularly lucrative.  As a result of AES's relatively higher needs for energy storage products, Fluence derived significant financial benefits from its sales agreement with AES.  In fiscal 2022, approximately 54% of Fluence's nearly $1.2 billion in reported revenue was derived from related parties, primarily AES.

Despite this support, however, Fluence has incurred significant losses since its IPO.  As such, analysts and investors were keenly attuned to Fluence's profitability.  In addition to conventional financial measures recognized under Generally Accepted Accounting Principles ("GAAP"), Fluence also reports its profitability through various non-GAAP metrics, including: (i) adjusted earnings before interest, taxes, and depreciation ("EBITDA"); (ii) adjusted gross profit; and (iii) adjusted gross profit margin.

Leading up to the Class Period, Fluence began experiencing significant operational issues with the installation and commissioning of its initial sixth-generation products, which resulted in project cost overruns and delivery delays.  During a February 2022 conference call, defendant Manuel Pérez Dubuc ("Pérez"), the Company's then-Chief Executive Officer ("CEO"), represented to investors that Fluence had acted quickly to "implement corrective actions" and address cost overruns related to the rollout of the Company's "first Generation 6 product installations and commissioning." A presentation used during the conference call further represented that the "corrective actions" Fluence had implemented to address its product installation problems had "[r]ectified issues with customers."  The following quarter, defendant Pérez updated investors on the progress of Fluence's purported "corrective actions," and claimed that Fluence had "successfully installed" ten sixth-generation systems, including specifically one "mega" project known as Diablo.

Notwithstanding this purported progress, controlling shareholder AES deemed a corporate

5

reset was needed. In an unusual move, Fluence announced within the same month (August 2022) that it was replacing both its CEO and Chief Financial Officer ("CFO"), installing former AES executive defendant Julian Nebreda to serve as CEO and bringing in defendant Manavendra Sial to serve as CFO.

During the Class Period, defendants Nebreda and Sial continued to highlight the purported "track record of safety and performance" of Fluence's products, representing that the Company had "improved execution" that allowed for "'accelerating project'" completion.

On November 28, 2023, Fluence announced the Company's financial and operational results for the fourth quarter and year ended September 30, 2023. In connection with the earnings announcement, Fluence reported that it had achieved a "[q]uarterly [p]rofitability [m]ilestone" generating positive net income for the first time in the Company's history. Fluence attributed the financial results to Fluence's "'unwavering commitment to operational excellence'" and "'strong execution.'"

On this news, the price of Fluence Class A common stock soared more than 23% from $20.27 per share on November 28, 2023 to $25.09 per share on November 29, 2023.

Defendants were quick to capitalize on the rising price of Fluence stock. On December 8, 2023, Fluence conducted a registered secondary public offering enabling the Company's largest shareholders, including defendant AES and Siemens, to collectively sell nearly $400 million in Fluence Class A common stock at artificially inflated prices.

Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material facts, including that: (1) Fluence's relationship with its founders and largest sources of revenue, Siemens and AES, was poised to decline; (2) Siemens Energy, Inc. ("Siemens Energy"), Siemens's U.S. affiliate, had accused the Company of engineering failures

6

and fraud; (3) Fluence's margins and revenue growth were inflated as Siemens and AES were moving to divest; and (4) based on the foregoing, Defendants lacked a reasonable basis for their positive statements related to Fluence's battery energy storage business, as well as related financial results, growth, and prospects.

Throughout the Class Period, Defendants also made materially false and/or misleading statements that failed to disclose the following adverse facts pertaining to the Company's business, operations, and financial condition, which were known to defendants or recklessly disregarded by them as follows: (1) that a material portion of Fluence's energy storage products suffered from defective design, installation, operational, and/or maintenance issues; (2) that Fluence had repeatedly failed to adequately address known product defects and installation errors, and/or failed to honor outstanding warranty obligations the Company owed to its customers; (3) that the efficacy and safety of Fluence's energy storage products and the Company's ability to timely deliver projects to its customers' satisfaction had been materially overstated; (4) that as a result of (1)-(3), Fluence's adjusted EBITDA, adjusted gross profit, and adjusted gross profit margins were artificially inflated throughout the Class Period; and (5) that as a result of (1)-(4), Fluence was exposed to material undisclosed risks of reputational and financial harm, including through loss of business from current and/or prospective clients.

