# Exhibit D

**DECLARATION OF DR. LEOPOLD SPECHT
IN SUPPORT OF MOTION OF ERSTE ASSET MANAGEMENT GMBH FOR
CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF
SELECTION OF COUNSEL**

250512-23-25 Declaration of Dr. Specht,                                    2

## TABLE OF CONTENTS

I.     RETAINMENT AND SCOPE OF THIS DECLARATION .................................................3

II.    PERSONAL QUALIFICATIONS...................................................................................3

III.   MATERIALS CONSIDERED ........................................................................................3

IV.    LEGAL AUTHORITY OF AUSTRIAN MANAGEMENT COMPANIES IN GENERAL
       TO ACT ON BEHALF OF THE FUNDS THEY MANAGE .............................................6

       A.    The authority of Austrian fund management companies to make
             investment decisions on behalf of the fund or funds they manage...........................9

       B.    The authority of Austrian fund management companies to bring suit on
             behalf of the fund or funds they manage.. .............................................................10

V.     LEGAL AUTHORITY OF ERSTE ASSET MANAGEMENT GMBH TO MANAGE, TO
       TAKE INVESTMENT DECISIONS AND TO SUE ON BEHALF OF THE
       FOLLOWING FUNDS ...................................................................................................12

       A.    Erste Responsible Stock America..........................................................................12

       B.    Erste Responsible Stock Global .............................................................................13

       C.    Erste WWF Stock Environment .............................................................................13

       D.    Erste Green Invest .................................................................................................13

       E.    Erste Green Invest Mix..........................................................................................14

       F.    Certificate by the Austrian Financial Market Authority.........................................14

VI.    CONCLUSION ..............................................................................................................14

EXHIBITS ..............................................................................................................................16

250512-23-25 Declaration of Dr. Specht,                                              3

I, DR. LEOPOLD SPECHT, hereby declare as follows:

## I.    RETAINMENT AND SCOPE OF THIS DECLARATION

1.    I have been asked by the law firm of Motley Rice LLC to express my opinion as to whether, under applicable Austrian law, Erste Asset Management GmbH ("Erste AM") has the legal authority to bring suit on behalf of the following Funds:

- Erste Responsible Stock America,
- Erste Responsible Stock Global,
- Erste WWF Stock Environment,
- Erste Green Invest and
- Erste Green Invest Mix

(all five collectively referred to as the "Funds") and, in particular, to express an opinion as to whether Erste AM has the legal authority to bring suit on behalf of these Funds in the United States to recover damages suffered by the Funds as a result of allegedly fraudulent action by Fluence Energy, Inc. ("Fluence") and several other defendants. I have also been asked to express my opinion as to the extent to which Erste AM had the authority to make investment decisions on behalf of these Funds.

## II.    PERSONAL QUALIFICATIONS

2.    I am a partner of Specht & Partner Rechtsanwalt GmbH, a law firm licensed under Austrian law. I was admitted to the bar in Austria in 1990, and have specialized in International Contracts (Mergers and Acquisitions), International Arbitration, Finance, Corporate and Commercial Law. I graduated from the University of Vienna in 1981 (J.D. Law), and thereafter earned my masters (LL.M.) and doctoral (S.J.D.) degrees from Harvard Law School in 1988 and 1994, respectively. My detailed curriculum vitae is attached as Exhibit A to this declaration.

## III.    MATERIALS CONSIDERED

3.    I have examined the following documents in preparation of this Declaration:

(a) Complaint of Mr. Igor Kramer against Fluence and other defendants dated 15 April 2025

(b) Certificate by the Austrian Financial Market Authority dated 25 July 2024

(c) Firmenbuchauszug von Erste Asset Management GmbH vom 08.05.2025 mit aktuellen und historischen Daten (Excerpt from company register of Erste Asset Management GmbH with present and historical data dated 08 May 2025)

(d) Jahresbericht 2023/24 Erste Responsible Stock America – Miteigentumsfonds gemäß InvFG 2011 (Annual Report 2023/24 Erste Responsible Stock America – Joint Ownership Fund according to InvFG 2011)

(e) Halbjahresbericht 2024 Erste Responsible Stock America – Miteigentumsfonds gemäß InvFG 2011 (Semi-Annual Report 2024 Erste Responsible Stock America – Joint Ownership Fund according to InvFG 2011)

250512-23-25 Declaration of Dr. Specht,                                          4

(f) Informationen gemäß Art 10 Offenlegungsverordnung zu Erste Responsible Stock America vom 28.03.2025 (Information according to Art 10 disclosure regulation on Erste Responsible Stock America, dated 28 March 2025)

(g) Jahresbericht 2023/24 Erste Responsible Stock Global – Miteigentumsfonds gemäß InvFG 2011 (Annual Report 2023/24 Erste Responsible Stock Global – Joint Ownership Fund according to InvFG 2011)

(h) Halbjahresbericht 2024 Erste Responsible Stock Global – Miteigentumsfonds gemäß InvFG 2011 (Semi-Annual Report 2024 Erste Responsible Stock Global – Joint Ownership Fund according to InvFG 2011)

(i) Informationen gemäß Art 10 Offenlegungsverordnung zu Erste Responsible Stock Global vom 28.03.2025 (Information according to Art 10 disclosure regulation on Erste Responsible Stock Global, dated 28 March 2025)

(j) Jahresbericht 2023/24 Erste WWF Stock Environment – Miteigentumsfonds gemäß InvFG 2011 (Annual Report 2023/24 Erste WWF Stock Environment – Joint Ownership Fund according to InvFG 2011)

(k) Halbjahresbericht 2024 Erste WWF Stock Environment – Miteigentumsfonds gemäß InvFG 2011 (Semi-Annual Report 2024 Erste WWF Stock Environment – Joint Ownership Fund according to InvFG 2011)

(l) Informationen gemäß Art 10 Offenlegungsverordnung zu Erste WWF Stock Environment vom 29.03.2025 (Information according to Art 10 disclosure regulation on Erste WWF Stock Environment, dated 29 March 2025).

