# Exhibit 21

**KING & SPALDING LLP**
Stephen V. O'Neal (SBN 95804)
  *soneal@kslaw.com*
David Wallach (SBN 233432)
  *dwallach@kslaw.com*
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:    +1 415 318 1200
Facsimile:    +1 415 318 1300

Attorneys for Defendant and Cross-Complainant
DIABLO ENERGY STORAGE, LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF CONTRA COSTA

| | |
|---|---|
| FLUENCE ENERGY, LLC, a Delaware limited liability company, | Case No. C23-02528 |
| Plaintiff, | **DIABLO ENERGY STORAGE, LLC'S CROSS-COMPLAINT FOR BREACH OF CONTRACT AND DISGORGEMENT** |
| v. | |
| DIABLO ENERGY STORAGE, LLC, a Delaware limited liability company; EMPIRE BUSINESS PARK, LLC, a California limited liability company; THE BANK OF NEW YORK MELLON, a New York corporation; and DOES 1 through 50, inclusive, | Judge:   The Hon. Charles S. Treat<br>Dept.:    12 |
| | Complaint filed:  October 6, 2023 |
| Defendants. | |
| DIABLO ENERGY STORAGE, LLC, a Delaware limited liability company, | |
| Cross-Complainant, | |
| v. | |
| FLUENCE ENERGY, LLC, a Delaware limited liability company; and ROES 1 through 20, inclusive. | |
| Cross-Defendants. | |

CROSS-COMPLAINT FOR BREACH OF CONTRACT AND DISGORGEMENT

Cross-Complainant Diablo Energy Storage, LLC ("Diablo") cross-complains and alleges against Fluence Energy, LLC ("Fluence") and Defendants ROES 1 through 20 (Fluence and ROES 1 through 20 are, collectively, "Cross-Defendants"), as follows:

**THE PARTIES**

1.      Diablo is, and at all times relevant herein was, a limited liability company organized and existing under the laws of the State of Delaware and is and was duly licensed and qualified to do business in the State of California.

2.      Fluence is, and at all times relevant herein was, a limited liability company organized and existing under the laws of the State of Delaware and doing business in Contra Costa County, California.

3.      Diablo is ignorant of the true names of defendants ROES 1 through 20 ("ROE Defendants"), inclusive, and therefore has sued them by the foregoing names which are fictitious, and is informed and believes and thereon alleges, in accordance with Code of Civil Procedure section 474, that the ROE Defendants are legally responsible in some manner for the occurrences herein alleged and legally and proximately caused damages to Diablo as hereafter alleged.  Diablo will amend the Complaint when the ROE Defendants' true names and capacities are ascertained. Each reference in this cross-complaint to "Cross-Defendants" or a specifically-named cross-defendant refers also to all cross-defendants sued under such fictitious names.

4.      Diablo is informed and believes, and on that basis alleges, that at all times mentioned herein, each of the fictitiously named cross-defendants, was the agent, servant, or employee of Fluence, acting within the purpose and scope of such agency, service, and employment, and is responsible for the acts hereinafter alleged.

**GENERAL ALLEGATIONS**

5.      Diablo and Fluence entered a written Amended and Restated Engineering, Procurement and Construction Agreement for the Diablo Energy Storage System dated and effective as of August 4, 2020 (the "EPC Agreement").  Pursuant to the EPC Agreement, Fluence agreed to perform the engineering, procurement and construction of the Diablo Energy Storage System (the "Project") for the Contract Price of $237,976,007.

CROSS-COMPLAINT FOR BREACH OF CONTRACT AND DISGORGEMENT

6.     Diablo and Fluence also entered a written Energy Storage System Services Agreement (the "Services Agreement") dated and effective as of August 17, 2020.  Pursuant to the Services Agreement, Fluence agreed to perform repairs, maintenance and other services on the Project in exchange for specified fees.

