# Exhibit 23

VIRGINIA:

## IN THE CIRCUIT COURT FOR ARLINGTON COUNTY

FLUENCE ENERGY, LLC )
)
Plaintiff, ) Civil Action No. CL23-3527
)
v. )
)
SIEMENS ENERGY, INC. )
)
Defendant. )

## SIEMENS ENERGY, INC.'S ANSWER AND COUNTERCLAIM

Siemens Energy, Inc. ("SEI"), for its Answer to the Complaint of Fluence Energy, LLC

("Fluence"), states and alleges as follows:

## PARTIES

1.      SEI lacks sufficient knowledge or information to admit or deny the allegations in

Paragraph 1 of the Complaint and therefore denies all allegations in Paragraph 1.

2.      SEI admits Paragraph 2 of the Complaint.

## JURISDICTION

3.      Paragraph 3 of the Complaint states a legal conclusion to which no response is

required. To the extent a response is required, SEI does not contest jurisdiction in this Court.  To

the extent that Paragraph 3 of the Complaint alleges anything further, SEI denies such

allegations.

4.      Paragraph 4 of the Complaint states a legal conclusion to which no response is

required. To the extent a response is required, SEI does not contest jurisdiction. The allegations

in this paragraph refer to the Purchase Orders and Annexes I & II to the Purchase Orders, which

are written documents that speak for themselves. To the extent that any allegations in Paragraph

4 of the Complaint conflict with, add to, or otherwise seek to change the terms of the referenced

1

4893-4402-0625\1

Document received by the VA Arlington 17th Circuit Court.

documents, SEI denies the same. To the extent that Paragraph 3 of the Complaint alleges anything further, SEI denies such allegations.

## ALLEGED FACTS

5.    In response to the allegations contained in Paragraph 5 of the Complaint, SEI admits that it is a contractor on a black start generator project in Antioch, California. SEI denies all remaining allegations in this paragraph.

6.    In response to the allegations contained in Paragraph 6 of the Complaint, SEI admits that, on or about September 23, 2020, it entered into two purchase orders—Purchase Order Nos. 4500837152 and 4500837839—with Fluence for the supply of and services related to a Battery Energy Storage System ("BESS") to be utilized on the Project. The Purchase Orders speak for themselves. To the extent that any allegations in Paragraph 6 of the Complaint conflict with, add to, or otherwise seek to change the terms of the Purchase Orders, SEI denies the same.

7.    In response to the allegations contained in Paragraph 7 of the Complaint, SEI admits that Fluence delivered physical components of a BESS on or about June 23, 2022, but denies the remaining allegations in Paragraph 7 and affirmatively states that the BESS that Fluence delivered differed significantly from the BESS Fluence had proposed and did not meet the Station owner's performance requirements.

8.    In response to the allegations contained in Paragraph 8 of the Complaint, SEI admits that Fluence invoiced SEI for the balance due under the Purchase Orders and that SEI has not paid the total invoiced amounts, but denies that the invoiced amounts are due because Fluence has failed to satisfy the requirements of the Purchase Orders. To the extent that Paragraph 8 of the Complaint alleges anything further, SEI denies such allegations.

9.    SEI denies the allegations contained in Paragraph 9 of the Complaint.

Document received by the VA Arlington 17th Circuit Court.

2

4893-4402-0625\1

10. SEI denies the allegations contained in Paragraph 10 of the Complaint.

11. SEI denies the allegations contained in Paragraph 11 of the Complaint.

## BREACH OF CONTRACT

12. SEI admits the allegations contained in Paragraph 12 of the Complaint.

13. SEI denies the allegations contained in Paragraph 13 of the Complaint, but admits that it requested Fluence to perform work required under the Purchase Orders.

14. SEI denies the allegations contained in Paragraph 14 of the Complaint.

15. SEI denies the allegations contained in Paragraph 15 of the Complaint.

16. In response to the allegations contained in Paragraph 16 of the Complaint, SEI admits that it has paid Fluence $4,825,952.80, but denies the remaining allegations in Paragraph 18.

17. In response to the allegations contained in Paragraph 17 of the Complaint, SEI admits that Fluence demanded payment and admits Fluence purports to demand judgment in the amount of $1,973,066.16, but denies the remaining allegations in Paragraph 17. SEI further denies that Fluence is entitled to any damages, recovery, or relief whatsoever.

