UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re Fluence Energy, Inc. Securities Litigation | No. 1:25-cv-00444-PTG-IDD<br>*Document Filed Electronically*<br><br>CLASS ACTION<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF
THE AES CORPORATION AND AES GRID STABILITY LLC'S
MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .............................................................................................................................2

ARGUMENT ...................................................................................................................................4

    I.    Plaintiff Has Not Alleged That AES Controlled the "General Affairs" of the Fluence Defendants. ..........................................................................................5

    II.    Plaintiff Has Not Alleged That AES Controlled the Specific Corporate Policies Giving Rise to the Alleged Section 10(b) Violation. ................................8

    III.    The Allegation That AES Sold Stock in Fluence's SPO Is Irrelevant to Plaintiff's Section 20(a) Claim. ..................................................................................9

CONCLUSION..............................................................................................................................11

## TABLE OF AUTHORITIES

<span style="text-align:center">CASES</span>

PAGE(S)

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002) .................................................................................................... 5

*Ark. Tchrs. Ret. Sys. v. Bankrate, Inc.*,
  18 F. Supp. 3d 482 (S.D.N.Y. 2014) ............................................................................... 5, 6, 9

*Ascension Tech. Corp. v. McDonald Invs., Inc.*,
  327 F. Supp. 2d 271 (D. Vt. 2003) ......................................................................................... 5

*Carlton v. Cannon*,
  184 F. Supp. 3d 428 (S.D. Tex. 2016) ................................................................................ 5, 9

*In re Constellation Energy Grp., Inc.*,
  738 F. Supp. 2d 614 (D. Md. 2010) ............................................................................... 4, 8, 9

*Firemen's Ret. Sys. of St. Louis v. Telos Corp.*,
  2023 WL 1512207 (E.D. Va. Feb. 1, 2023) .......................................................................... 10

*Food & Allied Servs. Trades Dep't v. Millfeld Trading Co.*,
  841 F. Supp. 1386 (S.D.N.Y. 1994) ...................................................................................... 10

*In re Glob. Crossing, Ltd., Sec. Litig.*,
  2005 U.S. Dist. LEXIS 16228 (S.D.N.Y. Aug. 5, 2005) ..................................................... 6, 7

*Golub v. Gigamon Inc.*,
  372 F. Supp. 3d 1033 (N.D. Cal. 2019) .................................................................................. 6

*KBC Asset Mgmt. NV v. DXC Tech. Co.*,
  19 F.4th 601 (4th Cir. 2021) ................................................................................................... 4

*In re Kosmos Energy Ltd. Secs. Litig.*,
  955 F. Supp. 2d 658 (N.D. Tex. 2013) ................................................................................... 7

*Li v. Eqonex Ltd.*,
  2024 WL 4241951 (S.D.N.Y. Sept. 18, 2024) ............................................................ 5, 6, 7, 9

*In re Mut. Funds Inv. Litig.*,
  437 F. Supp. 2d 444 (D. Md. 2006) ........................................................................................ 8

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  384 F. Supp. 2d 838 (D. Md. 2005) ........................................................................................ 8

*San Antonio Fire & Police Pension Fund v. Syneos Health Inc.,*
  75 F.4th 232 (4th Cir. 2023) .................................................................................................. 4

*Saunders v. Putnam Am. Gov't Income Fund,*
  2006 WL 1888906 (D. Md. July 7, 2006) ........................................................................... 5, 9

*Sgalambo v. McKenzie,*
  739 F. Supp. 2d 453 (S.D.N.Y. 2010) ................................................................................. 10

*Skyline Restoration, Inc. v. Church Mut. Ins. Co.,*
  20 F.4th 825 (4th Cir. 2021) ................................................................................................. 4

*Tchrs.' Ret. Sys. v. Hunter,*
  477 F.3d 162 (4th Cir. 2007) .............................................................................................. 10

*In re Volkswagen AG Sec. Litig.,*
  661 F. Supp. 3d 494 (E.D. Va. 2023) .................................................................................... 5

*Wiggins v. Janus Capital Grp., Inc.,*
  566 F.3d 111 (4th Cir. 2009) ....................................................................................... 4, 8, 9

***

**Note on Citation Format**: Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted. References to Ex.__ correspond to the exhibits attached hereto. Those exhibits have been excerpted in light of their length, but The AES Corporation and AES Grid Stability, LLC will provide unexcerpted versions promptly upon request.

