UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | | |
|---|---|---|
| In re FLUENCE ENERGY, INC. SECURITIES LITIGATION | ) ) ) | Civil Action No. 1:25-cv-00444-PTG-IDD |
| | ) | <u>CLASS ACTION</u> |
| | ) | |
| This Document Relates To: | ) | |
| | ) | |
| ALL ACTIONS. | ) ) | |

**PLAINTIFF'S OPPOSITION TO**
**THE AES CORPORATION AND AES GRID STABILITY LLC'S**
**<u>MOTION TO DISMISS THE CONSOLIDATED COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

LEGAL STANDARD........................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

A.      Pleading Standards for Control Person Liability .................................................5

B.      Plaintiff Pleads Underlying Violations of Section 10(b) of the Securities
        Exchange Act by the Fluence Defendants ...........................................................7

C.      Plaintiff Pleads Violations of Section 20(a) of the Securities Exchange Act by the
        AES Defendants....................................................................................................7

        1.      Fluence admitted that AES controlled the Company...............................7

        2.      The AES Defendants signed SEC filings that contained false and
                misleading statements. ...........................................................................9

        3.      Plaintiff's additional allegations further demonstrate the AES Defendants'
                control. ...................................................................................................12

CONCLUSION..................................................................................................................... 13

i

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Aldridge v. A.T. Cross Corp.*,
284 F.3d 72 (1st Cir. 2002) .................................................................................................. 11

*Arkansas Teacher Retirement System v. Bankrate, Inc.*,
18 F. Supp. 3d 482 (S.D.N.Y. 2014) .................................................................................... 11

*City of Omaha Police & Fire Retirement System v. Evoqua Water Technologies Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020) .................................................................................... 8

*Deluca v. Instadose Pharma Corp.*,
2024 WL 5279868 (E.D. Va. Dec. 23, 2024) ........................................................................ 6

*In re American Apparel, Inc. Shareholder Litigation*,
2013 WL 10914316 (C.D. Cal. Aug. 8, 2013)................................................................... 8, 10

*In re Amgen Inc. Securities Litigation*,
544 F. Supp. 2d 1009 (C.D. Cal. 2008) ................................................................................ 10

*In re BioScrip, Inc. Securities Litigation*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015) .................................................................................... 10

*In re BofI Holding, Inc. Securities Litigation*,
2017 WL 2257980 (S.D. Cal. May 23, 2017)........................................................................ 10

*In re Cobalt International Energy, Inc. Securities Litigation*,
2016 WL 215476 (S.D. Tex. Jan. 19, 2016) ........................................................................... 8

*In re DDi Corp. Securities Litigation*,
2005 WL 3090882 (C.D. Cal. July 21, 2005)......................................................................... 8

*In re Leslie Fay Cos., Inc. Securities Litigation*,
918 F. Supp. 749 (S.D.N.Y. 1996) ........................................................................................ 6

*In re MicroStrategy, Inc. Securities Litigation*,
115 F. Supp. 2d 620 (E.D. Va. 2000) ................................................................................ 5, 6

*In re Musicmaker.com Securities Litigation*,
2001 WL 34062431 (C.D. Cal. June 4, 2001) ...................................................................... 13

*In re Mutual Funds Investment Litigation*,
566 F.3d 111 (4th Cir. 2009) .............................................................................................. 5, 6

*In re Oppenheimer Rochester Funds Group Securities Litigation*,
838 F. Supp. 2d 1148 (D. Colo. 2012)................................................................................... 10

*In re Philip Services Corp. Securities Litigation*,
383 F. Supp. 2d 463 (S.D.N.Y. 2004) .................................................................................. 10

*In re UTStarcom, Inc. Securities Litigation*,
617 F. Supp. 2d 964 (N.D. Cal. 2009) ................................................................................... 8

*In re Volkswagen AG Securities Litigation*,
2024 WL 646344 (E.D. Va. Feb. 15, 2024)........................................................................... 12

*In re Volkswagen AG Securities Litigation*,
    661 F. Supp. 3d 494 (E.D. Va. 2023) ..................................................... 12

*In re Willis Towers Watson Plc Proxy Litigation*,
    439 F. Supp. 3d 704 (E.D. Va. 2020) ................................................... 4, 7

*Janus Capital Group, Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)................................................................................. 5

*Kiken v. Lumber Liquidators Holdings, Inc.*,
    155 F. Supp. 3d 593 (E.D. Va. 2015) ........................................... 4, 5, 6, 9

