## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **In re Fluence Energy, Inc. Securities Litigation** | **No. 1:25-cv-00444-PTG-IDD**<br><br>**<u>CLASS ACTION</u>** |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED COMPLAINT FOR VIOLATIONS OF <u>THE FEDERAL SECURITIES LAWS</u>

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.    PLAINTIFF'S OPPOSITION DOES NOT FIX THE COMPLAINT'S FUNDAMENTAL FAILURE TO MEET THE PSLRA PLEADING STANDARD .........2

II.   PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ...................3

      A.    Plaintiff Fails to Allege Severe Recklessness ............................................................3

      B.    Plaintiff's Reliance on Allegations From Other Suits Violates Rule 11 .................6

      C.    Plaintiff Concedes Defendants Had No Motive To Defraud ...................................7

      D.    Competing Inferences are Far More Compelling .....................................................7

III.  PLAINTIFF FAILS TO PLEAD LOSS CAUSATION .......................................................7

IV.   PLAINTIFF FAILS TO PLEAD FALSITY ......................................................................10

      A.    Plaintiff Fails to Plead an Actionable Omission .....................................................10

      B.    The Opposition Confirms that Many Challenged Statements are Puffery ............16

      C.    Plaintiff Has Not Plead an Actionable Forward-Looking Statement.....................17

      D.    Plaintiff Fails to Plead an Actionable Opinion Statement .....................................19

CONCLUSION....................................................................................................................20

i

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ash v. PowerSecure Int'l, Inc.*,
2015 WL 5444741 (E.D.N.C. Sept. 15, 2015)..............................................................18

*Bond v. Clover Health Invs. Corp.*,
587 F. Supp. 3d 641 (M.D. Tenn. 2022)......................................................................5

*Boykin v. K12*,
54 F.4th 175 (4th Cir. 2022) .........................................................16, 17, 18, 20

*Brubaker v. City of Richmond*,
943 F.2d 1363 (4th Cir. 1991) ......................................................................7

*Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*,
496 F. Supp. 3d 952 (E.D. Va. 2020) ........................................................10

*Defeo v. IonQ, Inc.*,
134 F.4th 153 (4th Cir. 2025) ......................................................................9

*Emps. Ret. Sys. of the City of Baton Rouge and Parish of East Baton Rouge v.
MacroGenics*,
61 F.4th 369 (4th Cir. 2023) ........................................................11, 18, 19, 20

*Fireman's Ret. Sys. of St. Louis v. Telos Corp.*,
2023 WL 1512207 (E.D. Va. Feb. 1, 2023)....................................................16

*Hunter v. Earthgrains Co. Bakery*,
281 F.3d 144 (4th Cir. 2002) ......................................................................7

*In re Conventry Healthcare, Inc. Sec. Litig.*,
2011 WL 1230998 (D. Md. Mar. 30, 2011)....................................................5

*In re Dexcom Inc. Class Action Sec. Litig.*,
2025 WL 1399196 (S.D. Cal. May 14, 2024)..................................................3

*In re Emergent BioSolutions Inc. Sec. Litig.*,
2023 WL 5671608 (D. Md. Sept. 1, 2023) ....................................................2

*In re Genworth Financial, Inc. Sec. Litig.*,
103 F. Supp. 3d 759 (E.D. Va. 2015) ..................................................19, 20

*In re James River Sec. Litig.*,
2023 WL 5538218 (E.D. Va Aug 28, 2023)....................................................8

ii

*In re Marriott Int'l, Inc.*,
  31 F.4th 898 (4th Cir. 2022) ...............................................................................11, 14

*In re Marriott Int'l, Inc.*,
  543 F. Supp. 3d 96 (D. Md. 2021) ...............................................................................11

*In re Mylan N.V. Sec. Litig.*,
  379 F. Supp. 3d 198 (S.D.N.Y. 2019)..............................................................................6

*In re SCANA Corp. Sec. Litig.*,
  2019 WL 1427443 (D.S.C. Mar. 29, 2019) ...................................................................20

*In re UBS AG Sec. Litig.*,
  2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac
  Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) ..........................6

*In re Ulta Salon, Cosms. & Fragrance, Inc. Sec. Litig.*,
  604 F. Supp. 2d 1188 (N.D. Ill. 2009) ............................................................................5

*In re Van der Moolen Holding N.V. Sec. Litig.*,
  405 F. Supp. 2d 388 (S.D.N.Y. 2005)..............................................................................6

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2018).......................................................................................................12

*Katyle v. Penn Nat'l Gaming, Inc.*,
  637 F.3d 462 (4th Cir. 2011) ...............................................................................8, 9, 10

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
  2016 WL 3981236 (D.S.C. July 25, 2016) .......................................................................5

*KBC Asset Mgmt. NV v. DXC Tech Co.*,
  19 F.4th 601 (4th Cir. 2021) ......................................................................................4, 5

*Klein v. Altria Grp., Inc.*,
  525 F. Supp. 3d 638 (E.D. Va. 2021) ............................................................................10

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)..........................................................................................................16

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015).......................................................................................................19

*Phillips v. LCI Int'l*,
  190 F.3d 609 (4th Cir. 1999) ...........................................................................................7

*Plymouth Cnty. Ret. Sys. v. Evolent Health*,
  2021 WL 1439680 (E.D. Va. Mar. 24, 2021)................................................................17

iii

*Plymouth Cnty. Retirement Ass'n v. Primo Water Corp.*,
   966 F. Supp. 2d 525 (M.D.N.C. 2013) ...................................................................19

*Puranda v. Neahusan*,
   2024 WL 2231738 (E.D. Va. Apr. 15, 2024), *aff'd*, 2024 WL 3935201 (4th
   Cir. Aug. 26, 2024) .................................................................................................3

*Raab v. Gen. Physics Corp.*,
   4 F.3d 286 (4th Cir. 1993) ...............................................................................16, 18

*San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*,
   75 F.4th 232 (4th Cir. 2023) ...................................................................................7

*Singer v. Reali*,
   883 F.3d 425 (4th Cir. 2018) ...............................................................................9, 10

*Sinnathurai v. Novavax, Inc.*,
   645 F. Supp. 3d 495 (D. Md. 2022) ......................................................................10