On December 20, 2023, *Energy Storage News* published an article revealing that Fluence's work on the Diablo project had suffered from a "litany of 'defects, deficiencies, and failures.'" The article detailed several alleged defects and chronic failures that plagued the Diablo project, including, *inter alia*, that: (i) Fluence's project control system responded slowly or inaccurately, causing California's system operator to temporarily remove the project from the service markets; (ii) Fluence's proprietary systems failed to function properly, requiring project owners to resort to

7

alternative technologies not designed for that purpose, resulting in costly inefficiencies; (iii) Fluence's inverters failed 27 times within a short 1-month period, just 2 months after project delivery; and (iv) the occurrence of 2 arc flashes created the risk of serious harm and injury. Beyond these significant defects, the article revealed that Fluence had delivered the Diablo project approximately eight months after it was contractually due and repeatedly failed to timely address and resolve related warranty claims.

On this news, the price of Fluence Class A common stock fell precipitously from $27.22 per share on December 19, 2023 to $23.01 per share on December 20, 2023—a decline of approximately 15%.

On February 22, 2024, analysts at Blue Orca Capital published a research report revealing, *inter alia*, that Siemens and AES had been divesting their interest in Fluence. The report also revealed that Fluence had prematurely sold its sixth-generation technology before the design of the technology had been completed. The report disclosed that this failure had contributed to the operational mishaps that had occurred at Fluence's installed projects, including the Diablo project. In addition, the research report revealed that Siemens Energy had filed a lawsuit against Fluence for fraud, misrepresentation, and a host of engineering and design failures with respect to a project located in Antioch, California. The report stated that Fluence had unilaterally altered the design of the project originally proposed without consulting Siemens Energy and had done so in order to avoid safety concerns raised by an explosion that had occurred at another Fluence project. Moreover, citing interviews with former Fluence employees, the report stated that defendant AES had become "frustrated" with its obligations under its purchase agreement with Fluence as it prevented AES from securing prices commensurate with its size and negotiating leverage. As a result, defendant AES was intent on divesting its position in Fluence, and withdrawing its outsized

8

revenue support from Fluence's business.  The report also revealed that while Fluence appeared to steadily move towards generating positive earnings, much of its sales and earnings growth were the result of aggressive revenue pull-forwards and selectively applied earnings adjustments.  As a result, Fluence's reported revenues were revealed to be unreliable and facing a sharp decline as a result of the diminishing support from Siemens and AES.

On this news, the price of Fluence Class A common stock declined from $17.01 per share on February 21, 2024 to $14.73 per share on February 22, 2024, a decline of more than 13%.

On November 25, 2024, Fluence issued a press release providing the Company's financial results for its fourth fiscal quarter and full year 2024 ("4Q24 Release").  The 4Q24 Release issued annual revenue guidance for fiscal 2025 of approximately $3.6 billion to $4.4 billion, representing year-over-year growth of approximately 48% at the midpoint of the range.  The 4Q24 Release revealed that only 65% of Fluence's fiscal 2025 revenue guidance (at the midpoint) was "covered by the Company's current backlog," indicating that Fluence did not have sufficient work contracted and would need to secure additional new orders to meet its revenue targets.  During the corresponding conference call held the following day, Fluence's then-CFO Ahmed Pasha further revealed that Fluence's fiscal 2025 revenue would be "back-end loaded," with the Company recognizing approximately 80% of all revenues during the second half of fiscal 2025, while only 20% of its annual revenue would be recognized in the first half of fiscal 2025.

On this news, the price of Fluence Class A common stock fell from $23.50 per share on November 25, 2024 to $18.37 per share on November 27, 2024, a decline of approximately 22% over a two-day trading period, on above-average trading volume.

Then on February 10, 2025, Fluence issued a press release providing the Company's financial results for its first fiscal quarter of 2025 ("1Q25 Release").  The 1Q25 Release reported

9

a net loss of $57 million, or $0.32 per share, compared to a loss of $25.6 million, or $0.14 per share, for the same period in the prior year. The 1Q25 Release further revealed that quarterly revenue had fallen 49% year-over-year to approximately $187 million, significantly missing consensus estimates of $363 million by nearly 48%, representing a significant departure from the already muted expectations set by the Company's "back-end loaded" revenue cadence disclosed during the prior quarter. The 1Q25 Release also revealed that Fluence was reducing its fiscal 2025 revenue guidance from a range of $3.6 billion to $4.4 billion to a range of $3.1 billion to $3.7 billion, representing a reduction of approximately $600 million at the midpoint. The 1Q25 Release further revealed that the guidance revision was the result of "'customer driven delays'" in executing outstanding contracts and "'competitive pressures.'"