(m) Jahresbericht 2023/24 Erste Green Invest – Miteigentumsfonds gemäß InvFG 2011 (Annual Report 2023/24 Erste Green Invest – Joint Ownership Fund according to InvFG 2011)

(n) Halbjahresbericht 2024 Erste Green Invest – Miteigentumsfonds gemäß InvFG 2011 (Semi-Annual Report 2024 Erste Green Invest – Joint Ownership Fund according to InvFG 2011)

(o) Informationen gemäß Art 10 Offenlegungsverordnung zu Erste Green Invest vom 28.03.2025 (Information according to Art 10 disclosure regulation on Erste Green Invest, dated 28 March 2025)

(p) Jahresbericht 2023/24 Erste Green Invest Mix – Miteigentumsfonds gemäß InvFG 2011 (Annual Report 2023/24 Erste Green Invest Mix – Joint Ownership Fund according to InvFG 2011)

(q) Halbjahresbericht 2024 Erste Green Invest Mix – Miteigentumsfonds gemäß InvFG 2011 (Semi-Annual Report 2024 Erste Green Invest Mix – Joint Ownership Fund according to InvFG 2011)

250512-23-25 Declaration of Dr. Specht,                                              5

(r) Informationen gemäß Art 10 Offenlegungsverordnung zu Erste Green Invest Mix vom 28.03.2025 (Information according to Art 10 disclosure regulation on Erste Green Invest Mix, dated 28 March 2025)

(s) Jahresbericht 2022/23 Erste Responsible Stock America – Miteigentumsfonds gemäß InvFG 2011 (Annual Report 2022/23 Erste Responsible Stock America – Joint Ownership Fund according to InvFG 2011)

(t) Halbjahresbericht 2023 Erste Responsible Stock America – Miteigentumsfonds gemäß InvFG 2011 (Semi-Annual Report 2023 Erste Responsible Stock America – Joint Ownership Fund according to InvFG 2011)

(u) Informationen gemäß Art 10 Offenlegungsverordnung zu Erste Responsible Stock America vom 26.04.2024 (Information according to Art 10 disclosure regulation on Erste Responsible Stock America, dated 26 April 2024)

(v) Jahresbericht 2022/23 Erste Responsible Stock Global – Miteigentumsfonds gemäß InvFG 2011 (Annual Report 2022/23 Erste Responsible Stock Global – Joint Ownership Fund according to InvFG 2011)

(w) Halbjahresbericht 2023 Erste Responsible Stock Global – Miteigentumsfonds gemäß InvFG 2011 (Semi-Annual Report 2023 Erste Responsible Stock Global – Joint Ownership Fund according to InvFG 2011)

(x) Informationen gemäß Art 10 Offenlegungsverordnung zu Erste Responsible Stock Global vom 26.04.2024 (Information according to Art 10 disclosure regulation on Erste Responsible Stock Global, dated 26 April 2024)

(y) Jahresbericht 2022/23 Erste WWF Stock Environment – Miteigentumsfonds gemäß InvFG 2011 (Annual Report 2022/23 Erste WWF Stock Environment – Joint Ownership Fund according to InvFG 2011)

(z) Halbjahresbericht 2023 Erste WWF Stock Environment – Miteigentumsfonds gemäß InvFG 2011 (Semi-Annual Report 2023 Erste WWF Stock Environment – Joint Ownership Fund according to InvFG 2011)

(aa)       Informationen gemäß Art 10 Offenlegungsverordnung zu Erste WWF Stock Environment vom 29.03.2024 (Information according to Art 10 disclosure regulation on Erste WWF Stock Environment, dated 29 March 2024)

(bb)       Jahresbericht 2022/23 Erste Green Invest – Miteigentumsfonds gemäß InvFG 2011 (Annual Report 2022/23 Erste Green Invest – Joint Ownership Fund according to InvFG 2011)

(cc)       Halbjahresbericht 2023 Erste Green Invest – Miteigentumsfonds gemäß InvFG 2011 (Semi-Annual Report 2023 Erste Green Invest – Joint Ownership Fund according to InvFG 2011)

(dd)       Informationen gemäß Art 10 Offenlegungsverordnung zu Erste Green Invest vom

250512-23-25 Declaration of Dr. Specht,                                                         6

31.01.2024 (Information according to Art 10 disclosure regulation on Erste Green Invest, dated 31 January 2024)

(ee)     Jahresbericht 2022/23 Erste Green Invest Mix – Miteigentumsfonds gemäß InvFG 2011 (Annual Report 2022/23 Erste Green Invest Mix – Joint Ownership Fund according to InvFG 2011)

(ff) Halbjahresbericht 2023 Erste Green Invest Mix – Miteigentumsfonds gemäß InvFG 2011 (Semi-Annual Report 2023 Erste Green Invest Mix – Joint Ownership Fund according to InvFG 2011)

(gg)     Informationen gemäß Art 10 Offenlegungsverordnung zu Erste Green Invest Mix vom 15.03.2024 (Information according to Art 10 disclosure regulation on Erste Green Invest Mix, dated 15 March 2024)

4.     The following Austrian and European laws were considered in this regard:

(a) Austrian Investment Fund Act (Investmentfondsgesetz or "InvFG", BGBl I Nr. 77/2011, last amended by BGBl. I Nr. 113/2024)

(b) Austrian Civil Code ("ABGB") (JGS Nr. 946/1811, last amended by BGBl I Nr. 33/2024)

(c) Austrian Banking Code (Bankwesengesetz) (BGBl I Nr. 532/1993, last amended by BGBl I Nr. 6/2025)

(d) Austrian Law regulating Real Estate Investment Funds (in German: Bundesgesetz über Immobilieninvestmentfondsgesetz - ImmoInvFG) (BGBl I Nr. 80/2003, last amended by BGBl I Nr. 113/2024)

(e) Austrian Code of Civil Procedure (Zivilprozessordnung – ZPO), (RGBl 113/1895, last amended by BGBl I Nr. 85/2024)

(f) Directive 2009/65/EC of the European Parliament and of the Council of 13 July 2009 ("Directive 2009/65/EC"), last amended by ABl. L 2024/2994 on the 4 December 2024.

## IV.  LEGAL AUTHORITY OF AUSTRIAN MANAGEMENT COMPANIES IN GENERAL TO ACT ON BEHALF OF THE FUNDS THEY MANAGE

5.     General legislation concerning investment funds was first enacted in Austria in 1963: The Austrian Investment Fund Act of 1963[1] ("InvFG 1963"). The InvFG 1963 already established the basic elements of the current legislation on funds: a fund is a portfolio of assets[2] which is divided into equal units evidenced by securities, which are referred to as "unit certificates". The

---

[1] In German: "Investmentfondsgesetz 1963", abbreviated "InvFG 1963".
[2] In German: "Vermögensmasse".