7.     The Project is an energy storage facility located at 783 Willow Pass Road, Pittsburg, CA, that uses lithium-ion batteries to receive, store and discharge electric energy from the electric grid controlled by the California Independent System Operator ("CAISO").  The Project is designed to have a storage capacity of 955 Mega Watt hours ("MWh") and a discharge capacity of 200MW in a single continuous discharge for a duration of four hours.  Under the EPC Agreement, the Work to be performed by Fluence included:

a.     Engineering and design: all engineering and calculations to ensure that the Project is designed for safe unmanned operation and meets all applicable technical requirements, permits, and standards;

b.     A battery system, consisting of lithium-ion batteries, racks, battery management system (BMS), and all associated cables and protective equipment;

c.     Power conversion system (PCS) consisting of bi-directional inverters, transformers, and all associated cables, connections, and protective equipment;

d.     Energy storage system (ESS) control system including all hardware, software, configuration, and wiring to safely operate and monitor the batteries, battery management system, PCS, SCADA, and balance of plant components including HVAC and fire safety;

e.     Project substation;

f.     Site improvements;

g.     Buildings and/or enclosure(s) to house the batteries and other equipment, not intended for human occupancy;

h.     Procurement, installation and commissioning;

CROSS-COMPLAINT FOR BREACH OF CONTRACT AND DISGORGEMENT

  i.  Recycling of the batteries once they have reached end of life, delivered by Owner to battery OEM location;

  j.  Remedy of warranty defects per Article 12 of the Commercial Terms; and

  k.  The supply of certain spare parts.

8. The engineering, procurement and construction of the Project was divided into Phases. The EPC Agreement established separate Guaranteed Substantial Completion Dates for Phases 1 and 2, and for Project Substantial Completion. Project Substantial Completion required, in addition to Substantial Completion of Phases 1 and 2, that Fluence successfully complete and deliver the results of Project-Wide Acceptance Tests and other documentation, and that Fluence and Diablo agree on a Punchlist. Final Completion required, among other things, completion of all Punchlist Items and all outstanding warranty claims. The Guaranteed Substantial Completion Dates were as follows:

| Phase | Guaranteed Substantial Completion Date |
|---|---|
| Phase 1 | June 1, 2021 |
| Phase 2 | July 15, 2021 |
| Project Substantial Completion | August 15, 2021 |

9. Under Section 11.7 of the EPC Agreement, Fluence's failure to achieve Substantial Completion of Phase 1, Phase 2, or Project Substantial Completion by the applicable Guaranteed Substantial Completion Date entitled Diablo to recover liquidated damages at specified daily rates. The parties agreed that the liquidated damages were a reasonable estimate of the losses that Diablo would incur as a result of Fluence's failure to achieve the Guaranteed Substantial Completion Dates and were not a penalty.

10. Fluence's progress was substantially delayed for reasons that were Fluence's responsibility and did not entitle Fluence to an extension of the Guaranteed Substantial Completion Dates. Under the EPC Agreement, the Guaranteed Substantial Completion dates could be extended only by a duly issued Change Order. Fluence did not submit any contractually

4

CROSS-COMPLAINT FOR BREACH OF CONTRACT AND DISGORGEMENT

compliant requests entitling it to any Change Orders extending the Guaranteed Substantial Completion Dates, and no such Change Orders were issued.

11.     Fluence submitted a Certificate of Substantial Completion of Phase 1 dated April 15, 2022, which is 318 days after the Phase 1 Guaranteed Substantial Completion Date.  Fluence submitted a Certificate of Substantial Completion of Phase 2 dated April 27, 2022, which is 286 days after the Phase 2 Guaranteed Substantial Completion Date.  Fluence submitted a Certificate of Project Substantial Completion dated April 27, 2022, which is 255 days after the Guaranteed Project Substantial Completion Date.