18. SEI denies each and every allegation contained in the Complaint except as expressly admitted, qualified, or explained herein.

## FIRST AFFIRMATIVE DEFENSE

Fluence's claim fails to state a claim for relief and seeks damages to which Fluence is not entitled.

Document received by the VA Arlington 17th Circuit Court.

3

4893-4402-0625\1

## SECOND AFFIRMATIVE DEFENSE

Fluence's prior material breach of the Purchase Orders, including, but not limited to, its failure to satisfy the requirements of the Purchase Orders, precludes any breach of contract claim premised upon alleged breaches of the Purchase Orders by SEI.

## THIRD AFFIRMATIVE DEFENSE

Fluence's damages, if any, were proximately caused or contributed to by its own breach, conduct, and failures to perform.

## FOURTH AFFIRMATIVE DEFENSE

Fluence's claim is barred by its failure to satisfy conditions precedent or other requirements of the contract, including, but not limited to, its failure to provide a BESS capable of black starting the power generation facility or otherwise meeting the Project owner's requirements and its failure to achieve timely substantial completion.

## FIFTH AFFIRMATIVE DEFENSE

Fluence's claim is barred by its failure to meet the notice and other claim requirements applicable to its demand for reimbursement for extra and out-of-scope work.

## SIXTH AFFIRMATIVE DEFENSE

Fluence's claim is subject to offset for damages caused by its own breach, conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct.

## SEVENTH AFFIRMATIVE DEFENSE

Fluence's claim is barred, in whole or in part, by its failure to mitigate damages.

## EIGHTH AFFIRMATIVE DEFENSE

Fluence's claim is barred by Fluence's fraudulent inducement of SEI to contract with Fluence.

Document received by the VA Arlington 17th Circuit Court.

4

4893-4402-0625\1

## NINTH AFFIRMATIVE DEFENSE

Fluence's claim is barred, in whole or in part, by its substitution of the Gridstack BESS for the SieStorage BESS it had proposed to SEI.

WHEREFORE, Siemens Energy, Inc. prays that Fluence take nothing by its Complaint; that the Complaint be dismissed with prejudice; that judgment be entered in favor of Siemens Energy, Inc. on all counts; and that Siemens Energy, Inc. be awarded its costs and expenses and such other relief as the Court may find just and proper.

## COUNTERCLAIM

Siemens Energy, Inc. ("SEI") by and through its undersigned counsel, hereby submits this Counterclaim, and in support thereof states as follows:

## INTRODUCTION

1.      SEI is the Engineering, Procurement, and Construction ("EPC") contractor on a project to add black start capability (the "Black Start Addition") to a power generating station in Antioch, California (the "Station"). The Black Start Addition, once operational, will allow the Station to restart its gas turbines in the event of a blackout independently of an external electrical transmission network. A critical component of the Black Start Addition is its power source, a Battery Energy Storage System ("BESS") that SEI engaged Fluence to provide.

2.      SEI accepted Fluence's proposal to provide a BESS in which all system components were contained in four containers to be mounted on a 20 foot by 40 foot concrete pad and connected to the Station by overhead electrical connections.  Fluence, however, delivered a BESS in which the components were not fully containerized, required underground electrical connections, and required significant re-engineering of the Black Start Addition.

5

4893-4402-0625\1

Document received by the VA Arlington 17th Circuit Court.

3.     The BESS that Fluence delivered was poorly designed and, upon testing, was unable to supply consistent power to the Station.  Indeed, during testing, Fluence's BESS immediately tripped offline, cutting power to the Station. The test failure forced SEI to develop and implement modifications to the Black Start Addition. In addition, due to deficiencies and revisions in the design of Fluence's BESS, SEI had to perform extra work and incurred additional civil, electrical, engineering, and time extension costs.

4.     SEI has requested that Fluence cover the costs of these delays, modifications, and extra work, but Fluence has refused. SEI now brings this Counterclaim against Fluence for breach of contract, for fraud in the inducement, and for fraudulent omission under the special facts doctrine.

## PARTIES, JURISIDICTION, AND VENUE

5.     SEI is a Delaware corporation with a principal place of business located in Orlando, Florida.

6.     Upon information and belief, Fluence is a limited liability corporation organized under the laws of the State of Delaware with its principal place of business located at 4610 Fairfax Drive, Suite 600, Arlington, VA 22203.