Defendants The AES Corporation and AES Grid Stability, LLC (collectively, "AES") join the motion filed by Defendants Fluence Energy Inc. ("Fluence"), Manuel Pérez Dubuc, Dennis Fehr, Julian Nebreda, Manavendra Sial, Ahmed Pasha, and Rebecca Boll (the "Individual Defendants," and collectively with Fluence, the "Fluence Defendants") to dismiss the Consolidated Complaint of Lead Plaintiff Erste Asset Management GmbH ("Plaintiff") dated June 20, 2025 (Dkt. No. 58) (the "Consolidated Complaint" or "CC").  AES incorporates all arguments in the Fluence Defendants' memorandum of law in support of their Motion to Dismiss the Consolidated Complaint (Dkt. No. 69) (the "Fluence Brief") and respectfully submits that the Consolidated Complaint should be dismissed in its entirety for the reasons given therein.

AES respectfully submits this separate memorandum of law solely to offer an additional, independent basis to dismiss the one claim asserted against AES.

## PRELIMINARY STATEMENT

Plaintiff names AES in only a single claim in this putative securities fraud class action—Count II.  Plaintiff does not allege that AES made, directed, or approved any of the allegedly misleading statements at issue in this case or, indeed, even knew about those statements until after they were made.  Instead, Plaintiff seeks to hold AES liable for the Fluence Defendants' alleged conduct in a more attenuated way—by contending that AES is an alleged control person under Section 20(a) of the Securities Exchange Act.

The Consolidated Complaint does not attempt to plead control in any of the ordinary ways.  It does not contend that AES had any role in Fluence's public reporting or in the alleged product, installation, or delivery issues that were the subject of the Fluence statements at issue in the Consolidated Complaint.  Plaintiff likewise does not allege that anyone at AES had any inkling that any public statement by Fluence or anyone else was false or misleading.  Instead, Plaintiff supports its allegations of control primarily by reference to AES's partial equity

ownership in Fluence and the limited rights AES held as a result of its holdings. But, as a matter of law, none of that is sufficient to plead control. Plaintiff's control person claim fails for two independent reasons.

*First*, for the reasons set forth in the Fluence Brief, which AES joins in full, Plaintiff has failed to adequately allege a securities fraud claim against the Fluence Defendants. This dooms Plaintiff's dependent control person claim against AES.

*Second*, even if Plaintiff had sufficiently pled an underlying securities violation—which it has not—Plaintiff's control person claim against AES would still fail because Plaintiff has not alleged facts showing that AES controlled the Fluence Defendants. In the Consolidated Complaint, Plaintiff alleges only that AES held an ownership stake in Fluence, had the ability to appoint a minority of the directors on Fluence's Board, entered into contracts with Fluence, and had once employed certain Fluence executives (including certain of the Individual Defendants) before they took their positions at Fluence. Whether considered individually or collectively, these allegations are insufficient to plead control as a matter of law.

For all these reasons, Plaintiff does not and cannot state a viable Section 20(a) claim against AES.

## BACKGROUND

Fluence, an energy storage company, began in 2018 as a joint venture between AES and Siemens Industry, Inc. ("Siemens"), two global energy companies. CC ¶ 2. In the Consolidated Complaint, Plaintiff claims that the Fluence Defendants made a number of statements about Fluence's business during the alleged Class Period, from October 28, 2021 to February 10, 2025, which Plaintiff contends were rendered misleading by the company's allegedly premature release of its sixth-generation clean energy storage systems ("Gen 6"). *See, e.g.*, CC ¶¶ 78, 80, 84.