*Kyung Cho v. UCBH Holdings, Inc.*,
    890 F. Supp. 2d 1190 (N.D. Cal. 2012) ................................................. 10

*Latham v. Matthews*,
    662 F. Supp. 2d 441 (D.S.C. 2009)........................................................ 1

*Li v. Eqonex Ltd.*,
    2024 WL 4241951 (S.D.N.Y. Sept. 18, 2024)......................................... 8

*Masterson v. Commonwealth Bankshares, Inc.*,
    2 F. Supp. 3d 824 (E.D. Va. 2014) ............................................... 1, 4, 10

*McClarigan v. Riverside Hospital, Inc.*,
    2022 WL 3588031 (E.D. Va. Aug. 22, 2022)........................................... 2

*McLain v. KBR, Inc.*,
    2014 WL 3101818 (E.D. Va. July 7, 2014).............................................. 2

*Pittston Co. v. United States*,
    2001 WL 34148374 (E.D. Va. Oct. 31, 2001).......................................... 13

*Plymouth County Retirement System v. Evolent Health, Inc.*,
    2021 WL 1439680 (E.D. Va. Mar. 24, 2021)........................................... 13

*Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC*,
    792 F. Supp. 2d 328 (D. Conn. 2011)..................................................... 6

*Rich v. Maidstone Financial Inc.*,
    2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ....................................... 13

*Saunders v. Putnam American Government Income Fund*,
    2006 WL 1888906 (D. Md. July 7, 2006) .............................................. 8, 9

*Sennott v. Rodman & Renshaw*,
    414 U.S. 926 (1973).................................................................................. 5

*Skyline Restoration, Inc. v. Church Mutual Insurance Co.*,
    20 F.4th 825 (4th Cir. 2021) ................................................................... 4

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016).................................................. 8

*Trendsetter Investors, LLC v. Hyperdynamics Corp.*,
    2007 WL 172627 (S.D. Tex. Jan. 18, 2007)............................................ 5

*United States ex rel. Oberg v. Pennsylvania Higher Education Assistance Agency,*
    745 F.3d 131 (4th Cir. 2014)) ............................................................................................ 2

**STATUTES**

15 U.S.C. § 78t(a) ...................................................................................................................... 1

**RULES**

Fed. R. Civ. P. 15(a)(2) ............................................................................................................ 13

**REGULATIONS**

17 C.F.R. § 240.12b-2 ............................................................................................................ 5, 13

**OTHER AUTHORITIES**

H.R. Rep. No. 73-1383 (1934) .................................................................................................. 6

Plaintiff respectfully submits this memorandum of law in opposition to The AES Corporation and AES Grid Stability, LLC's Motion to Dismiss Plaintiff's Consolidated Complaint (ECF No. 72).[1]

## INTRODUCTION

Section 20(a) of the Securities Exchange Act of 1934 provides that "[e]very person who, directly or indirectly, controls any person liable under [Section 10(b)] shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). "[C]ontrol [is] a complex factual inquiry not ordinarily suitable for resolution through the filing of a Rule 12(b)(6) motion." *Masterson v. Commonwealth Bankshares, Inc.*, 2 F. Supp. 3d 824, 833 (E.D. Va. 2014). Moreover, Section 20(a)'s "remedial nature . . . requires a liberal construction, in favor of finding liability." *Latham v. Matthews*, 662 F. Supp. 2d 441, 469 (D.S.C. 2009).

Here, Plaintiff alleges that the AES Defendants[2] "acted as controlling persons of Fluence within the meaning of §20(a) of the Exchange Act" and "had the power and authority to cause Fluence to engage in the wrongful conduct" alleged in the Complaint. ¶ 201. Generally, AES controlled Fluence and the Individual Defendants "through its ownership of a majority of Fluence

---

[1]    References to "AES" and the "AES Defendants" are to Defendants The AES Corporation and AES Grid Stability, LLC. References to "AES Mem. _" are to pages of the Memorandum of Law in Support of The AES Corporation and AES Grid Stability LLC's Motion to Dismiss Plaintiff's Consolidated Complaint (ECF No. 73). References to "¶ _" are to paragraphs of the Consolidated Complaint for Violations of the Federal Securities Laws ("Complaint") (ECF No. 58). References to "AES Ex. _" are to the exhibits attached to the AES Defendants' Memorandum of Law. References to "Pl.'s Ex. _" are to Plaintiff's attached exhibits. Given their size, Plaintiff has included only the relevant pages of its exhibits, but is willing to provide the Court with complete copies upon request. Unless otherwise noted, all defined terms are the same as in the Complaint.