*Touchstone Strategic Tr. v. Gen. Elec. Co.*,
   2022 WL 4536800 (S.D.N.Y. Sept. 28, 2022), *aff'd*, 2023 WL 6053007 (2d
   Cir. Sept. 18, 2023) .................................................................................................7

*TransEnterix Inv. Grp. v. TransEnterix, Inc.*,
   272 F. Supp. 3d 740 (E.D.N.C. 2017)....................................................................18

*United Ass'n Nat'l Pension Fund v. Carvana Co.*,
   2024 WL 863709 (D. Ariz. Feb. 29, 2024)..............................................................2

*Weston Family P'ship LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022) ...............................................................................6, 11

*Zachair, Ltd. v. Driggs*,
   965 F. Supp. 741 (D. Md. 1997) ............................................................................18

**STATUTES**

15 USCA
   § 78u-5(i)(1)(D) ......................................................................................................18
   § 78u-5(c)(1)(A)(i)..................................................................................................19

**RULES**

Fed. R. Civ. P. 9(b) ........................................................................................................16

Fed. R. Civ. P. 11...........................................................................................................6

iv

Note on Citation Format:  Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted. All paragraph citations are to the Consolidated Complaint, while references to Ex.__ correspond to the exhibits attached to the Declaration of Matthew J. Peters submitted in support of this Motion.

**INTRODUCTION**

The Opposition confirms that Plaintiff has not pled a securities fraud claim. For the most part, the Opposition simply repeats Plaintiff's puzzle-pled Complaint, oddly burying the most substantive arguments in footnotes or ignoring Defendants' primary legal arguments, perhaps in the hope that the Court will, too. The result is a hodgepodge of incoherent arguments urging the Court to allow non-specific and vague claims to move into the burdensome discovery stage of litigation without first clearing the pleading stage's stringent gating requirements.

In addition to being puzzle pleading, the Complaint fails to plead securities fraud for three independent reasons. *First*, Plaintiff does not identify allegations supporting a strong inference of scienter for ***each*** Defendant. Plaintiff does not address and thus tacitly concedes that the Complaint improperly relies on group pleading, and Plaintiff abandons temporal proximity and executive departure theories. Ultimately Plaintiff defaults to leaning on the "core operations" theory and conjuring up confidential witness allegations found nowhere in the Complaint. But those tactics cannot overcome Plaintiff's failure to plead that any Defendant had contemporaneous knowledge of (or disregarded) specific facts contradicting any Challenged Statement. And Plaintiff concedes it does not plead motive, which weighs heavily against scienter. Even when the allegations are viewed holistically, the non-culpable inferences are more compelling.

*Second*, Plaintiff fails to plead loss causation. There is no causal link between any alleged partial corrective disclosures and any Challenged Statement. Plaintiff's reliance on a report by anonymous short sellers who disclaim its accuracy falls far short of satisfying Fourth Circuit law. The *Energy Storage* Article repeated already-public information. And Plaintiff fails to show how Fluence's routine financial disclosures revealed fraud, as opposed to disappointing results.

*Third*, Plaintiff has not pled that any Challenged Statement was false or misleading. Thirty-three of thirty-seven Challenged Statements are nonactionable as a matter of law because they are

1

immaterial puffery, a subjective opinion, and/or protected forward-looking statements, and Plaintiff has not pled that *any* Challenged Statement was false or misleading when made. And, most fundamentally, Plaintiff cannot avoid that Fluence did what good companies do—it regularly provided robust public disclosures acknowledging operational challenges it faced or could face as well as the actual and potential consequences. Under Plaintiff's theory, public companies could not speak positively about their products without also having to disclose all purportedly negative experiences or disputes concerning those products. That is not what the federal securities laws require. The Complaint should be dismissed with prejudice.

**ARGUMENT**

**I.    PLAINTIFF'S OPPOSITION DOES NOT FIX THE COMPLAINT'S FUNDAMENTAL FAILURE TO MEET THE PSLRA PLEADING STANDARD**

Fundamentally, the Complaint fails to identify each allegedly misleading statement with particularity, and why each statement was purportedly misleading. Mot. 9-10. Plaintiff's response is to say that worse complaints have survived motions to dismiss, mustering one example. Opp. 5 (citing *In re Emergent BioSolutions Inc. Sec. Litig.*, 2023 WL 5671608 (D. Md. Sept. 1, 2023)). But puzzle pleading is not determined by length, and the cited case did not suffer from the extensive pleading failures present here. Plaintiff does not dispute, for example, that the Complaint challenges "Defendants' misstatements and omissions . . . in 3Q23 Form 10-Q . . . as set forth in ¶¶ 106-107," but those paragraphs *do not even refer* to the Form 10-Q. *See* Mot. 10; Opp. 6.

Plaintiff also acknowledges the Complaint's inconsistent use of emphasis, justifying it by asserting emphasis is used only in "longer" challenged statements. Opp. 5. But "merely bolding and italicizing swaths of text does not assist the Court in determining which statements are allegedly misleading or why." *United Ass'n Nat'l Pension Fund v. Carvana Co.*, 2024 WL 863709, at *10 (D. Ariz. Feb. 29, 2024). Indeed, Plaintiff's Opposition demonstrates that the Complaint's

emphasis in certain Challenged Statements is not "a reliable guide to determining which statements are alleged to be false," a hallmark of puzzle pleading. *In re Dexcom Inc. Class Action Sec. Litig.*, 2025 WL 1399196, at *3-6 (S.D. Cal. May 14, 2024). As an example, for the statement challenged in ¶ 81 (App. A 6), Plaintiff now says (for the first time) that it is only challenging one portion of that statement and that it is not challenging the entire statement (which is a forward-looking statement, protected by the PSLRA's safe harbor). Opp 17. But that is entirely inconsistent with the emphasis used in the Complaint (¶ 81), leaving the Court and Defendants to guess at a challenged statement puzzle. Other examples abound. *E.g.*, *Compare* Opp. 17 *with* ¶ 82.