On this news, the price of Fluence Class A common stock fell $6.07 per share, or 46.44%, to close at $7.00 per share on February 11, 2025. Indeed, Fluence's Class A common stock price fell from $13.07 per share on February 10, 2025 to $6.18 per share on February 13, 2025, a more than 52% decline over a three-day trading period, on above-average trading volume.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Chen and other Class members have suffered significant losses and damages.

## ARGUMENT

### I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the

10

actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a); *see also In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000) ("[C]onsolidation is often warranted where multiple securities fraud class actions are based on the same public statements and reports." (internal quotation marks omitted)).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed." 15 U.S.C. § 78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Rule 42(a).

Each of the Related Actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, by overlapping defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the Related Actions allege common questions of both law *and* fact and should be consolidated pursuant to Rule 42(a) for all purposes.

## II.   CHEN SHOULD BE APPOINTED LEAD PLAINTIFF

Chen should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this litigation to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

11

Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Chen satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### A.    Chen Is Willing to Serve as Class Representative and Has Timely Filed This Motion to Be Appointed Lead Plaintiff.

On March 11, 2025, counsel for plaintiff in the first-filed of the Related Actions (*i.e.*, the *Abramov* Action) caused the statutorily required Notice to be published via *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Fluence and other defendants, and advising investors in Fluence stock that they had until May 12, 2025—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as Lead Plaintiff. *See* Kaplan Decl., Ex. B.

Chen has timely filed the instant motion pursuant to the Notice, and he has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Chen satisfies the first requirement to serve as Lead Plaintiff of the Class.

### B.    Chen Has the "Largest Financial Interest."

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of his knowledge, Chen has the largest financial interest of any Fluence investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[3] these so-called *Lax* factors have been adopted and applied by courts in the Fourth Circuit. *See, e.g.*, *Tchatchou v. India Globalization Cap., Inc.*, No. 8:18-CV-03396-PWG, 2019 WL 1004591, at *4 (D. Md. Feb. 28, 2019); *Bousso v. Spire Glob., Inc.*, No. 1:24-CV-01458-MSN-WEF, 2024 WL 4873311, at *4 (E.D. Va. Nov. 21, 2024). Of the *Lax* factors, courts in the Fourth Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See, e.g.*, *Bousso*, 2024 WL 4873311, at *4; *Palm Tran, Inc. -*

---

[3] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

13

*Amalgamated Transit Union Loc. 1577 Pension Plan v. Emergent Biosolutions Inc.*, No. PWG-21-1189, 2021 WL 6072812, at *4-5 (D. Md. Dec. 23, 2021).

During the Class Period, Chen: (1) purchased 10,500 shares of Fluence Class A common stock; (2) expended $194,500 on these purchases; (3) retained 10,500 of his shares of Fluence Class A common stock; and (4) as a result of the disclosures of the alleged fraud, incurred losses of approximately $141,564. *See* Kaplan Decl., Ex. A. To the extent that Chen possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

**C.    Chen Otherwise Satisfies the Requirements of Rule 23.**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, at this stage of the litigation, only a *prima facie* showing of typicality and adequacy is required. *Chamblee v. Terraform Power, Inc.*, No. PX 16-981, 2016 WL 4039178, at *2 (D. Md. July 28, 2016); *Hirtenstein v. Cempra, Inc.*, Nos. 1:16cv1303 *et al.*, 2017 WL 2874588, at *4 (M.D.N.C. July 5, 2017).