250512-23-25 Declaration of Dr. Specht,                                                                    7

portfolio of assets of a fund is jointly owned by the unit holders (investors; in the terminology of the InvFG 1963: "savers") of that fund. The fund is not a legal entity. It is not managed by and does not act through its own executive organs, such as a board of directors. Rather, the fund is managed by a management company[3]. Only the management company is entitled to dispose of the fund's assets and to exercise the rights resulting from these assets. In this context, the management company acts in its own name but on account of the unit holders (investors) as a whole.

6.      The law's intention is set forth in the explanatory notes to § 3 of InvFG 1963: *"Only the investment company is entitled to dispose of the fund assets. The unit-holders have neither individually nor jointly the right of disposal; the appointment of a curator is also excluded. This ensures that the management of the fund assets is conducted by experts for the account of the savers, who lack time and usually also the necessary qualifications for such management. The investment company exercises all rights arising from the fund assets on the basis of being entrusted with the management as trustee of the savers. No further legal acts are required to grant these rights to the investment company."* [emphasis added][4]

7.      The language of § 3 InvFG 1963 and the explanatory notes to the bill submitted by the government to the legislature, clarify that the management company holds the exclusive power to exercise all rights pertaining to the management of assets of funds. The unit holders have no such right, neither individually nor jointly. The explanatory notes furthermore underline that the management company's rights to manage the assets of funds are conferred by operation of law. No separate agreement between the management company and the investors to this effect must be entered into, or power of attorney granted. The government bill sets out its intention when conceiving of this structure: While the management company uses investment experts who are under the supervision of the appropriate regulatory authority, the investors typically lack time and in most cases the knowledge to make informed decisions.

8.      This structure – to entrust a management company with the right to dispose of a fund's assets and to confer all powers necessary to do so onto the management company – remained in place during later amendments of the law, and still applies to this day. In 1993, the legislature adopted InvFG 1993. As to the management and the right to dispose of a fund's assets, the structure set forth in InvFG 1963 remained unchanged: § 3 InvFG 1993 confers the right to exclusively dispose of the assets in an investment fund to the management company. The terminology     remained     largely     unchanged.     InvFG     1993     uses     the     term

---

[3] In German: in InvFG 2011: "Verwaltungsgesellschaft"; in InvFG 1963: "Kapitalanlagegesellschaft" or "Investmentgesellschaft".

[4] Explanatory Notes to § 3 InvFG 1963 in German: "Über die Fondswerte kann nur die Investmentgesellschaft verfügen. Die Anteilinhaber haben weder einzeln noch gemeinsam das Verfügungsrecht; auch die Bestellung eines Kurators ist ausgeschlossen. Dadurch wird sichergestellt, dass die Verwaltung des Fondsvermögens durch Fachleute für Rechnung der Sparer, denen zur Verwaltung die Zeit und meist auch die erforderlichen Kenntnisse fehlen, besorgt wird. Die Investmentgesellschaft übt alle Rechte aus den Fondswerten aufgrund ihrer Betrauung mit der Verwaltung als Treuhänder der Investmentsparer aus. Es bedarf keiner weiteren Rechtshandlungen, um der Investmentgesellschaft diese Rechte einzuräumen".

250512-23-25 Declaration of Dr. Specht,                                          8

"*Kapitalanlagegesellschaft*" (capital investment company) for fund management companies, whereas the InvFG 2011 uses the term "*Verwaltungsgesellschaft*" (management company). § 3 InvFG 1993 defines, in its first part, the powers of the management company. This first part of § 3 InvFG 1993 remained unchanged. It contains the same wording as § 3 InvFG 1963.

9.      The current version of the law regulating investment funds and their activities is the Austrian Investment Fund Act of 2011[5] ("InvFG 2011"), which is based upon Directive 2009/65/EC of the European Parliament and of the Council of 13 July 2009 ("Directive 2009/65/EC") on the coordination of laws, regulations and administrative provisions relating to Undertakings for Collective Investment in Transferable Securities (UCITS = funds).

10.     The most common form of the investment fund is now called "Undertaking for Collective Investment in Transferable Securities (UCITS)".[6]

11.     The current provision regulating the powers of the management company to manage the assets of UCITS is § 52 InvFG 2011. While the terminology has changed to a certain extent, the basic content of this provision remains the same, and provides the management company with a clear and broad mandate to manage the UCITS's assets and to exercise all rights resulting therefrom. This is to say a UCITS must act exclusively through its management company.

12.     In this context, the relevant section of the InvFG 2011 reads as follows (following the unofficial translation by the Austrian Association of Investment Companies[7]):

### "*Power of disposal over the assets of a UCITS*

*§ 52 Only the management company shall be authorized to dispose over assets belonging to a UCITS managed by it and to exercise the rights in such assets; in doing so, the management company acts in its own name for the account of the unit holders. The management company shall safeguard the unit holders' interests, use the care and diligence of a prudent director within the meaning of Section 84 (1) of the [Austrian] Stock Corporation Act and observe the provisions of this federal act and the regulations adopted pursuant to this federal act as well as the Fund Rules*".[8]

Therefore, the unit holder in a UCITS does <u>not</u> have the right to instruct or otherwise influence the management company with respect to the management of the assets pertaining to the UCITS.

---

[5] In German: "Investmentfondsgesetz 2011".

[6] In German: "Organismus zur gemeinsamen Veranlagung in Wertpapieren (OGAW)".

[7] In German: "Vereinigung Österreichischer Investmentgesellschaften (VÖIG)."