12.     Following receipt of Fluence's Certificates of Substantial Completion, Diablo assumed custody and control of the Project at 11:59 pm on April 29, 2022.  Shortly thereafter, the Project began to experience a series of failures resulting from Fluence's poor workmanship and other shortcomings, including but not limited to the following:

a.  The control system responds slowly and inaccurately to CAISO signals which, among other problems, caused CAISO to remove the Facility from the ancillary market for several weeks;

b.  Fluence's proprietary Human-Machine Interface Monitor ("HMI") does not function properly, requiring Diablo to operate the system using a Data Acquisition System that is inefficient and not intended for that purpose;

c.  The Auxiliary Control System has experienced frequent failures that caused overheating and the signals and alarms meant to provide notice of such failures do not function properly;

d.  Inverter modules fail at a high rate requiring constant maintenance and replacement.  For example, in the month between June 13, 2022 and July 14, 2022, the Project experienced 27 inverter failures;

e.  As a result of Fluence's poor electrical work, two arc flash events have occurred causing serious safety hazards and equipment damage; and

///

///

5

CROSS-COMPLAINT FOR BREACH OF CONTRACT AND DISGORGEMENT

f.  The facility requires constant operation, oversight and maintenance by Diablo personnel and therefore fails to satisfy the EPC Agreement, which requires Fluence to engineer, procure, and construct a facility for unmanned operation.

13.  Diablo duly submitted more than 100 Warranty Claims based on defects and deficiencies in Fluence's work and equipment.  Dozens of those Warranty Claims remain outstanding, many of which have been unresolved for more than a year.

14.  In addition, Diablo duly provided Fluence notice of chronic failures in August and September 2022 with respect to the Project's control system and inverters, and in November 2023 with regarding to the inverter heat sinks.  Section 12.2.3 of the EPC Agreement requires Fluence to investigate the root cause of any duly noticed chronic failures; repair, replace, or adjust to correct the root cause of the chronic failure; and develop and implement a program to monitor for any recurrence.  The chronic failures of the control system, inverters, and inverter heat sinks have not been addressed and resolved by Fluence.

15.  In sum, Fluence's performance under the EPC Agreement has been woefully deficient.  Fluence delivered Substantial Completion Certificates and turned over control of the Project hundreds of days behind schedule.  Fluence delivered a Project that does not function as designed and requires constant oversight and maintenance.  Fluence has failed to properly address and resolve warranty items and chronic failures of essential systems.  And Fluence still has not achieved Final Completion.

**FIRST CAUSE OF ACTION**

**Breach of Contract**

**(Against Fluence and ROE Defendants)**

16.  Diablo realleges and incorporates by reference paragraphs 1 through 15, inclusive, as if fully set forth herein.

17.  On or about August 4, 2020, Fluence and Diablo entered into the written EPC Agreement.

18.  Diablo performed all of the conditions, covenants, and promises required of it under the EPC Agreement.

6

CROSS-COMPLAINT FOR BREACH OF CONTRACT AND DISGORGEMENT

19.    Fluence breached the EPC Agreement including but not limited to by failing to achieve Substantial Completion by the Guaranteed Substantial Completion Dates in breach of Articles 3.1(d) and 11.7; by failing to provide Work that is free from defects in design, materials and workmanship in breach of Article 12.1; by failing to adequately correct defective design, materials, workmanship and/or equipment after due receipt of proper warranty notices in breach of Article 12.2; by failing to properly investigate and repair chronic failures with the Project control system and inverters in breach of Article 12.2.3; by causing the failure of Battery Supplier Equipment in breach of Article 12.5; and by recording a mechanics lien for amounts not properly due and payable to Fluence in breach of Article 17.4.

20.    Fluence's breaches of the EPC Agreement proximately caused injury and damage to Diablo and will continue to cause injury and damage to Diablo, including but not limited to liquidated damages for delays to Substantial Completion of Phase 1, Phase 2 and Project Substantial Completion; other liquidated damages due under Article 12.5 of the EPC Agreement; increased operating and maintenance costs; and other damages resulting from reduced capacity, inefficiency, and restricted access to the market.  Diablo has been damaged by Fluence in an amount to be established according to proof but estimated to be in excess of $25,000,000.

WHEREFORE, Diablo seeks relief as set forth in the Prayer for Relief.