7.     This Court has jurisdiction over this action pursuant to Va. Code Ann. § 17.1-513.

8.     This Court has personal jurisdiction over Fluence under Va. Code Ann. § 8.1-328.1 and 330 because its principal place of business is located in Arlington County, Virginia.

9.     Venue is proper under Va. Code Ann. § 8.01-262 because Fluence's principal place of business is located in Arlington County, Virginia.

## GENERAL ALLEGATIONS

### The Agreement Between SEI and Fluence

6

Document received by the VA Arlington 17th Circuit Court.

10.    The Station's owner hired SEI to serve as the EPC contractor on a project to add black start capability to the Station. The Station's owner, in pursuit of its environmental objectives, specifically required that black start capability be provided by electric batteries. Pursuant to its contract with the Station's owner (the "EPC Contract"), SEI sought proposals for a BESS that could provide black start capability to the Station and meet the performance requirements of the Station's owner.

11.    Fluence responded with a proposal dated June 22, 2018, to provide its "SieStorage" modular energy storage system as the BESS. The key features of the "SieStorage" system that Fluence proposed were its compact design, in which all system elements were included within four containers placed on a single 40 foot by 20 foot concrete slab; the system's scalability, which would permit additional storage capacity to be added without expanding the BESS's footprint; and the ease of connecting the BESS to the Station through overhead electrical wires, without the need for costly underground construction. Fluence was aware that SEI would rely on Fluence's proposal in its negotiations with the Station's owner concerning the design and cost of the Black Start Addition. In fact, Fluence specifically named the Station in its proposal, demonstrating its awareness that SEI would use Fluence's proposal in its negotiations with the Station's owner.

12.    Negotiations between SEI and the Station's owner concerning the Black Start Addition continued through 2020. Fluence was fully aware of the ongoing negotiations and knew that its proposal for the SieStorage system was central to the design and costs being negotiated by SEI and the Station's owner. Fluence understood that once SEI's negotiations with the Station's owner concluded, Fluence would submit an updated proposal reflecting increased battery power (due to the Station owner's removal of a diesel generator from the Black

Document received by the VA Arlington 17th Circuit Court.

7

Start Addition) and a new proposal date, to avoid questions regarding the validity of a more than year-old proposal.

13.     Even as negotiations with the Station's owner continued, SEI, through Purchase Order No. 4500819301 dated November 11, 2019, requested that Fluence commence engineering and detailed design activities for the SieStorage BESS in accordance with Fluence's June 22, 2018, proposal. As part of its engineering and design activities, Fluence was to reserve manufacturing slots for the lithium ion batteries to be used in the BESS.

14.     Despite having proposed a SieStorage BESS to SEI for the Black Start Addition, Fluence abandoned its SieStorage BESS design and instead adopted a different design, which it called "Gridstack." On information and belief, Fluence made this change, unbeknownst to SEI, due to concerns with the safety of its SieStorage systems, which had caused a cascading thermal runaway and resulting explosion on April 19, 2019, in a Fluence SieStorage BESS located in Surprise, Arizona. The Gridstack BESS design differed significantly from the SieStorage BESS design. Among other things, all system components were no longer located within a single container.

15.     On information and belief, Fluence knew in 2019 that it would not be supplying a SieStorage BESS for the Black Start Addition, but did not disclose this information to SEI until July 15, 2020.

16.     By letter dated February 19, 2020, Fluence conditionally accepted Purchase Order No. 4500819301. In the letter, Fluence expressly acknowledged that it was supporting SEI in its negotiations with the Station's owner for the Black Start Addition. Fluence also stated in the letter that it would submit an updated proposal that would "reflect pricing, warranty,

Document received by the VA Arlington 17th Circuit Court.

8

4893-4402-0625\1

performance guarantees, and delivery schedule previously transmitted to" SEI. Fluence did not indicate that it planned to propose a BESS other than the SieStorage system.

17.    On February 25, 2020, SEI and the Station's owner entered into an EPC agreement for the construction of the Black Start Addition. SEI and the Station's owner amended the EPC agreement on May 8, 2020.

18.    The Station's owner issued a full notice to proceed on the Black Start Addition on June 15, 2020.

19.    Fluence responded by submitting an updated BESS proposal on July 15, 2020. This proposal included the Gridstack BESS design, and was the first indication Fluence had given SEI that it would not be supplying the SieStorage BESS included in its 2018 proposal. The proposal also included terms and conditions at odds with those included in SEI's contract with the Station's owner, despite Fluence's understanding that the terms and conditions in its agreement with SEI would match the terms and conditions in SEI's agreement with the Station's owner.