Plaintiff alleges that AES was a control person of the Fluence Defendants, offering the conclusory allegation that AES "w[as] able to and did influence and control [Fluence's] decision-making, including controlling the content and dissemination of the information that Plaintiff and the Class contend contained materially false and misleading statements." *Id*. ¶ 202. The Consolidated Complaint offers no specific support for this allegation, however. Instead, Plaintiff's factual allegations regarding AES are limited to the following:

- AES was a significant shareholder of Fluence "prior to and leading up to the Class Period," *id*. ¶ 32[1];

- AES had the power to appoint three directors to Fluence's Board of Directors, *id.*, which was a 12-person Board throughout the Class Period[2];

- AES entered into arm's-length agreements with Fluence pursuant to which it provided various forms of support to the company, *id.* ¶ 37; and

- AES purportedly "exerted" some unspecified "influence over [Fluence's] management" by "caus[ing] Fluence to hire [Julian] Nebreda as CEO" and "[Manavendra] Sial and [Ahmed] Pasha as CFO," *id.* ¶ 32.

Plaintiff does not allege that AES had any involvement in Fluence's management, operations, or disclosures to investors during the alleged Class Period.

---

[1] The Consolidated Complaint states that "[p]rior to and leading up to the Class Period, AES owned 100% of Fluence's outstanding Class B-1 common stock, providing it with approximately 71.8% of the combined voting power of all Fluence stock." CC ¶ 32. This allegation is not, however, accurate as to the entire Class Period, as documents incorporated by reference into the Consolidated Complaint demonstrate. For example, as of October 28, 2021, AES and Siemens each held an equal number of Fluence's outstanding Class B-1 common stock, giving each of them less than a majority of combined voting power. Ex. A (Fluence IPO Prospectus at 167); *see also* CC ¶ 73 (incorporating Fluence IPO Prospectus by reference). But, more importantly, as set forth in further detail below, an allegation of majority ownership is insufficient to plead control under Section 20(a) in any event. *See infra* at 5.

[2] *See* Ex. B (Fluence 2021 10-K) at 98, Ex. C (Fluence 2022 10-K) at 116, Ex. D (Fluence 2023 10-K) at 121, and Ex. E (Fluence 2024 10-K) at 136. These 10-Ks are incorporated into the Consolidated Complaint by reference. *See* CC ¶¶ 79, 112, 148, 166.

3

# ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim to relief that is plausible on its face." *Skyline Restoration, Inc. v. Church Mut. Ins. Co.*, 20 F.4th 825, 829 (4th Cir. 2021). In order to state a claim under Section 20(a) of the Securities Exchange Act, a plaintiff must allege: "(1) a predicate violation of § 10(b) [of the Securities Exchange Act] and (2) control by the defendant over the primary violator." *Wiggins v. Janus Capital Grp., Inc.*, 566 F.3d 111, 129–30 (4th Cir. 2009), *rev'd on other grounds*, *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011); *see also, e.g.*, *In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 614, 638–39 (D. Md. 2010).

Here, Plaintiff's Section 20(a) claim fails because—for the reasons set forth in the Fluence Brief—Plaintiff has not adequately alleged an underlying Section 10(b) violation, which "dooms [its] § 20(a) claim." *KBC Asset Mgmt NV v. DXC Tech. Co.*, 19 F.4th 601, 614 n.4 (4th Cir. 2021); *see also San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*, 75 F.4th 232, 246 n.11 (4th Cir. 2023).

Separately and independently, even if Plaintiff had adequately pled a Section 10(b) claim, Plaintiff's failure to sufficiently allege that AES controlled the Fluence Defendants provides an independent basis to dismiss the Section 20(a) claim against AES. To plead control, "a plaintiff must plead facts showing that the controlling defendant had [(1)] the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws *and* [(2)] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." *Constellation*, 738 F. Supp. 2d at 639. Plaintiff's conclusory allegations of control fail to satisfy either requirement, and the Section 20(a) claim must therefore be dismissed.

I. **Plaintiff Has Not Alleged That AES Controlled the "General Affairs" of the Fluence Defendants.**

As a threshold matter, Plaintiff's Section 20(a) claim fails because Plaintiff does not allege that AES had the ability to control the Fluence Defendants' "general affairs." *Id.* None of Plaintiff's allegations of control comes close to meeting this standard.