[2]    Defendant AES Grid Stability, LLC is a subsidiary of Defendant The AES Corporation.

voting stock, influence over Fluence's management, historical relationship with the Company, and the various agreements that these Defendants had caused the Company to execute." ¶ 203. More specifically, among other things, the AES Defendants placed multiple of their employees on Fluence's board, caused the Company to execute two registered offerings during the Class Period (and signed the offerings' registration statements), and signed multiple SEC filings containing false statements. *See* ¶¶ 32, 33, 73-78, 79-80, 112-14, 163. Most damning of all, Fluence itself acknowledged "the significant influence [that AES] will have over us, after the Transactions, ***including control over decisions that require the approval of stockholders***." Pl.'s Ex. A (Form S-1) at 66 (emphasis added).[3]

In response, the AES Defendants argue that the Section 20(a) claim should be dismissed because Plaintiff fails to allege an underlying violation of Section 10(b) by the Fluence Defendants and that "Plaintiff has not alleged facts showing that AES controlled the Fluence Defendants," but "only that AES held an ownership stake in Fluence, had the ability to appoint a minority of the directors on Fluence's Board, entered into contracts with Fluence, and had once employed certain

---

[3]     The Form S-1 refers to AES as one of the Company's "Continuing Equity Owners." *See* Pl.'s Ex. A (Form S-1) at ii ("*Continuing Equity Owners*" refers collectively to AES Grid Stability, Siemens Industry, and the Blocker Shareholder and their respective subsidiaries, who will after this offering collectively own all of our Class B-1 common stock and shares of our Class A common stock, representing a substantial majority of the voting power of our outstanding common stock."). The AES Defendants acknowledge that Fluence's initial public offering ("IPO") prospectus is one of the "documents incorporated by reference into the Consolidated Complaint." AES Mem. 3 n.1. The Court may take judicial notice of this document. *See McLain v. KBR, Inc.*, 2014 WL 3101818, at *3 (E.D. Va. July 7, 2014) ("[T]he court may take judicial notice of facts and 'consider documents incorporated into the complaint by reference' if their authenticity is not disputed." (quoting *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014))); *see also McClarigan v. Riverside Hosp., Inc.*, 2022 WL 3588031, at *4 (E.D. Va. Aug. 22, 2022) ("Defendant does not dispute the authenticity of these documents, but rather takes issue with Plaintiff's failure to attach them to her Complaint. This challenge is ultimately meritless because, in addition [to] their undisputed authenticity, the Court finds that these documents are integral to the Complaint, referenced within the Complaint, and necessary to decide [the issue at hand].").

Fluence executives (including certain of the Individual Defendants) before they took their positions at Fluence." AES Mem. 2. As discussed below, these arguments fail. First, as discussed in Plaintiff's Opposition to Defendants' Motion to Dismiss the Consolidated Complaint, which Plaintiff incorporates by reference, Plaintiff has pleaded an underlying violation of Section 10(b) by the Fluence Defendants. Second, the AES Defendants ignore multiple facts that readily demonstrate their control, or at the very least raise factual issues and disputes that are inappropriate for resolution on a motion to dismiss.

The AES Defendants' Motion should be denied.

## BACKGROUND

Fluence has three categories of common stock: Class A, Class B-1, and Class B-2. "Each share of [Fluence's] Class A common stock entitles its holder to one vote per share, each share of [Fluence's] Class B-1 common stock entitles its holder to five votes per share and each share of [Fluence's] Class B-2 common stock entitles its holder to one vote per share on all matters presented to our stockholders generally." AES Ex. A (ECF No. 73-1) at 1. Prior to the start of the Class Period, AES owned 100% of Fluence's outstanding Class B-1 common stock, providing it with approximately 71.8% of the combined voting power of all Fluence stock and making the Company a "controlled company" under NASDAQ rules. ¶ 32. This controlling interest continued during the Class Period, and "[f]ollowing exercise of its redemption rights by Siemens Industry of its LLC Interests on June 30, 2022, together with the corresponding cancellation of an equivalent number of shares of our Class B-1 common stock," AES held "100% of the outstanding shares of [Fluence's] Class B-1 common stock." Pl.'s Ex. B (Form S-3ASR) at 10.