Plaintiff' argument that Defendants "ignore that the Complaint identifies specific portions of quotes or summarizes the statements to make it clear to the reader which statements are being discussed" actually supports Defendants. Opp. 5-6. Many of those Complaint paragraphs do not even reference the emphasized portions of Challenged Statements. Mot. 10 (citing, *e.g.*, ¶¶ 78, 84). Such inconsistencies leave readers guessing which statements are challenged and why, and fail the PSLRA's pleading requirements. And while Plaintiff asserts in a footnote that Defendants have identified the Challenged Statements in Appendix A, Plaintiff stops short of affirming that Defendants identified the statements correctly. This is telling. Defendants should not have to guess.

## II.    PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

### A.    Plaintiff Fails to Allege Severe Recklessness

Plaintiff's scienter allegations are deficient because they rely on impermissible group pleading and thus do not support a strong scienter inference as to any Defendant's state of mind. Mot. 11. Plaintiff does not contest this point and thus concedes that all group-pled scienter allegations fail. *See Puranda v. Neahusan*, 2024 WL 2231738, at *2 (E.D. Va. Apr. 15, 2024) (argument conceded because the party's opposition did not respond to the argument), *aff'd*, 2024 WL 3935201 (4th Cir. Aug. 26, 2024). Plaintiff also does not contest, and thus concedes, that its

3

temporal proximity and executive departure and turnover scienter theories fail. *See* Mot. 14.

As to the points Plaintiff does address, its arguments fare no better. Defendants showed that Plaintiff cannot plead recklessness by virtue of executive positions, and that Plaintiff's invocation of the core operations doctrine fails to support a strong inference of scienter. Mot. 12, 14-15 (citing *KBC Asset Mgmt. NV v. DXC Tech Co.*, 19 F.4th 601, 612 (4th Cir. 2021)). Plaintiff's primary response to these critical legal flaws consists of a few perfunctory sentences buried in a footnote. *See* Opp. 22-23, n.22. Plaintiff asserts that such allegations pass muster because "[s]cienter in this case rests on numerous facts combined, not any one fact or category of fact by itself." Opp. 23, n.22. But Plaintiff never identifies *which* additional alleged facts unrelated to their core operations or executive-role theories support scienter. That is because none does.

If anything, the Opposition underscores that Plaintiff's primary scienter theory is the core operations doctrine. Plaintiff insists that the Diablo Project was a core operation of Fluence by virtue of its size in 2020. Opp. 20. But Plaintiff has no answer why the size of the project in 2020 is at all relevant, when the Complaint alleged that problems began at Diablo in *2022*. Mot. at 15. Plaintiff attempts to paper over this pleading failure by arguing that Diablo's problems began in 2021 and proffering new, "rough" facts about the relative size of the Diablo Project in 2021 and other years. Opp. 20 n.20. But those facts are not alleged in the Complaint. Plaintiff's new theory that the number of Fluence employees at the start of the Class Period gives rise to an inference of scienter is likewise flawed because it does not focus on the period during which Plaintiff alleges fraud occurred. *See* Opp. 20 (citing ¶ 19). Plaintiff also doubles down on its theory that Peréz must have known about unspecified problems with the Diablo and Antioch projects (at unspecified times) because he routinely made "site visits." Opp. 21. But Plaintiff still does not say what sites Peréz visited, when, or with whom he met. *See* Mot. at 12. Finally, Plaintiff posits that Defendants'

4

own statements regarding issues they were taking steps to correct with respect to Gen 6 products justify invoking the core operations doctrine. *See* Opp. 21. But Plaintiff's own cases reject that approach. *See KBC Asset Mgmt. NV v. 3D Sys. Corp.*, 2016 WL 3981236, at *9 (D.S.C. July 25, 2016) ("speaking about these core operations, without more, is insufficient to establish scienter").[1] And critically, Plaintiff simply *ignores* the specific disclosures and warnings Fluence issued cautioning investors that while it believed the issues it had identified (and disclosed) were corrected, there were no guarantees other issues might not emerge. *See* Mot. at 4-6; App. B.

As for the Confidential Witnesses, Plaintiff does not contest that CW-1 lacked direct contact with any Defendant (Opp. 24 n. 23), so CW-1 cannot show what any Defendant knew. So Plaintiff relies heavily on CW-2, arguing that CW-2 establishes (1) direct contact with Defendants about Gen 6 issues, and (2) the existence of a memorandum describing unspecified Gen 6 rollout issues. Opp. 23. Both arguments fail. First, the Complaint contains *no* particularized facts as to the timing of CW-2's discussions with Boll (or the CFOs, Fehr and Sial), much less what "issues" they discussed or whether those "issues" were unaddressed or undisclosed. Mot. at 13 (citing *In re Conventry Healthcare, Inc. Sec. Litig.*, 2011 WL 1230998, at *5 (D. Md. Mar. 30, 2011) (confidential witness allegations insufficient for scienter where "there is no indication of *when or how frequently* CW2" talked with executives or "what" meetings they attended)). Second, Plaintiff attempts to rehabilitate CW-2's deficient allegations regarding a purported memorandum sent to

---

[1] Plaintiff's other cases do not help their arguments. *Bond v. Clover Health Invs. Corp.*, 587 F. Supp. 3d 641 (M.D. Tenn. 2022), Opp. at 22, is inconsistent with Fourth Circuit authority. *Compare Bond*, 587 F. Supp. 3d at 677 (in the Sixth Circuit, "high-level executives can be presumed to be aware of matters central to their business's operation") *with DXC*, 19 F.4th at 612 ("bare allegations that [Defendants] have knowledge of key facts . . . because such knowledge relates to the business's core operations are *not enough*, standing alone, to support a strong inference of scienter"). *In re Ulta Salon, Cosms. & Fragrance, Inc. Sec. Litig.*, 604 F. Supp. 2d 1188, 1197 (N.D. Ill. 2009), Opp. 22, did not consider the core operations doctrine at all.

5

Fluence executives by simply repeating the assertion that a memorandum *existed*. Opp. 23. That does not fix the problem: CW-2 does not allege exactly when the memorandum was issued ("by sometime within 2022") or what the memorandum even said (unspecified "issues"). ¶ 44. These types of generalized allegations are woefully inadequate to plead scienter. Mot. 12-13.[2] And, in any event, the securities laws impose "[no] obligation to offer an instantaneous update of every internal development, especially when it involves the oft-tortuous path of product development." *Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022).