"The requirement of typicality is satisfied if the [lead plaintiff] movant's claim arises from the same course of events as those of the other potential class members and relies on similar legal theories to prove the defendants' liability." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 350 (D. Md. 2003) (citing *Cendant*, 264 F.3d at 265); *see also Johnson v. Pozen, Inc.*, No. 1:07CV599, 2008 WL 474334, at *2 (M.D.N.C. Feb. 15, 2008). Chen's claims are typical of those of the Class. Chen alleges, like other Class members, that Defendants violated the Exchange Act

14

by making what they knew or should have known were false or misleading statements of material facts concerning Fluence, or by omitting to state material facts necessary to make the statements they did make not misleading. Chen, like other Class members, purchased Fluence Class A common stock during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Fluence's stock price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

"Adequate representation requires a finding that the purported class representative and its attorney are capable of pursuing the litigation and that neither has a conflict of interest with other class members." *Pozen*, 2008 WL 474334, at *2; *see also Terraform*, 2016 WL 4039178, at *2 (appointing lead plaintiffs that "demonstrated that they will 'fairly and adequately protect the interests of the class,' and 'ensure vigorous advocacy'" (quoting *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986))); *Rice v. Genworth Fin. Inc.*, No. 3:17cv59, 2017 WL 3699859, at *7 (E.D. Va. Aug. 25, 2017). Here, as set forth in greater detail below, in Pomerantz and Kaplan Law, Chen has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as the instant Related Actions, and submits his choice of Pomerantz and Kaplan Law to the Court for approval as Lead Counsel and Liaison Counsel, respectively, for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz and Kaplan Law, Chen is also represented by the Chinese law firm the HAO & HAN Law Firm in this Action, which is not seeking appointment or a role as lead or liaison counsel. There is no evidence of antagonism or conflict between Chen's interests and those of the Class, and Chen has submitted a sworn Certification declaring his commitment to protect the interests of the Class (*see* Kaplan Decl., Ex.

15

C).  Moreover, Chen's significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.

Further demonstrating his adequacy, Chen has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class.  *See id.*, Ex. D.

**D.      Chen Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses.**

The presumption favoring Chen's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)      will not fairly and adequately protect the interests of the class; or

(bb)      is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Chen's ability and desire to fairly and adequately represent the Class has been discussed above.  Chen is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Chen should be appointed Lead Plaintiff for the Class.

**III.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel for the class, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v).  The Court should only interfere with the Lead Plaintiff's choice if necessary to "protect the interests of the class."  *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Microstrategy*, 110 F. Supp. 2d at 438 ("[A] district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience,

16

and resources[.]"); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))).

Here, Chen has selected Pomerantz as Lead Counsel and Kaplan Law as Liaison Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Kaplan Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

Kaplan Law is also well-qualified to serve as Liaison Counsel for the Class. Kaplan Law maintains an office in Arlington, Virginia, which is situated in this District, and the firm's principal attorney has considerable experience in complex federal litigation, in this District and elsewhere,

17

including in securities class action litigation, and has extensive familiarity with the Local Rules and practice norms of this District.  *See id.*, Ex. F.

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Action, Chen's counsel, Pomerantz and Kaplan Law, have the skill, knowledge, expertise, and experience that will enable these firms to prosecute this litigation effectively and expeditiously.  Thus, the Court may be assured that by approving Chen's selection of Pomerantz as Lead Counsel and Kaplan Law as Liaison Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Chen respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Chen as Lead Plaintiff for the Class; and (3) approving his selection of Pomerantz as Lead Counsel and Kaplan Law as Liaison Counsel for the Class.

Dated:  May 12, 2025

Respectfully submitted,

**THE KAPLAN LAW FIRM**

*/s/ Matthew B. Kaplan*
Matthew B. Kaplan (Va. Bar No. 51027)
1100 N. Glebe Road, Suite 1010
Arlington, Virginia 22201
Telephone: (703) 665-9529
mbkaplan@thekaplanlawfirm.com

*Counsel for Lead Plaintiff Movant Kai Chen and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016

18

Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Kai Chen and Proposed Lead Counsel for the Class*

**HAO & HAN LAW FIRM**
Junbo Hao
12B05, Tower A
Ocean Express Building
Chaoyang District, Beijing
People's Republic of China
Telephone: +86 137-1805-2888
jhao@haolaw.cn

*Additional Counsel for Lead Plaintiff Movant Kai Chen*

19

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically

to the registered participants as identified on the Notice of Electronic Filing on May 12, 2025.

/s/ Matthew B. Kaplan
Matthew B. Kaplan (Va. Bar No. 51027)

20