[8] In German: "Verfügungsrecht über das Vermögen des OGAW - § 52 InvFG 2011: Nur die Verwaltungsgesellschaft ist berechtigt, über die Vermögenswerte eines von ihr verwalteten OGAW zu verfügen und die Rechte an den Vermögenswerten auszuüben; sie handelt dabei im eigenen Namen auf Rechnung der Anteilinhaber. Sie hat die Interessen der Anteilinhaber zu wahren, die Sorgfalt eines ordentlichen Geschäftsleiters im Sinne von § 84 Abs. 1 AktG anzuwenden und die Bestimmungen dieses Bundesgesetzes und der auf der Grundlage dieses Bundesgesetzes erlassenen Verordnungen sowie die Fondsbestimmungen einzuhalten. "

250512-23-25 Declaration of Dr. Specht,                                                    9

13.    § 3 (2) 1 InvFG 2011 defines the term "management company" as applied throughout the InvFG. Accordingly, a management company (*Verwaltungsgesellschaft, Kapitalanlagegesellschaft*) is an undertaking in accordance with § 5 InvFG 2011 or Article 6 of Directive 2009/65/EC, the regular business of which is the management of UCITS (funds) in accordance with § 2 InvFG 2011, and, to the extent applicable, of Alternative Investment Funds, in accordance with § 3 InvFG 2011.

14.    § 52 InvFG 2011 sets forth the exclusive authority of the management company to dispose of the assets in an UCITS. This authority includes the authority, indeed the obligation, if such course of action is in the best interest of the unit holders and the fund, to pursue claims, such as the claims against Fluence. Such claims constitute assets of the UCITS (fund). The obligation results from the reference in § 52 InvFG 2011, to § 84 (1) of the Austrian Joint Stock Company Law (Aktiengesetz, AktG). § 84 (1) AktG stipulates the fiduciary obligation of the members of a management board of a joint stock company. The standard of care is the standard of a well-organized and conscientious director of a business. § 52 InvFG 2011 defines the authority of the management company as acting "*in its own name but for the account of the unit holders*" in the fund.

**A.    The authority of Austrian fund management companies to make investment decisions on behalf of the fund or funds they manage.**

15.    The authority of the management company, is regulated quite clearly in § 52 InvFG 2011. The comprehensive management of the funds' assets is the core task of the management company. It includes of course the devisal of an investment strategy, the making of individual investment decisions and their implementation (i.e. the buying and selling of specific assets). In doing so, the management company is bound by the provisions of the InvFG 2011 and the fund rules. The unit holders do not have a right to instruct, or otherwise exert any influence on, the management company, including with respect to investment decisions. The unit holders have the right to divest from the fund by selling their unit certificates.

16.    An authorization or the consent of the unit holders for any decision of the management company exercising its powers to manage the fund, is not required. The power of discretion of the management company is however subject to certain restrictions. The management company has, under § 52 InvFG, the duty to act in the best interest of the unit holders ("*to safeguard the unit holders' interests*"). Further, the management company has to meet the standard of a well-organized and conscientious director under § 84 (1) of the Austrian Stock Corporations' Act (AktG). Said provision sets forth the standard of diligence owed by the managing directors of an Austrian joint stock corporation. Thereby the legislature implies that the management company is granted broad powers, as the managing directors of an Austrian joint stock company are in a position to act autonomously, not being bound by any directions of the shareholders.

17.    As to further statutory restrictions on investment decisions, §§ 74 through 79 InvFG 2011, provide for quantitative limitations to certain investments in order to avoid cluster risks. Further, according to § 80 InvFG 2011, the management company is not entitled – with certain limited exceptions – to take out a loan or to grant a loan on account of the fund (i.e. using the

250512-23-25 Declaration of Dr. Specht,                                              10

fund's assets). According to § 81 InvFG, the assets of the fund must not – with certain exceptions – be pledged or otherwise encumbered, or given in security or assigned. Further, according to § 82 InvFG, the management company must not carry out uncovered sales (short selling). Finally, §84 InvFG 2011 provides for certain limitations on securities lending. Some of these transactions are permitted, if the fund rules expressly allow for them. The rationale behind all these provisions is that certain potentially risky transactions shall either be prohibited at all, or permitted only if explicitly authorized in the fund rules.

18.    The fund rules (*Fondsbestimmungen*, see § 53 InvFG 2011) shall be drawn up by the management company, and must be approved by the Austrian Financial Market Authority (FMA). They must set forth, among other items, *"the principles according to which the securities, money market instruments and liquid financial assets purchased for the fund are selected"*.

19.    Therefore, it can be said that the management company has broad discretion to make investment decisions on behalf of an Austrian investment fund (or UCITS), under the InvFG 2011. The management company's discretion is limited only by the restrictions imposed by the InvFG 2011 itself and the general guidelines as laid down in the fund rules. A right of the unit holders to participate in investment decisions is not provided for in said act.

20.    The management company may mandate an agent to buy or sell certain assets, either in a given case or on an ongoing basis. However, such an agent would act in the name of the management company, and the agent's decisions would be treated as decisions of the management company. The management company has the power of discretion to mandate the agent, to give him specific instructions, and to terminate their cooperation. Therefore, the authority to make investment decisions for the fund, at least in the last instance, remains at all times with the management company. The acts of the agent are treated as acts of the management company, which is exercising its power of discretion through an agent. In any case, the unit holders of the fund are not involved in making decisions concerning the fund, including investment decisions.

**B.    The authority of Austrian fund management companies to bring suit on behalf of the fund or funds they manage.**

21.    The authority of the management company to dispose of the fund's assets is regulated in § 52 InvFG 2011, which states that only the management company is authorized to dispose of the assets of a fund (UCITS) and to exercise the rights to these assets; the management company acts in this context in its own name but on account of the unit holders.

22.    The wording of this provision confers the exclusive right to dispose of the assets pertaining to the fund and to exercise all rights relating to these assets upon the management company. This follows from the clear wording *"only the management company shall be authorized"*[9], and is further supported by the explanatory notes to the government bills to the

---

[9] In German: "Nur die Verwaltungsgesellschaft ist berechtigt…".

250512-23-25 Declaration of Dr. Specht,                                                11

Austrian Investment Fund Acts of 1963[10], 1993[11] and 2011[12], and by the commentaries to InvFG 2011[13].