**SECOND CAUSE OF ACTION**

**Disgorgement of all compensation received under the EPC Agreement**

**(Fluence and all ROE Defendants)**

21.    Diablo realleges and incorporates by reference paragraphs 1 through 20, inclusive, as if fully set forth herein.

22.    California law requires a contractor to maintain a valid license at all times during the performance of a contract.  Under Business & Professions Code § 7031(b), a contractor that fails to maintain a valid license at all times during the performance of a contract must disgorge all compensation paid under the contract.

23.    Fluence violated California law by failing to maintain a valid license at all times during performance of the EPC Agreement.

7

CROSS-COMPLAINT FOR BREACH OF CONTRACT AND DISGORGEMENT

24.     Diablo is entitled to recover all compensation paid by Diablo to Fluence under the EPC Agreement in the approximate amount of $229,106,742.

## THIRD CAUSE OF ACTION

### Disgorgement of all compensation received under the Services Agreement

### (Fluence and all ROE Defendants)

25.     Diablo realleges and incorporates by reference paragraphs 1 through 24, inclusive, as if fully set forth herein.

26.     California law requires a contractor to maintain a valid license at all times during the performance of a contract.  Under Business & Professions Code § 7031(b), a contractor that fails to maintain a valid license at all times during the performance of a contract must disgorge all compensation paid under the contract.

27.     Fluence violated California law by failing to maintain a valid license at all times during performance of the Services Agreement.

28.     Diablo is entitled to recover all compensation paid by Diablo to Fluence under the Services Agreement in the approximate amount of $821,964.

## PRAYER FOR RELIEF

WHEREFORE, Diablo prays for judgment against Defendants, and each of them, as follows:

1.     For judgment on the first cause of action in an amount to be proven at trial, together with interest as provided by contract or law, in favor of Diablo and against Fluence;

2.     For judgment on the second cause of action in the approximate amount of $229,106,742, together with interest as provided by contract or law, in favor of Diablo and against Fluence;

3.     For judgment on the third cause of action in the approximate amount of $821,964, together with interest as provided by contract or law, in favor of Diablo and against Fluence;

4.     For attorneys' fees as provided by contract or law;

5.     For costs of suit; and

CROSS-COMPLAINT FOR BREACH OF CONTRACT AND DISGORGEMENT

6.    For such other and further relief as the Court considers just and proper.

Dated:  November 10, 2023                    KING & SPALDING LLP


                                             By:        Stephen V. O'Neal
                                                        David Wallach


                                             Attorneys for Defendant and Cross-
                                             Complainant DIABLO ENERGY
                                             STORAGE, LLC

CROSS-COMPLAINT FOR BREACH OF CONTRACT AND DISGORGEMENT

**PROOF OF SERVICE**

*Fluence Energy, LLC v. Diablo Energy Storage, LLC*
Contra Costa County Superior Court Case No. C23-02528

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco; my business address is 50 California Street, Suite 3300, San Francisco, CA 94111 and my electronic service address is *tle@kslaw.com*.

On November 10, 2023, I caused to be served true copies of the following document(s) described below on the interested parties in this action as follows:

- **DIABLO ENERGY STORAGE, LLC'S CROSS-COMPLAINT FOR BREACH OF CONTRACT AND DISGORGEMENT**

**BY ELECTRONIC SERVICE:** By electronically mailing a true and correct copy through King & Spalding LLP's electronic mail system to the email addresses set forth below.

Sean-Thomas P. Thompson
John W. Klotsche
O'CONNOR THOMPSON MCDONOUGH KLOTSCHE LLP
2500 Venture Oaks Way, Suite 320
Sacramento, CA 95833
P: (916) 993-4540
Email: sean@otmklaw.com
           john@otmklaw.com

*Attorneys for Fluence Energy, LLC*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on November 10, 2023, at San Francisco, California.

_____
Tran Le

10
CROSS-COMPLAINT FOR BREACH OF CONTRACT AND DISGORGEMENT