20.    Fluence's July 15, 2020, proposal delayed the Black Start Addition for several reasons. First, the project could not proceed until Fluence and SEI agreed on terms and conditions. Second, the new BESS design required abandonment of previous engineering work on the Station site and required new design and engineering work to accommodate the new BESS design. Third, Fluence caused additional delay to the new design and engineering work by failing to provide engineering drawings of the new BESS in a timely manner.

21.    SEI also discovered that Fluence, despite its commitment to secure manufacturing slots for batteries in connection with Purchase Order No. 4500819301, did not secure

9

4893-4402-0625\1

Document received by the VA Arlington 17th Circuit Court.

manufacturing slots, causing additional delays while awaiting delivery of batteries to the Black Start Addition worksite.

22.    Fluence ultimately agreed to match the terms and conditions in SEI's EPC contract with the Station's owner.  Accordingly, Fluence submitted a revised version of its July 15, 2020 proposal to SEI on or about September 15, 2020, reflecting the agreed terms and conditions.

23.    In order to meet the Station owner's schedule for completion of the Black Start Addition, it was not feasible to solicit proposals from alternative BESS providers and to contract with anyone other than Fluence to supply a BESS for the Black Start Addition.  As a result, SEI had no practical alternative to issuing a purchase order to Fluence to supply the Gridstack BESS.

24.    On or about September 22, 2020, SEI issued Purchase Order No. 4500837152 to Fluence. The terms of Purchase Order No. 4500837152 govern Fluence's engineering, manufacturing, and delivery of the BESS.

25.    On or about September 28, 2020, SEI issued Purchase Order No. 4500837839 to Fluence. The terms of Purchase Order No. 4500837839 govern Fluence's warranty and commissioning of the BESS. Collectively, Purchase Order No. 4500837152 and Purchase Order No. 4500837839 are referred to as the "Purchase Orders."

26.    The Purchase Orders incorporated the terms and conditions of several additional contract documents, including Annex III, pursuant to which Fluence guaranteed that the BESS would meet certain performance requirements as a condition of Substantial Completion.

27.    On or about February 10, 2021, Fluence and SEI amended the Purchase Orders and agreed to a Guaranteed Substantial Completion Date of May 31, 2021.

Document received by the VA Arlington 17th Circuit Court.

10

28.    The Agreement at Annex I, Section 1.2.4.2 provides that, among other damages, SEI is entitled to liquidated damages in the amount of $15,000 per day for each day after the Guaranteed Substantial Completion Date that Substantial Completion is not achieved.

29.    Collectively, the Purchase Orders and all amendments, exhibits, and annexes thereto, constitute the agreement between SEI and Fluence for the supply of and services related to the BESS for the Black Start Addition (collectively, the "Agreement").

### Design Deficiencies and Failures of the Gridstack BESS

30.    Despite the many months of engineering work that Fluence was to have performed pursuant to Purchase Order No. 4500819301, it became apparent to SEI soon after executing the Purchase Orders that Fluence's design for the BESS was still in flux.

31.    Fluence provided SEI with incomplete and conflicting information regarding the configuration of the site and interconnection of the BESS components with the other components of the Black Start Addition and with the Station.

32.    Because of a major change made by Fluence in the design of the BESS, SEI had to change the electrical connections between the BESS and the Station from the anticipated above-ground connections to below-grade connections, which required extensive unanticipated engineering and construction work.

33.    As a result, SEI incurred $5,459,894.00 in additional, unanticipated costs to complete the civil, electrical, and engineering work necessary to install the BESS.

34.    SEI notified Fluence by letter on September 17, 2021, that Fluence was responsible for these additional costs. Fluence denied the allegations in SEI's letter and refused any responsibility for delays or other issues regarding the Black Start Addition.

Document received by the VA Arlington 17th Circuit Court.

11

35.    During performance testing of the Black Start Addition on May 14, 2022, the BESS failed to deliver sufficient energy and power to restart the Station.

36.    In the course of conducting and investigating the failed performance test, SEI discovered multiple defects in the BESS, including a design error involving the inverter's ability to handle in-rush current from the Static Frequency Converter ("SFC") transformer (the "SFC In-Rush Issue"). Although SEI provided detailed information to Fluence regarding the in-rush current during design and manufacturing of the BESS, Fluence's design failed to take the in-rush current into account. As a result, the inverter tripped during the black start testing, and SEI was unable to meet the performance test set forth in its EPC contract with the Station's owner.