*First*, to the extent Plaintiff attempts to plead control over the Fluence Defendants' "general affairs" based on the allegation that AES had a majority "of the combined voting power of all Fluence stock," CC ¶ 32, during the Class Period, this argument fails.[3] Neither majority voting power nor status as a corporate parent is sufficient to plead control. *Li v. Eqonex Ltd.*, 2024 WL 4241951, at *16 (S.D.N.Y. Sept. 18, 2024) ("[A]n entity's status as a corporate parent says nothing regarding the control that it exerts."); *Saunders v. Putnam Am. Gov't Income Fund*, 2006 WL 1888906, at *2 (D. Md. July 7, 2006) (granting motion to dismiss a control claim where plaintiff had not "sufficiently pled any facts to establish that . . . the parent company of [the primary violator] . . . exercised [the requisite] control"); *cf. In re Volkswagen AG Sec. Litig.*, 661 F. Supp. 3d 494, 503, 537 (E.D. Va. 2023) (granting motion to dismiss a control claim for failure to plead primary violation and control, even though the primary violator was a "wholly owned subsidiary" of the control defendant).[4]

---

[3] Further, as explained above, *see* n.1, *supra*, Plaintiff's claim that AES possessed majority control throughout the alleged Class Period is incorrect.

[4] *See also Ascension Tech. Corp. v. McDonald Invs., Inc.*, 327 F. Supp. 2d 271, 277 (D. Vt. 2003) (dismissing a Section 20(a) claim where the primary violator was a "wholly-owned subsidiary" of the defendant); *Ark. Tchrs. Ret. Sys. v. Bankrate*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014) (rejecting a control claim where the defendant "always controlled more than 50% of [the primary violator's] stock"); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002) (finding allegation that the defendant "own[ed] the majority of the shares in a company" was not sufficient to demonstrate control); *Carlton v. Cannon*, 184 F. Supp. 3d 428, 495–96 (S.D. Tex. 2016) (similar).

5

*Second*, Plaintiff's allegation that AES had the ability to appoint three members of Fluence's 12-person Board of Directors is likewise legally inadequate to allege control. Indeed, even the power to appoint a *majority* of the board at issue is not enough to sufficiently allege control. *Bankrate*, 18 F. Supp. 3d at 486 (finding allegation that defendant "had four sitting representatives on [a] seven person board" insufficient to state a control claim); *Aldridge,* 284 F. 3d at 77, 85 (rejecting a control claim where defendants "had the ability to select two-thirds of the Board").[5]

*Third*, Plaintiff alleges that AES entered into agreements with Fluence pursuant to which it provided various forms of support to the company. CC ¶ 37. Plaintiff does not, however, allege that any of these agreements gave AES the right or ability to control any aspect of Fluence's business. And such agreements are insufficient as a matter of law to allege control, even with more detailed allegations as to the control defendant's rights under the agreements. For example, in *Li,* a control defendant entered into a strategic partnership with the alleged primary violator, under which the control defendant "offered [the primary violator] a $36 million convertible loan facility," in exchange for certain rights, including the power to appoint the primary violator's "CEO, CFO, and Chief Legal Officer." 2024 WL 4241951, at *3. The court dismissed the control person claim, concluding that the strategic partnership agreement alone was insufficient to plead that the control defendant exercised general control over the primary violator. *Id.* at *18; *see also Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1053 (N.D. Cal.

---

[5] *See also Li*, 2024 WL 4241951, at *18 (rejecting a control claim where the defendant had the power to appoint two seats on a seven-person board); *In re Glob. Crossing, Ltd., Sec. Litig.*, 2005 U.S. Dist. LEXIS 16228, at *43 (S.D.N.Y. Aug. 5, 2005) ("The Shareholder Agreement empowered [the control defendants] to each appoint a member to the [the primary violator's] board . . . . But plaintiffs mention no power that [the control defendants] had over [the directors they appointed], after they had exercised their power to appoint.").

6

2019) (granting motion to dismiss Section 20(a) claim where agreement required alleged primary violator to "refrain from changing the operation of its business or engaging in a variety of activities without the express written consent" of control defendants).