The AES Defendants used this control throughout the Class Period. First, the AES Defendants took Fluence public. ¶ 33. Then, continuing throughout the Class Period, the AES Defendants exerted influence over Fluence's management, including through causing Fluence to

3

hire Nebreda, Pasha, and Sial—the former two being former AES executives—and ensuring that numerous of the Company's directors were affiliated with AES. ¶ 32. In 2023, AES caused Fluence to conduct a registered secondary public offering ("SPO") that enabled AES to dump more than $156 million in Fluence stock at artificially inflated prices. ¶ 163. Significantly, in the prospectus and registration statement filed in connection with the SPO, Fluence acknowledged "the significant influence that Siemens AG and AES Grid Stability, LLC have over us, *including control over decisions that require the approval of stockholders*." Pl.'s Ex. B (Form S-3ASR) at 3 (emphasis added). As with the IPO, AES executives signed the SPO registration statement. *See id.* at II-6-7. Against this background, it is no surprise that Fluence represented in its SEC filings that it was "[a] Siemens and AES Company." AES Ex. A (ECF No. 73-1) at 1.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient facts to 'state a claim to relief that is plausible on its face.'" *Skyline Restoration, Inc. v. Church Mut. Ins. Co.*, 20 F.4th 825, 829 (4th Cir. 2021) (citation omitted). Because Section 20(a) "does not require that the control person act with scienter . . . [or] be directly liable for fraud . . . a plaintiff need only satisfy [the general pleading standard] of Rule 8(a)." *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 603 (E.D. Va. 2015) (first and second alterations in original) (quoting *Masterson*, 2 F. Supp. 3d at 831 n.4); *see also In re Willis Towers Watson Plc Proxy Litig.*, 439 F. Supp. 3d 704, 717 (E.D. Va. 2020) ("[F]or purposes of Section 20(a), there are no heightened pleading requirements, particularly as to scienter or culpability; and a plaintiff need only satisfy Rule 8's short and plain statement requirement.").[4]

---

[4] The AES Defendants do not contend that an allegation of control is an averment of fraud or mistake. *See* AES Mem. 9 ("AES's purported 'motive' is not relevant to pleading a control person claim.").

## ARGUMENT

### A.    Pleading Standards for Control Person Liability

To state a claim under Section 20(a) of the Securities Exchange Act, a plaintiff must allege: "(1) a predicate violation of § 10(b) [of the Securities Exchange Act] and (2) control by the defendant over the primary violator." *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 129-30 (4th Cir. 2009), *rev'd on other grounds by Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).[5]

Control means the "possession, direct or indirect of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 661 (E.D. Va. 2000) (citing 17 C.F.R. § 240.12b-2).  In analyzing control, courts in this Circuit "have given heavy consideration to the power or *potential power* to influence and control the activities of a person, *as opposed to the actual exercise* thereof."  *Kiken*, 155 F. Supp. 3d at 602-03 (citing *Mut. Funds*, 566 F.3d at 130).  Because Section 20(a) "is remedial and is to be construed liberally[, i]t has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable." *Sennott v. Rodman & Renshaw*, 414 U.S. 926, 929 (1973).  Indeed, Congress drafted the control provisions of the federal securities laws broadly to account for situations such as this one, where a party exerts significant control over another company's business, decision-making process, and public statements.  *See* H.R. Rep.

---

[5]    Control persons for the purposes of Section 20(a) are not limited to officers, directors, or owners, and can include, as here, entities. *See Mut. Funds*, 566 F.3d at 130 ("An enterprise may control another organization and, indirectly, that organization's agents and employees."); *Trendsetter Invs., LLC v. Hyperdynamics Corp.*, 2007 WL 172627, at *26 (S.D. Tex. Jan. 18, 2007) ("Control-person liability under Section 20(a) of the Exchange Act is not limited to employers, officers, or directors of a company but can encompass any person who possess[es] the power to influence the operations and activities of the primary violator.").

No. 73-1383, at 26 (1934) ("It would be difficult if not impossible to enumerate or to anticipate the many ways in which actual control may be exerted").