### B.    Plaintiff's Reliance on Allegations From Other Suits Violates Rule 11

Plaintiff's bare reliance on allegations in cross-complaints by Diablo and SEI violates Rule 11. *See* Mot. 15-16. Plaintiff does not assert that it or its attorneys conducted an independent investigation of the cross-complaint allegations nor does Plaintiff offer any authority contrary to Defendants' position. *See id.*; *see also In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *17 n.17 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) (the court "need not consider parroted allegations for which counsel has not conducted independent investigation."). Plaintiff cites to a case that considered whether allegations taken from another complaint were "immaterial under Rule 12(f)" and thus should be struck (Opp. 22 n.21), but that case contains no discussion of Rule 11. *In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d 198, 214 (S.D.N.Y. 2019). And Plaintiff's contention that the cross-complaint's allegations were "corroborated" because two separate customers made similar allegations (Opp. 22 n.21) completely misses the point. It is *Plaintiff* who must corroborate facts alleged in *Plaintiff's* Complaint with *other* sources. Plaintiff's authority proves this point. *See*

---

[2] Plaintiff's reliance on *In re Van der Moolen Holding N.V. Sec. Litig.* is unpersuasive. 405 F. Supp. 2d 388 (S.D.N.Y. 2005). There, unlike here, the complaint had detailed allegations regarding the reports' discussion of illegal trading practices which were the subject of the suit. *Id.* at 407.

6

*Touchstone Strategic Tr. v. Gen. Elec. Co.*, 2022 WL 4536800, at *4 n.3 (S.D.N.Y. Sept. 28, 2022) ("Plaintiffs argue that they corroborated the [imported, other-suit allegations] with other sources"), *aff'd*, 2023 WL 6053007 (2d Cir. Sept. 18, 2023).[3]

### C.   Plaintiff Concedes Defendants Had No Motive To Defraud

Because executives are not presumed to lie for no reason, the absence of an explanatory motive "weighs heavily against [the plaintiff] in the scienter analysis." *San Antonio Fire & Police Pension Fund v. Syneos Health Inc*., 75 F.4th 232, 242 (4th Cir. 2023). Plaintiff does not, because it cannot, dispute that its Complaint contains *no allegation* that any Defendant secured any concrete benefit by virtue of the alleged fraud, *e.g.*, from stock sales. Plaintiff argues that "Defendants pursued the IPO and SPO to raise $1.2 billion in capital and wanted the public to perceive Fluence as a well-functioning company." Opp. 26. But such motives applicable in virtually all cases "cannot demonstrate scienter." *Phillips v. LCI Int'l*, 190 F.3d 609, 622-23 (4th Cir. 1999); *see also* Opp. 26 (admitting that such "common incentive does not plead scienter by itself"), Mot. 16 (observing that Fluence and Individual Defendants did not participate in the SPO).

### D.   Competing Inferences are Far More Compelling

Plaintiff fails to meaningfully engage with Fluence's competing nonfraudulent inference, Mot. 17, arguing only that it is "weak" because Fluence's disclosures omitted "eye-catching details" about a single customer contract and were thus "opaque, not transparent." Opp. 25-26.

### III.   PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

Plaintiff's claims also fail on loss causation. Plaintiff's primary argument in response to its

---

[3] Plaintiff's Fourth Circuit cases likewise hold that an allegation must be supported by evidence adduced by an attorney's independent investigation. *See* Opp. 22 n.21 (*citing Brubaker v. City of Richmond*, 943 F.2d 1363, 1377 (4th Cir. 1991); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002)).

7

causation pleading problems is that news released on the corrective disclosure dates revealed "execution-related issues" that caused a stock drop. Opp. 27. But this argument ignores the reality that companies announce new financial results and updates each reporting quarter and sometimes those results are worse than the investors hoped. Just because a company's financial results are lower than hoped, precipitating a stock price drop—exactly what happened here—does not suffice to reveal fraud. *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 472 (4th Cir. 2011) ("decline in [share] price" alone is insufficient to establish loss causation).

**Short Report.** Defendants did not suggest, as Plaintiff claims, that *IonQ* categorically "prohibits any information in a short seller report from being used to plead loss causation." Opp. 29. Instead, Defendants showed that the Short Report, authored by anonymous and biased short sellers who disclaim its accuracy, aligns with the Fourth Circuit's precedent that such reports are insufficient to establish loss causation. Mot. 18-19 (citing *IonQ*). To avoid the same outcome as in *IonQ*, Plaintiff asserts that the Short Report contained "objectively independent and verifiable information" from publicly available legal documents in the SEI litigation. Opp. 30. As an initial matter, it is not clear what it means to "verify" untested and one-sided lawsuit allegations. Setting that aside, Plaintiff cannot avoid the fact that the Blue Orca authors explicitly disclaimed having verified any of the information in the report and disclaimed its accuracy. Mot. 19.

***Energy Storage* Article**. Defendants demonstrated that Plaintiff cannot establish loss causation based on the *Energy Storage* Article, which merely reiterated already-public information about Diablo's counterclaim. Mot. 19-20. Acknowledging this, Plaintiff references a single analyst who opined that the counterclaim "was not widely understood" and urges the Court against making "factual determinations" on loss causation. Opp. 29. But unlike Plaintiff's cited case, there is no factual dispute here regarding the novelty of the information in the *Energy Storage* Article. *See In*

8

*re James River Sec. Litig.*, 2023 WL 5538218, at *26 (E.D. Va Aug 28, 2023) (denying dismissal of a corrective disclosure based on a press release containing both previously disclosed information regarding the transfer claims to a reinsurer and allegedly new information regarding the impact from Uber reserves to James River's bottom line). Nothing reported in the *Energy Storage* Article was "new, that is, publicly revealed for the first time." *Defeo v. IonQ, Inc.*, 134 F.4th 153, 162 (4th Cir. 2025). As a matter of law, that requires dismissal.[4]