23.     The explanatory note to § 3 InvFG 1993, which corresponds to § 52 InvFG 2011, reads as follows:

"*Only the investment company is entitled to dispose of the assets held by the investment funds. It alone can assert the rights arising from the fund assets. The joint ownership of the unit-holders does not give them any possibility whatsoever to influence the management of the assets. The investment company exercises the rights arising from the fund assets as trustee for the account of the respective fund, being obliged to act in accordance with the statutory mandate and the fund rules. In managing the investment fund, the investment company shall be guided exclusively by the interests of the unit-holders and shall exert the diligence of a well-organized and conscientious manager*". [emphasis added][14]

24.     The right of the management company to bring a legal action on behalf of the fund, is not specifically mentioned in the InvFG 2011, probably because investment litigation is quite rare in Austria. However, § 52 InvFG 2011 comprises the right to bring a suit for the fund, i.e. a suit concerning the fund's assets. Such legal actions are brought in the name of the management company, since the fund has no legal personality and therefore cannot be a party to Austrian court proceedings, but on account of the fund.

25.     While all commentaries to § 52 InvFG 2011 agree on the concept that the management company has exclusive powers to manage the fund assets, the question whether these powers include the power to bring legal action is addressed only in one paper published in a legal journal named *Österreichisches Bank Archiv* (*Austrian Bank Archive*). This paper, published in

---

[10] See recital 6, above, and footnote 4.

[11] See recital 23 and footnote 14, below.

[12] Explanatory notes to §52 InvFG 2011: "*Clarifies that only an externally managed UCITS [Undertakings for Collective Investments in Transferable Securities] is provided for under this Federal Act. The provision largely corresponds to the content of § 3 para 1 InvFG 1993*". In German: EB zu § 52 InvFG 2011: "Stellt klar, dass gemäß diesem Bundesgesetz nur ein fremdverwalteter OGAW vorgesehen ist. Die Bestimmung entspricht inhaltlich weitgehend § 3 Abs. 1 InvFG 1993".

[13] Leixner, InvFG 2011, first editon, § 52 InvFG. Leixner expressly states that the unit holders do not have any rights to dispose of assets. In German: "Keinerlei Dispositionsrechte haben die Anteilsinhaber"; *Berger in Bollenberger/ Kellner, first edition (2016) § 52 InvFG recitals 1 to 3; Buchbauer in Macher/ Buchberger/ Kalss/ Oppitz, Kommentar zum InvFG, second edition (2013) recitals 7 to 13.*

[14] In German: Erläuternde Bemerkungen zu §3 InvFG 1993 – Finanzmarktanpassungsgesetz 1993: "Nur die Kapitalanlagegesellschaft ist über die in den Kapitalanlagefonds enthaltenen Vermögenswerte verfügungsberechtigt. Sie allein kann die Rechte aus den Fondswerten geltend machen. Das Miteigentum der Anteilinhaber gibt diesen keine wie immer geartete Einflussmöglichkeit auf die Verwaltung der Vermögenswerte. Die Kapitalanlagegesellschaft übt die Rechte aus den Fondswerten als Treuhänder für Rechnung des jeweiligen Fonds aus, wobei sie hiebei entsprechend dem gesetzlichen Auftrag und gemäß den Fondsbestimmungen vorzugehen hat. Die Kapitalanlagegesellschaft hat bei der Verwaltung der Kapitalanlagefonds ausschließlich die Interessen der Anteilinhaber zu vertreten und hiebei die Sorgfalt eines ordentlichen und gewissenhaften Geschäftsleiters anzuwenden".

250512-23-25 Declaration of Dr. Specht,                                              12

2011 by *Kammel/Thierrichter*, analyzes the issue of standing in legal proceeding on behalf of the unit holders in a fund:

*"According to the prevailing opinion, it is characteristic that the special assets [i.e. the fund] have no legal personality, from which follows, that they have no right of legal action, neither actively nor passively [i.e. neither to sue nor to be sued]. Since the entitlement or obligation of the special assets as the subject of a legal dispute does not exist, the <u>management company acts</u> as an indirect representative, i.e. in its own name and for the account of the unit holders. Thus, both <u>the active and passive right of legal action for the investment fund is vested in the management company</u> as the statutory representative".*[15][emphasis added]

26.     One commentary[16] expressly mentions that the fund (UCITS) has no right to sue or be sued, and refers to the article by Kammel/Thierrichter in ÖBA, quoted above.

27.     To conclude, only the management company is entitled in its own name to sue or be sued regarding the fund's assets, whereas the fund (UCITS) itself, or its unit holders, have no such right.

## V.  LEGAL AUTHORITY OF ERSTE ASSET MANAGEMENT GMBH TO MANAGE, TO TAKE INVESTMENT DECISIONS AND TO SUE ON BEHALF OF THE FOLLOWING FUNDS

### A. Erste Responsible Stock America

28.     Erste Responsible Stock America is a retail fund, more precisely a *"undertaking for collective investment in transferable securities (UCITS)"* under § 2 InvFG 2011. Its fund rules have been approved by the Austrian Financial Market Authority (FMA) and it was launched on 1 March 1990. It is an active fund. Its management company, according to §§ 5 through 38 InvFG, is Erste AM, which has its registered office in Vienna, Austria. The fund is therefore established under Austrian Law. Its depositary bank is Erste Group Bank AG, Vienna.

29.     Erste AM is, as the fund's management company, exclusively authorized to dispose over the fund's assets, to take all investment decisions, and to exercise all rights relating to the fund's assets (please see recitals 5 through 19, above), including the right to sue or to be sued (please see recitals 21 through 27, above). In this context, Erste AM acts in its own name, but on account of Erste Responsible Stock America.

30.     According to the fund rules, Erste Responsible Stock America invests at least 51 % of its

---

[15] Kammel/Thierrichter, The concept of special assets against the background of investment fund law, ÖBA 2011, 237, Page 6. In German: Kammel/Thierrichter, Der Begriff des Sondervermögens vor einem investmentfondsrechtlichen Hintergrund, ÖBA 2011, 237, Seite 6: "Charakteristisch ist nach hM, dass dem Sondervermögen keine Rechtspersönlichkeit zukommt, was zur Folge hat, dass es weder aktiv noch passiv klagelegitimiert ist. Da somit die Berechtigung oder Verpflichtung des Sondervermögens als Gegenstand eines Rechtsstreits nicht gegeben ist, tritt die KAG als indirekter Stellvertreter, also im eigenen Namen und auf Rechnung der Anteilinhaber auf. Somit kommt die aktive wie auch passive Klagelegitimation für das Sondervermögen der KAG als gesetzlicher Vertreterin zu".

[16] Kalss in Macher/Buchberger/Kalss/Oppitz, Kommentar zum InvFG, 2013, 2nd edition.