37.    On information and belief, Fluence did not even consider the effect of in-rush current from the SFC transformer in proposing its Gridstack BESS to SEI.

38.    Due to the SFC In-Rush Issue and other material deficiencies in the BESS, Fluence did not achieve Substantial Completion by May 31, 2022, the Guaranteed Substantial Completion Date set forth in the February 10, 2021, change order to Purchase Order No. 4500837152.

39.    As part of its contractual responsibilities, Fluence should have designed and proposed a BESS that could adequately address in-rush current from the SFC transformer. Further, when it became apparent that Fluence had not designed and proposed a BESS that could adequately address in-rush current from the SFC transformer, it was Fluence's obligation to furnish a solution that would enable the BESS to black start the Station's gas turbines by the Guaranteed Substantial Completion Date. Due to the failure of Fluence's BESS, as well as Fluence's unwillingness or inability to furnish a solution that would enable the BESS to black start the Station's gas turbines by the Guaranteed Substantial Completion Date set forth in the

12

Document received by the VA Arlington 17th Circuit Court.

EPC Contract, SEI had to develop an interim procedure to provide black start capability to the Station (the "Temporary Solution"). The Temporary Solution addresses the SFC In-Rush Issue by manually demagnetizing the SFC step-up transformer prior to energization and initiation of the turbine start-up process. The Temporary Solution alone, however, is insufficient to meet the requirements of Substantial Completion in the EPC Contract.

40.    To meet the requirements of Substantial Completion in the EPC Contract, SEI engineered modifications to the Black Start Addition to accommodate the Gridstack BESS's deficiencies (the "Permanent Solution"). The Permanent Solution involves the addition of SFC transformer secondary breakers to limit transformer in-rush current during the turbine starting cycle. The Permanent Solution, when complete, will resolve the SFC In-Rush Issue.

41.    Until the Permanent Solution is implemented and all other material deficiencies in the Gridstack BESS are resolved, the Black Start Addition cannot achieve final completion under the EPC contract.

42.    SEI has incurred costs of $2,100,000.00 to develop and implement the Temporary Solution and the Permanent Solution, and will continue to incur costs to implement the Permanent Solution and to resolve other material deficiencies in the BESS until final completion.

43.    SEI has demanded payment from Fluence for the additional, unanticipated costs it incurred to develop and implement the Temporary Solution and the Permanent Solution and to resolve other material deficiencies in the BESS.  Fluence has refused to pay these costs.

44.    SEI has requested that Fluence perform its obligations under the Agreement and resolve the BESS's deficiencies. Fluence has refused to assist SEI in implementation of the Temporary Solution and Permanent Solution and declined to participate in future performance testing of the Black Start Addition.

Document received by the VA Arlington 17th Circuit Court.

13

## FIRST CAUSE OF ACTION
### (Breach of Contract)

45.    SEI incorporates by reference each allegation set forth in paragraphs 1 through 44 above.

46.    The parties entered into the Agreement on or about September 22, 2020, as amended from time to time.

47.    The Agreement was valid and binding between SEI and Fluence.

48.    SEI adequately performed all of its duties under the Agreement.

49.    SEI adequately performed all conditions precedent under the Agreement.

50.    For all of the reasons set forth in the above allegations, Fluence is in breach of its obligation to provide a BESS that performs in compliance with the technical and other specifications in the Agreement.

51.    Fluence's failure to provide a functioning BESS in accordance with its obligations under the Agreement has caused SEI to incur additional and increased costs to address the BESS's deficiencies during installation and to develop and implement the Temporary Solution and Permanent Solution, in the amount of $7,559,894.00 to date.

52.    In addition, the Agreement at Annex I, Section 1.2.4.2 provides that, among other damages, SEI is entitled to liquidated damages in the amount of $15,000 per day for each day after the Guaranteed Substantial Completion Date that Substantial Completion is not achieved.

53.    As a direct result of Fluence's failure to provide a functioning BESS, Substantial Completion has not occurred, entitling SEI to liquidated damages under the Agreement. The liquidated damages to which SEI is entitled total $1,509,985.00 to date.

14

4893-4402-0625\1

Document received by the VA Arlington 17th Circuit Court.