*Fourth*, the Complaint alleges that AES controlled the Fluence Defendants because it "caused Fluence to hire" certain of the Individual Defendants, including two former AES executives, for officer positions at Fluence. CC ¶ 32. But Plaintiff does not allege how or through whom AES "caused Fluence to hire" anyone, despite possessing only a minority of Board seats. Plaintiff also does not allege how AES controlled these Individual Defendants or Fluence after supposedly "caus[ing]" these Individual Defendants' appointments, or how AES ever could have asserted such control. *See Li*, 2024 WL 4241951, at *3, 18 (control not pleaded as to defendant with power to appoint primary violator's CEO, CFO, and Chief Legal Officer, because complaint did not allege "through which managers or directors" defendant exercised control); *Glob. Crossing*, 2005 U.S. Dist. LEXIS 16228, at *11 ("[B]eing a director or officer (let alone being able to appoint a director of officer) . . . does not make one a control person of the corporation . . . .").

In short, *none* of Plaintiff's allegations regarding AES suffices to plead that AES possessed control over the "general affairs" of any Fluence Defendant.[6]

---

[6] Plaintiff also alleges that "Fluence was considered a 'controlled company' under NASDAQ rules." CC ¶ 32. But NASDAQ rules simply define a controlled company as one in which another entity holds "more than 50% of the voting power for the election of directors," *see* NASDAQ Rule 5615(a)(7)(A); as explained above, majority voting power is insufficient to plead control for Section 20(a) purposes. *See* p.5, *supra*; *see also In re Kosmos Energy Ltd. Secs. Litig.*, 955 F. Supp. 2d 658, 676–77 (N.D. Tex. 2013) (granting motion to dismiss control claim where plaintiff alleged that primary violator was a "controlled company" under similar New York Stock Exchange rule, noting lack of "any cases finding that such status under NYSE rules is relevant to the issue of control under securities laws").

7

## II. **Plaintiff Has Not Alleged That AES Controlled the Specific Corporate Policies Giving Rise to the Alleged Section 10(b) Violation.**

Even if Plaintiff had adequately alleged that AES controlled the "general affairs" of the Fluence Defendants—which it has not—Plaintiff's control person claim would still fail because Plaintiff nowhere alleges that AES "had the requisite power to directly or indirectly control or influence *the specific corporate policy* which resulted in the primary liability," as it must to plead any control person claim. *Wiggins*, 566 F.3d at 130. This, too, is independently dispositive.

Here, Plaintiff has not identified any "specific corporate polic[ies]" underlying its Section 10(b) claims. Instead, Plaintiff generally avers that Fluence released its Gen 6 products before they were ready. *See* CC ¶¶ 78, 80, 84, 86, 91, 93, 98, 101, 105, 108, 111, 114, 118, 123, 127, 130. But Plaintiff has made no allegations that AES was involved in or had the ability to control or influence this conduct. In fact, other than the conclusory allegation that AES "caused" the appointment of certain officers, CC ¶ 32, Plaintiff does not allege that AES had *any* involvement in management at all.

When a plaintiff fails to plead that an alleged control person possessed "control or influence over the specific corporate polic[ies]" at issue—as required under Fourth Circuit law— its Section 20(a) claim must be dismissed, irrespective of whether the plaintiff can plead control over a corporation's general affairs. *See Constellation*, 738 F. Supp. 2d at 639 (dismissing Section 20(a) claim where Plaintiff failed to plead that director defendants "exercised the requisite control over the specific corporate operation that resulted in the miscalculated downgrade collateral obligations"); *In re Mut. Funds*, 437 F. Supp. 2d 444, 448 (D. Md. 2006) (dismissing Section 20(a) claim where "the complaint does not sufficiently allege facts showing how the [alleged control persons] . . . had the power to control or influence the specific corporate policies at issue"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 384 F. Supp. 2d 838, 845 (D.

8

Md. 2005) (dismissing Section 20(a) claim where Plaintiff failed to plead that defendant "exercised control over those responsible for the material misrepresentations" at issue).[7]

### III. The Allegation That AES Sold Stock in Fluence's SPO Is Irrelevant to Plaintiff's Section 20(a) Claim.

Plaintiff alleges that AES had a "motive" because AES allegedly sold "more than $156 million in Fluence stock" in Fluence's December 2023 Secondary Public Offering ("SPO") "approximately one week after Siemens Energy had initiated its lawsuit against Fluence," CC ¶ 163, and "less than two weeks" before the publication of an article about a litigation between Diablo and Fluence that had been ongoing since October 2023. *Id.* ¶¶ 6–7, 56, 163.