"'The question of whether someone qualifies as a controlling person under [§] 20(a) . . . is a complex factual question,' so 'facts from which it can reasonably be inferred the defendant was a control person' are sufficient to allege the second element of the claim," *Deluca v. Instadose Pharma Corp.*, 2024 WL 5279868, at \*4 (E.D. Va. Dec. 23, 2024) (citation omitted) (alterations in original), and the issue is "not ordinarily subject to resolution on a motion to dismiss," *MicroStrategy*, 115 F. Supp. 2d at 661 (citation omitted); *see also Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC*, 792 F. Supp. 2d 328, 335 (D. Conn. 2011) ("Because a plaintiff's allegations regarding the control element need only comply with the requirements of Rule 8(a), the factual issue of a Section 20(a) defendant's control over a primary violator is ordinarily not resolved summarily at the pleading stage, and is more appropriately resolved after the parties have had an opportunity to engage in discovery.").

Finally, in considering Plaintiff's Section 20(a) claim, the allegations in the Complaint and accompanying exhibits must be considered as a whole. *See Mut. Funds*, 566 F.3d at 131 (finding control sufficiently alleged after reviewing all allegations "together"); *In re Leslie Fay Cos., Inc. Sec. Litig.*, 918 F. Supp. 749, 763 (S.D.N.Y. 1996) ("Of course, we must consider the total effect of the various indicia of control in combination."). The AES Defendants appear to agree. *See* AES Mem. 2 (noting allegations may be "considered individually or collectively").[6]

---

[6]    The AES Defendants do not argue that Plaintiff must plead their culpable participation in the misconduct underlying the claim (essentially the equivalent of proving scienter), and even if they did, any such contention would fail. *See Kiken*, 155 F. Supp. 3d at 602 ("The United States Court of Appeals for the Fourth Circuit has determined that a plaintiff is not required to allege 'culpable participation' as an element of the *prima facie* case for 'control person liability.'" (quoting *Mut. Funds*, 566 F.3d at 129-30)).

**B.    Plaintiff Pleads Underlying Violations of Section 10(b) of the Securities Exchange Act by the Fluence Defendants**

As discussed in Plaintiffs' Opposition to Defendants' Motion to Dismiss, Plaintiff has readily alleged underlying violations of Rule 10(b) of the Securities Exchange Act by the Fluence Defendants.  Accordingly, Plaintiff has satisfied the first prong of its Section 20(a) claim.

**C.    Plaintiff Pleads Violations of Section 20(a) of the Securities Exchange Act by the AES Defendants**

**1.    Fluence admitted that AES controlled the Company.**

"[T]he level of stock ownership and an individual's status as a director is but one factor, among many, in determining whether a defendant had the *potential* power to control a company's general affairs."  *Willis Towers Watson*, 439 F. Supp. 3d at 717-18.

Here, not only did the AES Defendants have massive stock ownership interests in Fluence prior to and during the Class Period (and ensured that numerous of the Company's directors were affiliated with AES), but Fluence publicly represented that AES controlled it.  For example, in the Company's IPO prospectus and registration statement—which the AES Defendants signed— Fluence defined "AES Grid Stability, Siemens Industry, and the Blocker Shareholder and their respective subsidiaries" as "Continuing Equity Owners."  Pl.'s Ex. A (Form S-1) at ii.  Fluence then stated:  "***We are controlled by the Continuing Equity Owners, whose interests may differ from those of our public stockholders. . . . The Continuing Equity Owners will, for the foreseeable future, have the ability to substantially influence us through their ownership position over corporate management and affairs***."  *Id.* at 56 (emphasis added in part).

Similarly, in Fluence's August 11, 2023 prospectus and registration statement filed in connection with its SPO, the Company identified "the significant influence that Siemens AG and AES Grid Stability, LLC have over us, ***including control over decisions*** that require the approval of stockholders . . . ."  Pl.'s Ex. B (Form S-3ASR) at 3 (emphasis added); *see also id.* at 10 ("AES

7

Grid Stability, LLC currently holds 100% of the outstanding shares of our Class B-1 common stock."). This is fatal to the AES Defendants' Motion. *See In re DDi Corp. Sec. Litig.*, 2005 WL 3090882, at *20 (C.D. Cal. July 21, 2005) (control alleged when company's prospectus disclosed that alleged controlling person "will continue to have a significant influence over all matters submitted to our stockholders . . . and to exercise significant control over our business, policies and affairs"); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 979 (N.D. Cal. 2009) (admission in Forms 10-K that defendant minority shareholder and related entities "'have significant influence over our management and affairs'" raised "intensely factual questions" rendering dismissal inappropriate).[7]