**Remaining Financial Disclosures.** The Opposition does not fix Plaintiff's failure to identify precisely what new facts were revealed in Fluence's February 2022, November 2024, or February 2025 financial reports that revealed the "truth" contradicting any of the Challenged Statements. Instead, Plaintiff repeats its refrain that disappointing financial results revealed fraud. Opp. 28. That does not come close to what is required. Plaintiff must point to a specific fact or facts that show a prior statement was false. *Katyle*, 637 F.3d at 473 (to plead loss causation, complaint must detail how the disclosure of new information "*relates back to the [alleged] misrepresentation* and not to some other negative information about the company"); *see also* Mot. 20. Plaintiff's own cases are in accord. The Fourth Circuit in *Singer* held that while a corrective disclosure "need not precisely identify the misrepresentation or omission" in the disclosure itself, it "must reveal to the market in some sense the fraudulent nature of" such misrepresentation or omission. *Singer v. Reali*, 883 F.3d 425, 446 (4th Cir. 2018) (cited Opp. 26, 27, 28). Plaintiff cannot simply point to three disappointing earnings releases and claim each revealed a partial truth without detailing how each disclosure exposed the fraudulent nature of specific misrepresentations and omissions. Here, they did not. Fluence updated the market at each turn on its financial performance and hiccups along the path of rolling out Gen 6. But nothing in its financial releases—

---

[4] Contrary to Plaintiff's claim, Opp. at 29 n.25, Defendants did not argue "truth-on-the-market."

and certainly nothing Plaintiff points to—revealed that Fluence and its executives had been lying to the market. Without such allegations, there is no loss causation. *Katyle*, 637 F.3d at 475.

## IV.    PLAINTIFF FAILS TO PLEAD FALSITY

### A.    Plaintiff Fails to Plead an Actionable Omission

Defendants showed Plaintiff has not adequately alleged that any Challenged Statement was false or misleading, including because Plaintiff did not plead an actionable omission. Mot. 20-27. In response, the Opposition fills pages with conclusory assertions and non-responses. Opp. 6-15.

Preliminarily, Plaintiff points to various inactionable Challenged Statements and asserts they are "untrue." Opp. 7-8. But Plaintiff argues they are misleading by omission, which "flops" for reasons herein and in the Motion. Mot. 21; *id.* Sect. III. And Plaintiff relies entirely on cases that are far afield from the facts here. *Id.* Specifically, Plaintiff references cases in which courts concluded that statements about a specific business practice gave rise to a duty to disclose information that flatly contradicted the affirmative statement, making it utterly misleading. In *Singer*, Opp. 6, the court held that the company should have disclosed a "fraudulent reimbursement scheme" when issuing detailed statements about its reimbursement practices. 883 F.3d at 442-43. In *Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, Opp. 6, 8, 14, 16, the court held that a company had to disclose its anticompetitive conduct that violated federal antitrust law and artificially inflated prices (as detailed through judicial factual findings) when it spoke about its pricing strategy. 496 F. Supp. 3d 952, 959-60, 963 (E.D. Va. 2020). In *Sinnathurai v. Novavax, Inc.*, Opp. 7, statements that no remaining obstacles to obtaining approval and producing a vaccine were misleading where regulators inspected and identified significant quality control, contamination, and purity issues at two vaccine manufacturing facilities, and one of the facilities was shut down at the time of the misleading statements. 645 F. Supp. 3d 495, 519-20 (D. Md. 2022). And in *Klein v. Altria Grp., Inc.*, Op. 8, 9, 12, 13, defendants made statements denying an intent to target youth

with marketing while allegedly illegally marketing to youths. 525 F. Supp. 3d 638, 663 (E.D. Va. 2021). None of these cases support a conclusion that Defendants had a duty to disclose the allegedly omitted information or that any Challenged Statement was false when made.

This is particularly true here, where the Opposition ignores that Fluence disclosed the very things Plaintiff alleges make the Challenged Statements false. Mot. 4-6; App. B; *see In re Marriott Int'l, Inc.,* 543 F. Supp. 3d 96, 134 (D. Md. 2021). Plaintiff has no real response to Fluence's robust disclosures, instead merely declaring, without support, that they are "vague" and insufficient. *See, e.g.*, Opp. 11 & n.8. But this Circuit's cases demonstrate that Fluence's disclosures satisfy the federal securities laws. *See, e.g.*, *In re Marriott Int'l, Inc.*, 31 F.4th 898, 902-03 (4th Cir. 2022); *Emps. Ret. Sys. of the City of Baton Rouge and Parish of East Baton Rouge v. MacroGenics*, 61 F.4th 369, 390 (4th Cir. 2023); Mot. 4-6. While Plaintiff quibbles with *Weston*, 29 F.4th 611 (9th Cir. 2022), the argument (again) ignores Fluence's robust disclosures about operational issues, cost overruns, and customer disputes, *e.g.* Mot. 4-6, and that Gen 6, "like almost all product developments, has had its ups and downs, even as the company continues to make progress." *Weston*, 29 F.4th at 620.

Plaintiff claims statements on "February 10, 2022" that "Fluence had 'identified the issues and we've implemented the fixes' for 'temporary' 'cost overruns' on 'a few specific projects' that 'we have addressed' (¶¶ 81-83, 87) were particularly misleading." Opp. at 7-8. The argument is deeply flawed: (i) Plaintiff selectively rearranges phrases from *different* statements by *different* defendants (Boll ¶ 83; Perez ¶¶ 81-82, 87); (ii) not all statements were made on February 10, 2022—the phrase "a few specific projects" appears only in an August 16, 2022 Challenged Statement, ¶ 87; *cf.* ¶¶ 81-83; (iii) Plaintiff omits the statements' full context, which includes disclosures about Fluence's challenges, *see, e.g.*, ¶¶ 81-83, 87; and (iv) Plaintiff mischaracterizes

11

these statements as "performance issues," but they say no such thing. *See id.* At bottom, the Opposition confirms the Complaint lacks an actionable omission.[5]

*Testing Omission.* The Motion showed that the Complaint's allegations that Gen 6 systems were not "fully designed" or "fully tested" do not render any Challenged Statement false or misleading. Mot. 21-25; Opp. 7, 9-12. Plaintiff does not contest (nor could it) that Gen 6 products were tested prior to release, even if not to the extent Plaintiff prefers based on hindsight, Opp. 10; that Gen 6 projects presented unique issues that required bespoke and customized solutions, including product modifications during production and installation that had resulted in delays and customer disputes, *see* Opp. 10, 14; or that Fluence repeatedly disclosed, from the beginning of the putative class period, operational issues and cost overruns including "in the first Generation 6 product deliveries" (including Diablo), *see* Ex. 1 at 11, and the resulting financial impacts, as well as customer disputes. Mot. 4-6, App. B.[6]