250512-23-25 Declaration of Dr. Specht,                                                    13

assets in stocks from companies that are registered in America, listed on a securities exchange in America, or that are traded on a regularly operating securities market in America in the form of purchased individual instrument and that have been identified as providing a particular benefit to the environment and have been classified as sustainable.

## B. Erste Responsible Stock Global

31.     Erste Responsible Stock Global is a retail fund, more precisely a *"undertaking for collective investment in transferable securities (UCITS)"* under § 2 InvFG 2011. Its fund rules have been approved by the Austrian Financial Market Authority (FMA) and it was launched on 15 July 2003. It is an active fund. Its management company, according to §§ 5 through 38 InvFG, is Erste AM, which has its registered office in Vienna, Austria. The fund is therefore established under Austrian Law. Its depositary bank is Erste Group Bank AG, Vienna.

32.     Erste AM is, as the fund's management company, exclusively authorized to dispose over the fund's assets, to take all investment decisions, and to exercise all rights relating to the fund's assets (please see recitals 5 through 19, above), including the right to sue or to be sued (please see recitals 21 through 27, above). In this context, Erste AM acts in its own name, but on account of Erste Responsible Stock Global.

33.     According to the fund rules, Erste Responsible Stock Global invests at least 51% of its assets in stocks from companies around the world that have been identified as providing a particular benefit to the environment and have been classified as sustainable.

## C. Erste WWF Stock Environment

34.     Erste WWF Stock Environment is a retail fund, more precisely a *"undertaking for collective investment in transferable securities (UCITS)"* under § 2 InvFG 2011. Its fund rules have been approved by the Austrian Financial Market Authority (FMA) and it was launched on 2 July 2001. It is an active fund. Its management company, according to §§ 5 through 38 InvFG, is Erste AM, which has its registered office in Vienna, Austria. The fund is therefore established under Austrian Law. Its depositary bank is Erste Group Bank AG, Vienna.

35.     Erste AM is, as the fund's management company, exclusively authorized to dispose over the fund's assets, to take all investment decisions, and to exercise all rights relating to the fund's assets (please see recitals 5 through 19, above), including the right to sue or to be sued (please see recitals 21 through 27, above). In this context, Erste AM acts in its own name, but on account of Erste WWF Stock Environment.

36.     According to the fund rules, Erste WWF Stock Environment invests at least 51% of its assets in stocks from companies that have been identified as providing a particular benefit to the environment and have been classified as sustainable.

## D. Erste Green Invest

37.     Erste Green Invest is a retail fund, more precisely a *"undertaking for collective investment in transferable securities (UCITS)"* under § 2 InvFG 2011. Its fund rules have been approved by the Austrian Financial Market Authority (FMA) and it was launched on 3 August 2020. It is an active fund. Its management company according to §§ 5 through 38 InvFG is Erste AM, which has its registered office in Vienna, Austria. The fund is therefore established under

250512-23-25 Declaration of Dr. Specht,                                        14

Austrian Law. Its depositary bank is Erste Group Bank AG, Vienna.

38.     Erste AM is, as the fund's management company, exclusively authorized to dispose over the fund's assets, to take all investment decisions, and to exercise all rights relating to the fund's assets (please see recitals 5 through 19, above), including the right to sue or to be sued (please see recitals 21 through 27, above). In this context, Erste AM acts in its own name, but on account of Erste Green Invest.

39.     According to the fund rules, Erste Green Invest invests at least 51% of its assets in stocks from companies that have been identified as providing a particular benefit to the environment and have been classified as sustainable.

### E.  Erste Green Invest Mix

40.     Erste Green Invest Mix is a retail fund, more precisely a *"undertaking for collective investment in transferable securities (UCITS)"* under § 2 InvFG 2011. Its fund rules have been approved by the Austrian Financial Market Authority (FMA) and it was launched on 13 October 2020. It is an active fund. Its management company, according to §§ 5 through 38 InvFG, is Erste AM, which has its registered office in Vienna, Austria. The fund is therefore established under Austrian Law. Its depositary bank is Erste Group Bank AG, Vienna.

41.     Erste AM is, as the fund's management company, exclusively authorized to dispose over the fund's assets, to take all investment decisions, and to exercise all rights relating to the fund's assets (please see recitals 5 through 19, above), including the right to sue or to be sued (please see recitals 21 through 27, above). In this context, Erste AM acts in its own name, but on account of Erste Green Invest Mix.

42.     According to the fund rules, Erste Green Invest Mix invests at least 51% of its assets in stocks from companies that have been identified as providing a particular benefit to the environment and have been classified as sustainable.

### F.  Certificate by the Austrian Financial Market Authority

43.     In July 2024, I obtained a certificate by the Austrian Financial Market Authority (FMA), Department Securities Supervision, in relation to a US securities class action against other defendants, but involving the five Funds mentioned above, which I attach as Exhibit B to this Declaration. The FMA expressly confirms that Erste AM is authorized to dispose over the Funds' assets and to conduct litigation on behalf of the Funds referred to in Section I, above.

## VI.  CONCLUSION

44.     I have reviewed the documents referenced in Section III, above. None of these materials contain any language that purports to limit in any way Erste AM's legal authority, as the management company of the Funds, to bring a lawsuit on behalf of said funds.

45.     Accordingly, based on the foregoing, it is my opinion that Erste AM has statutory authority and legal capacity to pursue this lawsuit on behalf of the Funds. The right to dispose of the assets of a UCITS includes the right to conduct legal proceedings in relation to all assets

250512-23-25 Declaration of Dr. Specht,                                          15

of the respective fund. Therefore, only Erste AM is entitled to initiate legal proceedings pertaining to the Funds' assets.

46.      Erste AM is the appropriate party to bring the lawsuit on behalf of the Funds.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and accurately sets forth my opinions on the matters discussed.