54.     Fluence's failure to provide a functioning BESS continues to harm SEI. Consequently, liquidated damages will continue to accrue until such time as the BESS meets the technical requirements and performance guarantees under the Agreement.

55.     SEI therefore is entitled to damages in an amount to be proven at trial, but expected to exceed $9.1 million exclusive of interest.

## SECOND CAUSE OF ACTION
### (Fraud in the Inducement)

56.     SEI incorporates by reference each allegation set forth in paragraphs 1 through 44 above.

57.     Fluence represented to SEI that it would supply a BESS that would meet the performance requirements of the Black Start Addition.

58.     Fluence represented to SEI that it would supply a BESS that would be enclosed within a single container that could be placed on a single 40 foot by 20 foot concrete pad and that could be connected to the Station by overhead electrical wires, obviating the need for underground construction.

59.     Fluence knew that these representations were false.

60.     Fluence intended that SEI would rely on its false representations in negotiating an EPC contract with the Station's owner and in contracting with Fluence to provide the BESS for the Black Start Addition.

61.     SEI did rely on Fluence's false representations in negotiating an EPC contract with the Station's owner and in contracting with Fluence to provide the BESS for the Black Start Addition.

Document received by the VA Arlington 17th Circuit Court.

15

4893-4402-0625\1

62.    As a result of its reliance on Fluence's false representations, SEI has incurred $5,459,894.00 in additional, unanticipated costs to install the Gridstack BESS that are not covered by its EPC contract.

63.    As a result of its reliance on Fluence's false representations, SEI has incurred $2,100,000.00 in costs to develop and implement the Temporary Solution and the Permanent Solution, and will continue to incur costs to implement the Permanent Solution and to resolve other material deficiencies in the BESS until final completion.

64.    As a result of its reliance on Fluence's false representations, the Black Start Addition project has been significantly delayed, entitling SEI to liquidated damages of $1,509,985.00 to date under its contract with Fluence.

65.    SEI therefore is entitled to damages in an amount to be proven at trial, but expected to exceed $9.1 million, exclusive of interest.

### THIRD CAUSE OF ACTION
### (Special Facts Doctrine)

66.    SEI incorporates by reference each allegation set forth in paragraphs 1 through 44 above.

67.    Fluence was aware that SEI, in negotiating the terms of its EPC contract with the Station's owner, was relying on Fluence's proposal to provide a SieStorage BESS that would be enclosed within a single container that would fit on a single 40 foot by 20 foot concrete pad and that would be connected to the Station by overhead electrical connections.

68.    Fluence knew, prior to SEI entering into the EPC contract with the Station's owner, that it planned to furnish a Gridstack BESS rather than a SieStorage BESS for the Black Start Addition; that the Gridstack BESS would not fit on a single 40 foot by 20 foot concrete pad and would instead require substantial additional design, engineering, and construction work not

Document received by the VA Arlington 17th Circuit Court.

anticipated by SEI; and that the Gridstack BESS would require underground electrical connections to the Station, which would necessitate substantial additional design, engineering, and construction work not anticipated by SEI. None of this information was available to SEI.

69.    Fluence had a duty to disclose its intent to substitute a Gridstack BESS for the SieStorage BESS it had proposed to SEI.

70.    Fluence breached this duty by failing to disclose its intent to substitute a Gridstack BESS for the SieStorage BESS sufficiently in advance of SEI entering into the EPC contract with the Station's owner to allow SEI the option of selecting a different vendor's BESS or negotiating a higher contract price with the Station's owner to reflect the additional costs that would be incurred as a result of SEI's switch from the SieStorage BESS to the Gridstack BESS.

71.    As a result of Fluence's breach, SEI has incurred $5,459,894.00 in additional, unanticipated costs to install the Gridstack BESS that are not covered by its EPC contract.

72.    SEI therefore is entitled to $5,459,894.00 in damages, exclusive of interest, as a result of Fluence's breach of its duty to disclose the switch in BESS systems.

## FOURTH CAUSE OF ACTION
### (Alternative Claim for Breach of Warranty)

73.    SEI incorporates by reference each allegation set forth in paragraphs 1 through 44 above.

74.    In the event the Court determines that the requirements of substantial completion have been met, Fluence has breached its warranties under the Purchase Orders.