This allegation is, however, both puzzling and irrelevant.

As an initial matter, AES's purported "motive" is not relevant to pleading a control person claim. A *prima facie* case for a Section 20(a) claim requires the plaintiff to allege "(1) a predicate violation of § 10(b) and (2) control by the defendant over the primary violator." *Wiggins*, 566 F.3d at 129–30. And the only two conjunctive requirements for pleading the second element—control—are "power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws" and "power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." *Constellation*,

---

[7] *See also Li*, 2024 WL 4241951, at *17 (rejecting control claim where "Plaintiffs fail[ed] to allege [control] [d]efendants signed, drafted, approved, or confirmed a misleading statement."); *Bankrate*, 18 F. Supp. 3d at 486 ("The Amended Complaint has alleged no particularized facts suggesting that the [control defendant] had control over the alleged misrepresentations at issue in this case."); *Carlton*, 184 F. Supp. 3d at 495 (rejecting a control liability claim where the complaint did "not allege facts supporting a plausible inference that [the control defendant] had the ability to control [the primary violator's] specific, allegedly misleading public statements"); *cf. Saunders*, 2006 WL 1888906, at *2 (finding control person claims insufficiently alleged as to parent company, in contrast with officers alleged to be "involve[d] in the relevant day-to-day operations of the company").

738 F. Supp. 2d at 639.  Supposed motive has nothing to do with any of this.[8]

In any case, even if motive were relevant—which it is not—Plaintiff's allegation would not support an inference that AES had any intent to mislead or was otherwise culpable.  Both of the litigations at issue were filed publicly *before* the SPO; stock sales *following* the initiation of these allegedly damaging public lawsuits could never plausibly support an inference of intent to deceive.  And selling stock in an SPO, in and of itself, is not "unusual or suspicious." *Tchrs.' Ret. Sys. v. Hunter*, 477 F.3d 162, 184 (4th Cir. 2007).  Rather, the alleged desire to sell stock in an SPO at a profit is a mere "generalized financial motive[]" that would never support any inference of scienter.  *Firemen's Ret. Sys. of St. Louis v. Telos Corp.*, 2023 WL 1512207, at *10 (E.D. Va. Feb. 1, 2023) (finding insiders' alleged sales of stock in SPO did not support scienter for this reason).

---

[8] Plaintiff also alleges conclusorily that AES "caused" Fluence to conduct the SPO, but Plaintiff pleads no facts to support this claim.  And to the extent Plaintiff argues that AES's sale of stock in the SPO somehow suggests that AES controlled Fluence, this argument also fails. *See, e.g.*, *Sgalambo v. McKenzie*, 739 F. Supp. 2d 453, 487 (S.D.N.Y. 2010) (finding that a complaint alleging defendants' titles and "that each sold [the primary violator's] stock within the Class Period . . . contain[ed] literally no factual allegations that would support an inference that [defendants] were control persons under Section 20(a)"); *Food & Allied Serv. Trades Dep't, AFL-CIO v. Millfeld Trading Co.*, 841 F. Supp. 1386, 1392 (S.D.N.Y. 1994) (holding that control defendant's alleged sale of primary violator's stock "does not, in and of itself, support an inference that he exercised control over [the primary violator's] management"), *abrogated on other grounds*, *Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 223 F. Supp. 2d 474, 488 (S.D.N.Y. 2002).

## **CONCLUSION**

For the foregoing reasons, AES respectfully requests that the claims against AES be dismissed with prejudice.

Dated: July 11, 2025

Respectfully submitted,

*s/ Fiona R. Moran*
Fiona R. Moran (VSB No. 84235)
Mari Grace (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
1050 17th Street, NW
Washington, DC 20036
(202) 962-7000
fiona.moran@davispolk.com
mari.grace@davispolk.com

Edmund Polubinski (*pro hac vice*)
Marie Killmond (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
edmund.polubinski@davispolk.com
marie.killmond@davispolk.com

*Counsel for The AES Corporation and AES Grid Stability, LLC*