Against this background, the AES Defendants' citation to *Li v. Eqonex Ltd.* for the unremarkable proposition that "[a]n entity's status as a corporate parent says nothing regarding the control that it exerts" adds nothing to the analysis. AES Mem. 5 (quoting 2024 WL 4241951, at *16 (S.D.N.Y. Sept. 18, 2024)). The "short letter" opinion in *Saunders v. Putnam American Government Income Fund*, 2006 WL 1888906 (D. Md. July 7, 2006), is even less helpful given it does not address any allegations against the parent (presumably because there were so few). Accordingly, the AES Defendants' reliance on *Saunders* for the proposition that a motion to

---

[7]    *See also In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *37 (C.D. Cal. Aug. 8, 2013) (statement in SEC filing that minority shareholder intended to "influence" corporation's "management or the [b]oard with respect to [its] business and affairs" was probative of control (alterations in original)); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1048-49 (N.D. Cal. 2016) (refusing to dismiss control person claim against minority shareholder when SEC filing stated shareholder "will continue to have significant influence over [the Company's] affairs" (alteration in original)); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2016 WL 215476, at *11 (S.D. Tex. Jan. 19, 2016) (control person liability claims sustained when "Cobalt identified itself as a 'controlled company'" in SEC filings and disclosed that the controlling entities "have significant influence" over Cobalt); *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 428 (S.D.N.Y. 2020) (noting Evoqua's SEC filings acknowledged its status as a "controlled company" and the majority-stockholder controlling defendants' ability to "influence all major corporate decisions").

dismiss should be granted "where plaintiff had not 'sufficiently pled any facts to establish that . . . the parent company of [the primary violator] . . . exercised [the requisite] control'" is meaningless in this case.  AES Mem. 5 (alterations in original) (quoting *Saunders*, 2006 WL 1888906, at *2).

### 2. The AES Defendants signed SEC filings that contained false and misleading statements.

The AES Defendants argue that "Plaintiff does not allege that AES made, directed, or approved any of the allegedly misleading statements at issue in this case ***or, indeed, even knew about those statements until after they were made***" and that Plaintiff "does not contend that AES had any role in Fluence's public reporting."  AES Mem. 1 (emphasis added).  First, Plaintiff is not required to "allege that anyone at AES had any inkling that any public statement by Fluence or anyone else was false or misleading."  *Id*.; *see also Kiken*, 155 F. Supp. 3d at 603 ("Section 20(a) does not require that the control person act with scienter."); AES Mem. 9 ("AES's purported 'motive' is not relevant to pleading a control person claim.").

Second, the AES Defendants' contention is badly misplaced.  As directors of Fluence, several of the AES Defendants' executives signed the IPO registration statement (Pl.'s Ex. A (Form S-1)) that contains statements alleged to be materially false and misleading.  *See* ¶¶ 73-78.  Specifically, the registration statement was signed by the following:

- Julian Nebreda, who "has served as a member of our board of directors since September 2021" and who "currently serves as President of the South America Strategic Business Unit of The AES Corporation since October 2018."  Pl.'s Ex. A (Form S-1) at 129.[8]

- Lisa Krueger, who "has served as a member of our board of directors since September 2021" and who "currently serves as Executive Vice President and President of The AES Corporation in the U.S. since August 2018."  *Id.*

---

[8]  Nebreda served as a member of Fluence's board from September 2021 and then, due to his connection to AES, as Fluence's President and CEO from September 2022.  ¶ 22.

- John Christopher Shelton, who "is a member of our board of directors" and who "currently serves as Senior Vice President and Chief Product Officer of AES and President of AES Next, the strategic venture arm of AES." *Id.* at 130.

Similarly, the AES Defendants signed Fluence's Forms 10-K filed on December 14, 2021 and November 29, 2023, both of which contain alleged false and misleading statements. *See* ¶¶ 79-80, 112-14; AES Ex. B (ECF No. 73-2) at 98 (Form 10-K signed by Nebreda, Krueger, and Shelton); AES Ex. D (ECF No. 73-4) (Form 10-K signed by Shelton).  This is also dispositive of the AES Defendants' control.  As one court held,

> Lion Capital's board designees could control whether the 2009 annual report containing purportedly false or misleading financial statements was filed; stated differently, they could have prevented such filing by declining to sign the annual report.  Accordingly, the presence of Lion Capital designees on the American Apparel board, coupled with those directors' signatures on the 2009 annual report, is sufficient at the pleading stage to state a claim under § 20.