Instead, Plaintiff argues based on insufficiently-pled allegations, primarily sourced from counterclaims, that a few specific Gen 6 projects did not fulfill the specific contractual obligations for those projects. Opp. 7 (referring project specifications specific to High Desert), 8 (same), *id.* ("SEI's contracted specifications," and High Desert and Diablo), 9 ("not capable of fulfilling contractual specification"), 9-10 (similar). Then, without support from well-pled, particularized allegations, *see* Mot. 22-25, Plaintiff conflates these issues specific to a handful of projects to broadly condemn all Gen 6 technology and argue that the Challenged Statements were false and misleading. *See* Opp. 7-12. That is plainly insufficient to state a securities fraud claim. Further, the

---

[5] Contrary to Plaintiff's assertion, Opp. 6 n.4, the Complaint is not clear as to *each* Challenged Statement's maker. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2018).

[6] Plaintiff's argument that "disclosures here did not provide 'specific warnings' akin to those" in Defendants' authority (Opp. at 9 n.7) is debunked by the disclosures. Mot. at 4-6; *see* App. B.

Complaint does not allege that any additional testing of Gen 6 products, which Plaintiff retrospectively suggests, would have resolved issues at specific projects. Mot. 23. In response, Plaintiff merely claims the Motion "overlooked" certain allegations. Opp. 10 (citing ¶¶ 39-40, 43, 45). But the cited allegations do not support Plaintiff's bare assertion.

Plaintiff does not meaningfully engage Fluence's copious disclosures about cost overruns, operational issues, and resulting impacts, as well as its risk warnings. It alleged Defendants misled investors by "concealing the negative," such as "inverter failures" at the Diabo project. Opp. 8. However, Defendants disclosed chronic invertor issues. Ex. 10 at 12. Indeed, that issue is part of the context, highlighted in the Motion but ignored by the Opposition, that further undermines Plaintiff's challenge to Boll's statements on the August 2022 earnings call about expanding testing capabilities through the addition of a Pennsylvania facility. *See* Mot. 10; Opp. 10. During the call, Fluence's CEO detailed operational headwinds, including "unanticipated costs associated with installations and commissioning, including balance of plant and transformer challenges on a few specific projects" and that "[s]ubstandard components from certain suppliers also continue to be a challenge." Ex. 10 at 7. Boll later responded to a question about these challenges, explaining that "a big part of the reason for that [Pennsylvania testing] lab is to be able to do exactly that: test our products, test their components and test their designs, both before they're launched and then when they're out in the field so we can recreate issues and solve them quickly." Ex. 10 at 12. Regarding Boll, Plaintiff also claims Defendants did not address CW-2's allegations about what she "knew" or "wanted." Opp. 10. But the Motion explained these allegations were insufficient. Mot. 13-14.

Similarly, the Opposition does not meaningfully address Defendants' showing that the "delays, warranty claims, and other issues that are derivative of the Testing Omission" lacked particularity and do not contradict any Challenged Statement. Mot. 23. Plaintiff merely claims the

13

Motion "overlooked" unspecified "issues," Opp. 10, but the cited paragraphs provide no answers. Plaintiff also asserts the allegation that the Diablo Project was installed "almost a year behind schedule" contradicts a May 12, 2022 statement about being caught up on the Gen 6 installation schedule and having successfully installed ten Gen 6 projects, as well as a November 2023 reference to "improved execution." Opp. 11 (citing ¶¶ 85, 110). But the Complaint defeats Plaintiff's argument by alleging that the Diablo Project was commissioned no later than February 2022 and that installation had to have been completed sometime before then and before the Challenged Statements. ¶¶ 38 & n.8, 48. Further, Plaintiff effectively concedes the Complaint lacks well-pled allegations linking issues at Diablo to installation. *See* Mot. 24. It fails to identify any alleged issue pertaining to installation, instead referencing an inapt and vague description in the October 2021 Registration Statement of products shipping with equipment pre-installed "to support rapid on-side installation and commissioning." Opp. 11, 12 (citing ¶ 76). Such vague puffery is not actionable, not contradicted by any alleged omission, and "did not assign a quality to [Fluence's Gen 6 products] that it did not have." *Marriott*, 31 F.4th at 902-03. Additionally, Plaintiff concedes a failure to plead scienter for the May 12, 2022 Challenged Statements. *See* App. A 9; Opp. 11 (arguing Diablo did not notify "Fluence" of defects until at least July 2022).

*Risk Omission.* Defendants showed that Plaintiff's speculative allegation about a purportedly material undisclosed risk concerning current and prospective customers was not well pled and was contradicted by materials the Complaint incorporated. Mot. 25. Plaintiff essentially ignores the argument and instead responds by asserting, without support or explanation, that the Motion "do[es] not address any disclosure that was sufficient on this topic." Opp. 13. Fluence's disclosures rebut Plaintiff's assertion. Fluence disclosed, for instance, that "disagreements with our customers . . . have arisen and may in the future arise with respect to project schedules, work

and modifications" and can result in "loss of future business, additional costs to us and not realizing the anticipated profit from the project." Ex. 4 at 12; *see* App. B at 4, 11, 17, 22, 31, 40.

Plaintiff ultimately tries to avoid the materials relied upon within the Complaint by feigning a dispute about the growth in demand for Fluence products and its customer base. Opp. 13 (citing Mot. 8). But Plaintiff does not contest that the Complaint incorporates the corresponding exhibits by reference. *See* Mot. at 8 (citing Exs. 19 and 26); Dkt. 80 at 1 (not contesting that Exs. 19 or 26 is incorporated by reference). And Plaintiff's reliance on *Genworth*, which involved a factual dispute about how the company actually recognized revenues, is inapt. Opp. 13. Here, Plaintiff does not (and cannot) dispute Fluence's growing profitability or growing pipeline of sales to other customers. Regardless, even ignoring any potentially disputed information, Plaintiff's so-called "risk omission" does not support any claim. *See* Mot. 25.