Vienna, Austria, 12 May 2025

Dr. Leopold Specht, LL.M, SJ.D.
Specht &Partner Rechtsanwalt GmbH
Rooseveltplatz 4-5 / 8
A-1090 Vienna, Austria
T. + 43 1/219 68 69
leopold.specht@specht-partner.com

250512-23-25 Declaration of Dr. Specht,                                          16

## EXHIBITS

Exhibit A:          CV of Dr. Leopold Specht
Exhibit B:          Certificate by the Austrian Financial Market Authority (FMA) dated 25 July 2024

**Exhibit A**

**to**

**DECLARATION OF DR. LEOPOLD SPECHT**

# Dr. Leopold Specht, LL.M. SJD

Rooseveltplatz 4-5/8
1090 Vienna, Austria
T: +43 1 / 219 68 69
leopold.specht@specht-partner.com

## AREAS OF EXPERTISE

- Mergers & Acquisitions
- Corporate Commercial Law
- Regulatory Compliance
- International Contract Law
- International Taxation
- International Arbitration

## PROFESSIONAL EXPERIENCE

**Specht & Partner Rechtsanwalt GmbH**
Managing Partner

**August 2001 - Present**
Vienna, Austria

**Law office of Dr. Leopold Specht**
Attorney at Law

**August 1993 – December 2001**
Vienna, Austria

## EDUCATION

**Harvard Law School**
S.J.D.

**June 1994**
Cambridge, MA, USA

**Harvard Law School**
LL.M.

**September 1987 – June 1988**
Cambridge, MA, USA

**University of Vienna**
J.D. Law

**September 1975 – March 1981**
Vienna, Austria

**University of Naples**
Chair of Comparative Legal Studies

**March 1980 – March 1981**
Naples, Italy

**University of Rome**

**October 1979 – February 1980**
Rome Italy

## LANGUAGES

- German
- English
- Russian
- Italian
- French

## PROFESSIONAL AND CIVIC ACTIVITIES

- Member of the Board of Directors of the Interdisciplinary Association of Comparative and Intercultural Law, Vienna (2009 to 2016)

2

- Vice-Chairman of the Supervisory Board of "Austro-Control GmbH" (Austrian state-owned air traffic controlling company) (2007-2018)

- Member of the Supervisory Board of "ÖBB Holding AG" (Austrian state-owned railroad company) (2007-2018)

- Member of the Austrian Constitutional Convention (2003 – 2004)

- Member of the Academic Council of the Institute of Global Law and Politics (former European Law Research Center), Harvard Law School, Cambridge, MA (since 1995)

- Member of the Austrian Bar Association (since 1991)

## EXPERIENCE AS ARBITRATOR

- Arbitrator at the International Court of Arbitration with the Chamber of Economics and Industry of the Russian Federation, Moscow: served as sole arbitrator, as chairman of arbitration panels and as arbitrator nominated by parties,

- Arbitrator with the ICC International Court of Arbitration, Paris, France: served as member of arbitration panels nominated by parties and as sole arbitrator

- Arbitrator with the International Arbitral Centre of the Austrian Federal Economic Chamber in Vienna: served as member of arbitration panels nominated by parties

- Arbitrator with the "Deutsches Institut für Schiedsgerichtsbarkeit" (DIS), Chairman

- Counsel and party representative in arbitration proceedings with the following institutional arbitrations:

  - ICSID: obtained the first arbitration award in sovereign arbitration against the Ukraine (2011)

  - International Arbitral Centre of the Austrian Federal Economic Chamber in Vienna

  - Arbitration Court of the Swiss Chambers' Arbitration Institution, Zurich, Switzerland

  - Arbitration Institute of the Finland Chamber of Commerce (FAI), Helsinki, Finland

  - Arbitration Institute of Stockholm Chamber of Commerce, Stockholm Sweden

  - London Court of International Arbitration, London, UK

  - ICC International Court of Arbitration, Paris, France

  - International Court of Arbitration with the Chamber of Commerce and Industry of the Russian Federation, Moscow, Russian Federation

  - Ad hoc arbitrations under Austrian law, Hungarian law, and the laws of England and Wales

3

**TEACHING**

- Harvard Law School, Cambridge, MA, USA; Institute for Global Law and Policy, Global Scholars Workshop in Doha, Bangkok, Madrid, Budapest, Stellenbosch (Legal Structure of Money; Institutional Framework of Global Capitalism; Jurisprudence of Finance; Law and Development) (since 2010)

- University of Turin, Italy, Faculty of Law, Visiting Professor (Jurisprudence of France) (since 2012)

- S.T.S. Summer School @ Harvard, Lecturer (2022)

- Academic Head of the "Laboratory for Law and Development", Higher School of Economics, Moscow, Russian Federation (2014 - 2021)

- Visiting Professor, Faculty of Law, Higher School of Economics, Moscow, Russian Federation (since 2014 - 2021)

- University of Perugia, Perugia, Italy, Comparative Law (2012)

- University of Turin, Turin, Italy, Law and Development, Post-Graduate Master Program (since 2008)

- Brown University, Watson Institute for International Relations, Providence, RI Visiting Professor, 2009, (Comparative Law; International Law; Legal Theory; Globalization)

- Summer Program for International and Comparative Business Law of the University of Economics of Vienna in cooperation with the Institute for Civil Law Legislation with the Administration of the President of the Russian Federation, Vienna, Austria (since 2007);

- University "La Sapienza", Rome, Italy (2004 - 2007), Visiting Professor (Comparative Law; International Law; Legal Theory; Globalization)

- University of Innsbruck, Austria (2003), Lecturer (Jurisprudence)

- Academy of Fine Arts, Vienna, Austria (2000-2002), Lecturer (Intellectual Property; Administrative Law)

- Northeastern University School of Law, Boston, MA (Autumn 1995), Visiting Professor (Public International Law)

- Harvard Law School, Cambridge, MA (1992-1994), Lecturer (Comparative Law)

- University of Innsbruck, Innsbruck, Austria (1989-1990), Lecturer (Legal Theory)

- University of Naples, Naples, Italy (1985), Visiting Professor (Comparative Law)

- Technical University of Vienna, Institute of Public Finance, Vienna, Austria (1984–1987) Lecturer (Legal Theory)