75.    In Article 3 of Annex I to the Purchase Orders, Fluence warranted to SEI that Fluence's parts, materials, and equipment would be free from defects in design, workmanship, and materials; that Fluence's parts, materials, and equipment would be strictly in accordance with the Purchase Orders, construction documents, the plans and specifications, and all applicable codes,

17

4893-4402-0625\1

Document received by the VA Arlington 17th Circuit Court.

standards, and prudent industry practices; that Fluence's services would be performed in a professional, prudent, and workmanlike manner; and that Fluence's services would be strictly in accordance with the Purchase Orders, construction documents, the plans and specifications, and all applicable codes, standards, and prudent industry practices.

76.    In Section 5 of Annex II to the Purchase Orders, Fluence warranted that it would perform its services and furnish the goods in a professional and workmanlike manner; that its goods and services would be new and of merchantable quality; that its goods and services would be fit for and capable of their intended use; that its goods and services would be of high quality and free from any defect or nonconformity in design, workmanship, or materials; and that its goods and services would strictly conform to the requirements of the Purchase Orders, SEI's specifications and instructions, and generally accepted professional and engineering standards.

77.    Fluence breached its warranties by supplying a BESS that did not meet the performance guarantees and other technical requirements of the Purchase Orders and suffered from other material deficiencies, and by not performing its services in strict conformance with the Purchase Orders' requirements and with applicable professional and industry standards.

78.    SEI notified Fluence of these breaches of warranties and requested that they be remedied.

79.    Despite this notice and in breach of its warranty obligations, Fluence has failed to repair, replace, or re-perform the work as requested by SEI and has otherwise failed to cure the defects and deficiencies in its work.

80.    As a result of Fluence's breaches of warranties, SEI has incurred costs of $2,100,000.00 to develop and implement the Temporary Solution and the Permanent Solution, and

Document received by the VA Arlington 17th Circuit Court.

18

will continue to incur costs to implement the Permanent Solution and correct other material deficiencies in Fluence's work until the Black Start Addition achieves final completion.

81.      SEI is therefore entitled to damages in an amount to be proven at trial, but expected to exceed $2,100,000.00.

### PRAYER FOR RELIEF

WHEREFORE, SEI requests relief against Fluence as follows:

(a) A judgment for compensatory damages in favor of SEI and against Fluence in an amount to be determined at trial, but not less than $9,069,879.00, plus pre- and post-judgment interest.

(b) A judgment awarding SEI its costs of suit, including reasonable attorneys' fees; and

(c) All such other and further relief as this Court may deem just and proper.

Document received by the VA Arlington 17th Circuit Court.

19

DATE: November 28, 2023

Respectfully submitted,

DUNLAP BENNETT & LUDWIG PLLC

_73157_

Stephen D. Graeff (VSB Bar No. 77720)
Ellis Bennett (VSB Bar No. 71685)
sgraeff@dbllawyers.com
ebennett@dbllawyers.com
8300 Boone Blvd., Suite 550
Vienna, VA 22182
Telephone: (703) 777-7319

DORSEY & WHITNEY LLP

_David Ludwig, with permission_

Creighton R. Magid
magid.chip@dorsey.com
1401 New York Avenue NW, Suite 900
Washington, DC 20005
Telephone: (202) 442-3555

Rachel Burkhart
burkhart.rachel@dorsey.com
1400 Wewatta Street, Suite 400
Denver, CO 80202
Telephone: (303) 629-3400

Defendant/Counterclaim-Plaintiff Siemens
Energy, Inc.

20

4893-4402-0625\1

Document received by the VA Arlington 17th Circuit Court.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Answer and Counterclaim was served by first class mail on this 28th day of November, 2023 to the following:

Douglas L. Patin (VSB #20324)
Lee-Ann C. Brown (VSB #90019)
Bradley Arant Boult Cummings LLP
1615 L Street, NW, Suite 1350
Washington, D.C. 20036
(202) 719-8241 (phone)
(202) 719-8341 (fax)
dpatin@bradley.cona
labrown@bradley.com
*Counsel for Fluence Energy, LLC*

/s/ Ellis Bennett
Ellis L. Bennett  (VSB No. 71685)
Stephen D. Graeff (VSB Bar No. 77720)
sgraeff@dbllawyers.com
ebennett@dbllawyers.com
8300 Boone Blvd., Suite 550
Vienna, VA 22182
Telephone: (703) 777-7319
Counsel for Siemens Energy, INC.

Document received by the VA Arlington 17th Circuit Court.

**Error! Unknown document property name.**