*Am. Apparel*, 2013 WL 10914316, at *36; *see also id.* at *37 n.262 ("Any conclusion that Lion Capital did not control the decisions of the board members it designated would ignore the reason it negotiated for seats on the board in the first place.").[9]  Against this background, the AES

---

[9]     *See also Masterson*, 2 F. Supp. 3d at 834 (finding such a signature on financial statements "is sufficient to show control—otherwise, the signatures on such financial statements would be meaningless"); *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 741 (S.D.N.Y. 2015) ("[D]irectors and officers who sign registration statements or other SEC filings are presumed to control those who draft those documents."); *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1208 (N.D. Cal. 2012) (recognizing "numerous courts have found that allegations that directors signed the statements which contain the material misrepresentations are sufficient to state Section 20(a) control status," and finding director who signed statements that contained such misrepresentations was liable as a control person); *In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980, at *26 (S.D. Cal. May 23, 2017) (finding defendants were control persons when they signed reports in allegedly false or misleading proxy statement); *In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 485-86 (S.D.N.Y. 2004) (directors who signed registration statement were control persons); *Leslie Fay*, 918 F. Supp. at 763 (directors who signed public documents containing misrepresentations were control persons); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008) ("[P]ersuasive authority indicates that an officer or director who has signed financial statements containing materially false or misleading statements qualifies as a control person."); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 838 F. Supp. 2d 1148, 1182 (D. Colo. 2012) ("Defendants' authority to sign or not sign the registration statements at

Defendants' assertion that "Plaintiff does not allege that AES had any involvement in Fluence's management, operations, *or disclosures to investors* during the alleged Class Period" should be rejected.  AES Mem. 3 (emphasis added).

Similarly, the AES Defendants' argument that AES's "ability to appoint three members of Fluence's 12-person Board of Directors is . . . legally inadequate to allege control" and that "even the power to appoint a *majority* of the board at issue is not enough to sufficiently allege control" fails.  AES Mem. 6.  In support, the AES Defendants rely on *Arkansas Teacher Retirement System v. Bankrate, Inc.*, where the plaintiffs alleged that "(1) throughout the Class Period, Apax always controlled more than 50% of Bankrate's stock; and (2) that Apax had four sitting representatives on Bankrate's seven person board."  18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014) (internal citation omitted).  Unlike here, however, where the AES Defendants signed SEC filings containing false statements, the *Bankrate* plaintiff "alleged no particularized facts suggesting that the Apax entities had control over the alleged misrepresentations at issue in this case."  *Id.*  The AES Defendants' reliance on *Aldridge v. A.T. Cross Corp.* fails for similar reasons.  *See* 284 F.3d 72, 85 (1st Cir. 2002) ("At most the evidence pled is that the trust defendants are controlling shareholders.  This indicates some potential ability to control. . . .  Unless there are facts that indicate that the controlling shareholders were actively participating in the decisionmaking processes of the corporation, no controlling person liability can be imposed.").

Rather than merely appointing members of Fluence's board of directors, the AES Defendants participated in the decision to disseminate SEC filings that contained alleged false and misleading statements and placed their signatures on those documents.  As such, the AES

---

issue is sufficient indicia of 'control' over the representations and disclosures that went out to potential investors to support 'control person' liability at the pleading stage of this litigation.").

Defendants' reliance on *In re Volkswagen AG Securities Litigation*, where the court held that "Plaintiffs have not alleged with particularity that Volkswagen AG provided final approval over the press release and its details," is readily distinguishable.  661 F. Supp. 3d 494, 522 (E.D. Va. 2023), *reconsideration denied sub nom. In re Volkswagen AG Sec. Litig.*, 2024 WL 646344 (E.D. Va. Feb. 15, 2024).  Indeed, the *Volkswagen* court acknowledged that "one other district court has previously determined that Volkswagen AG exercises 'ultimate authority' over VWGoA and its executives" because "the plaintiffs alleged Volkswagen AG 'also developed, reviewed, and approved the marketing and advising campaigns designed to sell the illegal cars.'" *Id.*[10]

### 3.    Plaintiff's additional allegations further demonstrate the AES Defendants' control.

In addition to the foregoing, the Complaint provides ample additional factual allegations in support of Plaintiff's claim that the AES Defendants exercised control, both direct and indirect, over the actions underlying the violation of Section 20(a).