*Dispute Omission.* Defendants detailed why no Challenged Statement was false or misleading due to Fluence purportedly failing to disclose a dispute with SEI. Mot. 25-26. Plaintiff argues that "[c]oncealing the [SEI] Litigation" contradicted statements in the October 2021 registration statement and "prevented investors from recognizing that the Diablo Litigation was not an isolated dispute," Opp. 14. The SEI Litigation commenced with the counterclaim filed in November 2023 and cannot contradict statements made years earlier, and the Complaint contains no well-pled allegation that any Defendant said the Diablo Litigation was an isolated dispute.

Plaintiff's arguments based on SEI's counterclaims also fail. Even assuming Plaintiff can rely upon them, the allegations do not contradict statements made in October 2021 or December 2022, including that Gen 6 could be "configured," was "scalable," or ships with pre-installed equipment to "support rapid on-site installation and commissioning," or the December 2022 opinion statements. Opp. 14; *see also* App. A 1, 3, 5, 15, 17. Essentially, Plaintiff argues that

15

Defendants guaranteed that Gen 6 products would be installed and perform perfectly at all times. But Defendants said no such thing. *E.g.*, *Raab v. Gen. Physics Corp.*, 4 F.3d 286, 290 (4th Cir. 1993). Nor could a reasonable investor have understood those statements as a guarantee given Fluence's extensive disclosures about cost overruns, performance issues, and risk warnings. *E.g.*, Mot. 4-6, *see also* App. B. And contrary to Plaintiff's unsupported assertion, Opp. 15, Fluence bringing suit against SEI or public reaction to the litigation does not establish that any Challenged Statement was utterly misleading. *See, e.g.*, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). At bottom, the Opposition has no response (*see* Opp. at 15 & n.13) to Fluence's risk disclosures that addressed this very issue. *E.g.*, Mot. 4-6, 16.

*Item 303.* Plaintiff concedes that its argument under Item 303 fails if the Challenged Statements are not false or misleading. Opp. 15. They are not. *See* Mot. Sect. III. Plaintiff has no real response to Defendant's argument that the Complaint "fails to identify" the Challenged Statements "with particularity." Mot. 26-27. To the extent Plaintiff argues simple citations to Challenged Statements is enough, Opp. 15, that is wrong. *See Fireman's Ret. Sys. of St. Louis v. Telos Corp.*, 2023 WL 1512207, at *11 (E.D. Va. Feb. 1, 2023) ("[Item 303 violations] must . . . be pled with particularity in accordance with Fed. R. Civ. P. 9(b)."). And Plaintiff fails to grapple with the substance of Fluence's copious risk disclosures. *See* Opp. 15; *supra* Sect. IV; Mot. 4-6.

**B.    The Opposition Confirms that Many Challenged Statements are Puffery**

The Opposition seemingly does not contest that nine Challenged Statements are inactionable puffery. Opp 15-17; *see* Mot. 27-28; App. A 7, 18, 19, 21, 22, 24, 26, 32. Nor could it credibly, for the reasons set forth in the Motion. Mot. 27-28. For the six puffery statements it does address (Stmts. 1-3, 5, 15, 28), the Opposition argues the statements are actionable because they purportedly pertain to "critical aspects" of Fluence's business. Opp. 16. But whether a statement is puffery does not turn on its subject matter. *See, e.g.*, *Boykin v. K12*, 54 F.4th 175, 183

16

(4th Cir. 2022) (online educational provider's statements about its "academic experience" were puffery).[7] Puffery includes "immaterial boasting and exaggerations," and "it is not actionable for a company to give positive descriptions of what it reasonably believes to be its strengths." *Id.* The general, vague descriptions challenges here, such as that Fluence "sell[s] highly configurable energy storage products" and that its storage products were designed with "industry-leading reliability, scalability," fall within Fourth Circuit precedent and are puffery, and Plaintiff does not suggest otherwise. Opp. 15-17. Plaintiff resorts to characterizing statements as, for example, "convey[ing] that the Company's products were ready for the market" and "mega-site installations," and "distinguish[ing] Fluence from its competitors" and describing "why" customers chose Fluence. Opp. 16. Even accepting Plaintiff's (inaccurate) characterizations, they are general, vague, positive statements that "offered no quantitative metrics, qualitative comparisons, or other specifics to bolster [the statements'] claims," and are precisely the type of statements that the Fourth Circuit has held constitute inactionable puffery. *Boykin*, 54 F.4th at 183.

Plaintiff's argument that the May 12 statement about having "successfully installed" ten Gen 6 systems, ¶ 85; App. A 9, and other unidentified (and unaddressed) statements are not puffery fares no better. Opp. 16. *Plymouth* correctly concluded that a defendant's statements that it had "successfully launched" an acquired entity into its healthcare platform was a "subjective description[] that [is] vague" and "so lacking in specificity" that it could only be the speaker's "opinion" that no "reasonable investor would . . . rely upon." *Plymouth Cnty. Ret. Sys. v. Evolent Health*, 2021 WL 1439680, at *25-26 (E.D. Va. Mar. 24, 2021). Same for the May 12 statement.

## C. Plaintiff Has Not Plead an Actionable Forward-Looking Statement

Defendants separately established that eight challenged statements are forward-looking

---

[7] The cases Plaintiff cites all pre-date the Fourth Circuit's decision in *Boykin*. *See* Opp. at 15-17.

and protected by the PSLRA's safe harbor. Mot. 28-29; *see* App. A 6, 7, 8, 13, 14, 29, 30, 31. Plaintiff ignores Defendants' arguments—indeed, Plaintiff mentions the cautionary-language prong only in a footnote. Opp. 18, n.17. Instead, Plaintiff attempts an abrupt about-face and tries to disclaim challenges to forward-looking statements. Opp. 17-18. That attempt is improper. *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) ("[Plaintiff] cannot, through the use of motion briefs, amend the complaint."). It is also of no consequence.