4

## PUBLICATIONS

- Specht, Leopold: Europäische Sicherheitsarchitektur. In: Heinz Gärtner (Hg.): die Ukraine im Krieg, ist Frieden möglich? Wien: LIT Verlag, 2022. p. 215ff.
- Specht, Leopold: *Redistribution and Entitlement: a Democratic Union*, In: Framing a New Progressive Narrative, Brussels, 2014
- Specht, Leopold: *Grenzen von Souveränität?* In: Michael Benedikt, Reinhold Knoll, Franz Schwediauer, Cornelius Zehetner (Hg.): Verdrängter Humanismus – verzögerte Aufklärung, Band VI, Philosophie in Österreich 1951 -2000, Wien, facultas.wuv 2010. S.215ff.
- Specht, Leopold: An Argument for Alternative Globalization. International Symposium on the International Legal Order. Theme 1: Economy, Prosperity, and Social Justice. In: Leiden Journal of International Law, Volume 16 (2003). S. 849ff;
- Specht, Leopold: *Property, Money and Transformation. An Anti-Necessitarian Prospective.* In: Hague Yearbook of International Law, Volume 13 (2000). S. 69ff;
- Specht, Leopold: Property as a Bundle of Rights. In: Kregel, Jan / Matzner, Egon / Percynski, Maciej: *After the Market Shock. Central and East-European Economies in Transition.* Aldershot et al.: Dartmouth 1994. S. 109ff;
- Kregel, Jan / Lushin, Andrei / Matzner, Egon / Specht, Leopold: The *Post-Shock Agenda. How to Make the Market – Forms of Property and Control.* In: Kregel, Jan / Matzner, Egon / Percynski, Maciej: After the Market Shock. Central and East-European Economies in Transition. Aldershot et al.: Dartmouth 1994. S. 109ff;
- Kennedy, Duncan / Specht, Leopold: *Limited Equity Housing Cooperatives as a Mode of Privatization.* In: Alexander, Gregory S. / Skapska, Grazyna (Hg.): A Fourth Way? Privatization, Property, and the Emergence of New Market Economies. New York-London: Routledge 1994. S. 267ff.
- Kennedy, David / Specht, Leopold: *Austrian Membership in the European Communities.* In: Harvard International Law Journal, Volume 31, Number 2 (1990). S. 407ff;
- Specht, Leopold: *Unbewaffnete Neutralität.* In: Dialog. Beiträge zur Friedensforschung, Band 19 (1990). S. 187ff;
- Specht, Leopold: *On the New Thinking. Legal Reform as Basis of Perestroika.* In: Quaderni, Numero 6 (1990). S. 129ff;
- Kennedy, David / Specht, Leopold: *Austria and the European Communities.* In: Common Market Law Review, Volume 26 (1989). S. 615ff;
- Specht, Leopold: *Das Recht als Steuerungsressource.* In: Kansainoikeus-Jus Gentium, Nummer 5 (1988). S. 162ff;
- Specht, Leopold: *Bemerkungen zur "Gehorsamsgrenze" im Recht.* In: Wiener Blätter zur Friedensforschung, Nummer 46/47 (1986). S. 62ff;
- Entacher, Edmund / Specht, Leopold: *Anmerkungen zum Konzept der Militärischen Landesverteidigung in Österreich.* In: Dialog. Beiträge zur Friedensforschung, Band 1 (1984). S. 152ff;
- Specht, Leopold: *Il Modello Austriaco di Difesa.* In: Accame, Falco et al.: Pace e Sicurezza. Problemi e Alternative. Mailand: Franco Angeli 1984. S. 191ff;

5

**Exhibit B**

**to**

**DECLARATION OF DR. LEOPOLD SPECHT**

 

ÖSTERREICHISCHE
FMA · FINANZMARKTAUFSICHT

Specht & Partner Rechtsanwalt GmbH

Rooseveltplatz 4-5 / 8
1090 Wien

DEPARTMENT Securities Supervision
GZ FMA-IF25 9300/0061-ASM/2024
(to be quoted in further correspondence!)

EXPERT MMag. Konstantina Giannicopoulos
PHONE (+43-1) 249 59 -3321
FAX (+43-1) 249 59 -3399
E-MAIL konstantina.giannicopoulos@fma.gv.at
E-ZUSTELLUNG: ERsB-ORDNUNGSNR. 9110020375710

VIENNA, 25.07.2024

## Certificate

The Austrian Financial Market Authority certifies hereby that the Austrian investment management company Erste Asset Management GmbH is licensed according to Section 1 para 1 fig. 13 Austrian Banking Act, BGBL Nr. 532/1993 as amended, to manage investment funds according to Section 5 para 1 pursuant to the Federal Act on Investment Funds 2011, BGBl. I Nr. 77/2011 as amended.

The Austrian investment management company Erste Asset Management GmbH, based in 1100 Vienna, Am Belvedere 1, Austria is supervised by the Austrian Financial Market Authority since December 23, 2008.

Furthermore, the Austrian Financial Market Authority certifies that Erste Asset Management GmbH possesses the right of disposal over the assets within the meaning of Section 52 Federal Act on Investment Funds 2011of the following investment funds:

- ERSTE RESPONSIBLE STOCK AMERICA
- ERSTE RESPONSIBLE STOCK GLOBAL
- ERSTE WWF STOCK ENVIRONMENT
- ERSTE GREEN INVEST
- ERSTE GREEN INVEST MIX

The funds are Austrian mutual funds (UCITS = undertaking for collective investment in transferable securities) pursuant to Section 2 Paragraph 1 and 2 in conjunction with Section 50 of the Austrian Investment Fund Act 2011 (InvFG 2011) and comply with Directive 2009/65/EC (UCITS Directive).

In addition, the Erste Asset Management GmbH is authorized in particular to intervene in court for the above-mentioned investment funds in Austria and abroad, to instruct lawyers to represent it in court and to bring or have brought legal action for these funds.



Financial Market Authority
On behalf of the Executive Board

Dr. Othmar Berger                    MMag. Konstantina Giannicopoulos

signed electronically

| | Unterzeichner | Österreichische Finanzmarktaufsichtsbehörde |
|---|---|---|
| | Datum/Zeit-UTC | 2024-07-25T12:01:54+02:00 |
| | Prüfinformation | Informationen zur Prüfung des elektronischen Siegels bzw. der elektronischen Signatur finden Sie unter: https://www.signaturpruefung.gv.at Informationen zur Prüfung des Ausdrucks finden Sie unter: https://www.fma.gv.at/amtssignatur |
| Hinweis | | Dieses Dokument wurde amtssigniert. Auch ein Ausdruck dieses Dokuments hat gemäß § 20 E-Government-Gesetz die Beweiskraft einer öffentlichen Urkunde. |

2/2