As discussed above, AES took the Company public (¶ 33), exerted influence over the Company's management, including through causing Fluence to hire Nebreda, Sial, and Pasha (¶¶ 32-33), and numerous directors of Fluence were affiliated with AES during the Class Period (¶ 32).  Through its control of the Company, AES was able to enter into purchase agreements with Fluence that allowed AES to purchase energy storage equipment (and related services) from Fluence under preferred purchasing conditions.  ¶ 37.  Within one week of Fluence's announcement that it had achieved its "milestone" of generating positive net income, AES caused

---

[10]    Moreover, the cases cited by the AES Defendants do not appear to involve situations in which the subject companies stated the alleged control persons in fact controlled them and averments that the controlling persons signed false and misleading public filings.

Fluence to conduct a registered SPO that enabled AES to dump more than $156 million in Fluence stock at artificially inflated prices. ¶ 163.

Finally, the AES Defendants' argument that "[n]either majority voting power nor status as a corporate parent is sufficient to plead control," AES Mem. 5, is incorrect. *See* 17 C.F.R. § 240.12b-2 ("Control. The term 'control' (including the terms 'controlling,' 'controlled by' and 'under common control with') means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether ***through the ownership of voting securities***, by contract, or otherwise." (emphasis added)); *Rich v. Maidstone Fin. Inc.*, 2002 WL 31867724, at *12 (S.D.N.Y. Dec. 20, 2002) ("Plaintiff has alleged that Linda Bernstein owned 50-75% of the Maidstone stock during the time of the alleged fraud. Such a large interest is sufficient to support a 'reasonable inference' of control."); *In re Musicmaker.com Sec. Litig.*, 2001 WL 34062431, at *17 (C.D. Cal. June 4, 2001) ("[B]y including the phrase 'through ownership of voting securities,' the regulation appears to contemplate that a majority or otherwise controlling shareholder is prima facie a controlling person of the corporation in which it owns a majority or controlling stake."). But even if that was the case, Plaintiff has alleged far more as the basis for its control claim. When the Complaint's allegations and Plaintiff's exhibits are considered collectively (as they must), Plaintiff has more than met the "relatively low bar" to survive the AES Defendants' Motion. *Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*, 2021 WL 1439680, at *41 (E.D. Va. Mar. 24, 2021).

## CONCLUSION

For the foregoing reasons, the AES Defendants' Motion should be denied. Should the Court grant the Motion, Plaintiff respectfully requests leave to amend. *See* Fed. R. Civ. P. 15(a)(2); *Pittston Co. v. United States*, 2001 WL 34148374, at *2 (E.D. Va. Oct. 31, 2001) ("Courts should freely grant leave to amend, unless there is a showing of bad faith or undue prejudice. In the

Fourth Circuit, courts generally grant parties leave to amend unless allowing the amendment will prejudice another party." (citation omitted)).

DATED:  July 25, 2025                    Respectfully submitted,

                                         */s/ Craig C. Reilly*
                                         _____
                                         CRAIG C. REILLY
                                         VSB #20942
                                         THE OFFICE OF CRAIG C. REILLY, ESQ.
                                         209 Madison Street, Suite 501
                                         Alexandria, VA  22314
                                         Telephone:  703/549-5354
                                         703/549-5355 (fax)
                                         craig.reilly@ccreillylaw.com

                                         Liaison Counsel

                                         DOUGLAS R. BRITTON
                                         LUCAS F. OLTS
                                         JOSEPH J. TULL
                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         655 West Broadway, Suite 1900
                                         San Diego, CA  92101
                                         Telephone:  619/231-1058
                                         619/231-7423 (fax)
                                         dougb@rgrdlaw.com
                                         lolts@rgrdlaw.com
                                         jtull@rgrdlaw.com

                                         GREGG S. LEVIN
                                         WILLIAM S. NORTON
                                         CHRISTOPHER F. MORIARTY
                                         CAMERAN M. GILLIAM
                                         MOTLEY RICE LLC
                                         28 Bridgeside Boulevard
                                         Mount Pleasant, SC  29464
                                         Telephone:  843/216-9000
                                         843/216-9450 (fax)
                                         glevin@motleyrice.com
                                         bnorton@motleyrice.com
                                         cmoriarty@motleyrice.com
                                         cgilliam@motleyrice.com

                                         Lead Counsel for Lead Plaintiff

14