While Plaintiff focuses on statements' tense, the Fourth Circuit has held that assessing whether a statement is forward-looking requires reading it "as a whole," *Boykin*, 54 F.4th at 184, and in its "full context," *see MacroGenics*, 61 F.4th at 389. Doing so here confirms that the Challenged Statements the Motion identified as forward-looking are, in fact, forward-looking and protected. Mot. 28-29 (citing ¶ 83 and Ex. 7 at 8). They are plans and objectives for future operations, or "statement[s] of the assumptions underlying or relating to any [forward-looking] statement," § 78u-5(i)(1)(D), and Plaintiff does not argue any were phrased as "guarantees," *see Raab*, 4 F.3d at 290. They are protected even if they reflect implicit assertions about present events. *See Boykin*, 54 F.4th at 184 (phrase "positions us well" was forward-looking despite implicit reference to current circumstances); *TransEnterix Inv. Grp. v. TransEnterix, Inc.*, 272 F. Supp. 3d 740, 758 (E.D.N.C. 2017) ("That statements can be 'characterized as statements of present belief regarding future events' does not render them non-forward-looking.").

Contrary to Plaintiff's footnote, the cautionary language accompanying the forward-looking Challenged Statements is precisely the type that courts have held to bestow protection under the safe harbor. *See* App. B at 45-56; *compare, e.g.*, App. B at 45 (warning forward-looking statements "are not guarantees of performance" and pointing to FY2021 10-K) *with Ash v. PowerSecure Int'l, Inc.*, 2015 WL 5444741, at *8 (E.D.N.C. Sept. 15, 2015) ("noting that the

18

statements are 'not guarantees' and referring the reader to PowerSecure's Form 10–K"). Fluence "identif[ied] important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 USCA § 78u-5(c)(1)(A)(i); *see also Plymouth Cnty. Retirement Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 549 (M.D.N.C. 2013) ("[a] meaningful statement need only be enough to properly warn a reasonable investor of significant risks similar to that actually realized to put him or her on notice"). Plaintiff offers no contrary authority.

Plaintiff asserts (in a footnote) that cautionary language "cannot be meaningful if defendants do not explain its importance." Opp. 18 n.17. Regardless of what Plaintiff means, the case cited does not support Plaintiff. *Ollila* notes that "cautionary language is meaningless if it warns only of risks which have already materialized," *id.*, but here the Complaint does not allege that *any* risk disclosure was false or misleading. Finally, Plaintiff's conclusory assertion (again, in a footnote) that "Defendants knew that their statements were false and misleading when made," Opp. 18 n.17, fails for reasons discussed above. *See supra* Section II.

### D.    Plaintiff Fails to Plead an Actionable Opinion Statement

As demonstrated in the Motion, the Complaint unsuccessfully challenges many statements of opinions. Mot. 30. "Opinions are only actionable under the securities laws if they are not honestly believed and lack a reasonable basis." *MacroGenics*, 61 F.4th at 387. Because "[a] reasonable investor does not expect that *every* fact known to an issuer supports its opinion statement," an opinion statement "is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189-90 (2015). Plaintiff concedes that five challenged statements are opinions, *see* App. A 13, 14, 16, 19, 20, and otherwise relies on *In re Genworth*, 103 F. Supp. 3d 759 (E.D. Va. 2015), to suggest that opinion statements must contain "magic words" like "I think" or "I believe." Opp. 18. Plaintiff is mistaken. In *Genworth*, the court treated statements about the

19

adequacy of a company's long-term care reserves as opinions, even without "magic words." *Id.* at 779. Defendants explained that, while some challenged opinion statements do contain those words, *see* Mot. 29-30 (¶¶ 92, 95), such words are not necessary. Mot. 30 (citing *Boykin*, 54 F.4th at 183). Whether a statement is an opinion depends on the information conveyed. Mot. at 30. Plaintiff agrees that statements conveying "a person's views" or a belief "as to what third parties think about the company and its products," are opinions Mot. 30; *see* Opp. 18-19 n.18.

Plaintiff characterizes the challenged opinion statements and asserts, without explanation, they are actionable because Defendants "expressed certainty about facts." Opp. 18. The argument fails. No challenged opinion "expressed certainty." *See, e.g.*, Mot. Sect. III. Plaintiff argues, for example, that statements by Nebreda couched in terms such as "*I think* that why do people pay cost," ¶ 96 and "*I guess* the reasons that we have," Ex. 12 at 17, conveyed "certainty" about Fluence's "ability to deliver on complex projects," Opp. 18 (citing ¶ 96). But the statements' context, along with the information conveyed, plainly indicates that Nebreda was providing his opinion. *See* Mot. 30. The same is true for the other opinion statements. *See* Mot. 29-30.

Plaintiff's assertion that opinion statements might be actionable if "supporting facts supplied by the speaker were untrue," Opp. 18 (citing *In re SCANA Corp. Sec. Litig.*, 2019 WL 1427443, at *9 (D.S.C. Mar. 29, 2019)), is irrelevant. Plaintiff argues that the opinion statements were "facts" and nowhere addresses purported "supporting" facts. Plaintiff also quibbles with the Motion's reliance on *MacroGenics*, Opp. 19 n.18, but does not address the holding: that plaintiffs failed there, as here, to "sufficiently allege that Defendants did not believe their general positivity and enthusiasm" when making the statements. *MacroGenics*, 61 F.4th at 388.

## CONCLUSION

Defendants respectfully request that the Complaint be dismissed with prejudice.

20

Dated: July 31, 2025

Respectfully submitted,

/s/ *J. Christian Word*
J. Christian Word VA Bar 46008
Laura E. Bladow VA Bar 93395
Sarah Tomkowiak (*pro hac vice*)
Matthew J. Peters (*pro hac vice*)
Henry Zaytoun (*pro hac vice*)
Latham & Watkins LLP
555 Eleventh Street, NW Suite 1000
Washington, DC 20004
Tel: (202)-637-2200
Fax: (202)-637-2201
laura.bladow@lw.com
matthew.peters@lw.com
henry.zaytoun@lw.com

Colleen C. Smith (*pro hac vice*)
Latham & Watkins LLP
12670 High Bluff Drive
San Diego, CA 92130
Tel.: (858) 523-5400
Fax: (858) 523-5450
colleen.smith@lw.com

*Attorneys for Defendants Fluence Energy, Inc.,*
*Manuel Pérez Dubuc, Dennis Fehr, Julian Nebreda,*
*Manavendra Sial, Ahmed Pasha, and Rebecca Boll*

21