**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| In re Fluence Energy, Inc. Securities Litigation | No. 1:25-cv-00444-PTG-IDD<br>*Document Filed Electronically*<br><br>CLASS ACTION<br><br>**ORAL ARGUMENT<br>REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE AES CORPORATION AND AES GRID STABILITY LLC'S
<u>MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED COMPLAINT</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

LEGAL STANDARD...............................................................................................................2

ARGUMENT............................................................................................................................3

    I.      Plaintiff Has Not Alleged That AES Controlled the "General Affairs" of the Fluence Defendants..................................................................................3

    II.     Plaintiff Has Not Alleged That AES Controlled the Specific Corporate Policies Giving Rise to the Alleged Section 10(b) Violation. ................................8

    III.    The Allegation That AES Sold Stock in Fluence's SPO Is Irrelevant to Plaintiff's Section 20(a) Claim. ............................................................11

CONCLUSION......................................................................................................................12

## TABLE OF AUTHORITIES

*Aldridge v. A.T. Cross Corp.*,
284 F.3d 72 (1st Cir. 2002) ...................................................................... 11

*In re Am. Apparel, Inc. S'holder Litig.*,
2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ...................................... 8, 10

*Ark. Teacher Ret. Sys. v. Bankrate, Inc.*,
18 F. Supp. 3d 482 (S.D.N.Y. 2014) ...................................................... 7, 11

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008) ............................................ 10

*In re BioScrip, Inc. Sec. Litig.*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015) ...................................................... 9, 10

*Carlton v. Cannon*,
184 F. Supp. 3d 428 (S.D. Tex. 2016) ........................................................ 7

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
2016 WL 215476 (S.D. Tex. Jan. 19, 2016) ............................................... 7

*Combs v. Safemoon LLC*,
2024 WL 1347409 (D. Utah Mar. 29, 2024) ............................................... 5

*In re Constellation Energy Grp., Inc.*,
738 F. Supp. 2d 614 (D. Md. 2010) .............................................. 2, 3, 5, 8

*In re DDi Corp. Sec. Litig.*,
2005 WL 3090882 (C.D. Cal. July 21, 2005) .............................................. 8

*Deluca v. Instadose Pharma Corp.*,
2024 WL 5279868 (E.D. Va. Dec. 23, 2024) .............................................. 2

*In re Dynegy, Inc. Sec. Litig.*,
339 F. Supp. 2d 804 (S.D. Tex. 2004) ....................................................... 10

*Ho v. Duoyuan Glob. Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012) ...................................................... 9, 11

*Kiken v. Lumber Liquidators Holdings, Inc.*,
155 F. Supp. 3d 593 (E.D. Va. 2015) .......................................................... 2

*In re Kosmos Energy Ltd. Secs. Litig.*,
955 F. Supp. 2d 658 (N.D. Tex. 2013) ..................................................... 5, 6

ii

*Li v. Eqonex Ltd.*,
  2024 WL 4241951 (S.D.N.Y. Sept. 18, 2024) ................................................................. 4, 5

*In re Microstrategy, Inc. Sec. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) ............................................................................. 2

*In re Musicmaker.com Sec. Litig.*,
  2001 WL 34062431 (C.D. Cal. June 4, 2001) ................................................................ 4, 5

*In re Mut. Funds Inv. Litig.*,
  437 F. Supp. 2d 444 (D. Md. 2006) ................................................................................ 3, 8

*Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC*,
  792 F. Supp. 2d 328 (D. Conn. 2011) ............................................................................ 2

*Rich v. Maidstone Fin. Inc.*,
  2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) .............................................................. 4, 5

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  384 F. Supp. 2d 838 (D. Md. 2005) ................................................................................ 3, 8

*Saunders v. Putnam Am. Gov't Income Fund*,
  2006 WL 1888906 (D. Md. July 7, 2006) ...................................................................... 3, 4, 5

*Sennott v. Rodman & Renshaw*,
  414 U.S. 926 (1973) ........................................................................................................ 2, 3

*Thomas v. Magnachip Semiconductor Corp.*,
  167 F. Supp. 3d 1029 (N.D. Cal. 2016) .......................................................................... 8

*In re UTStarcom, Inc. Sec. Litig.*,
  617 F. Supp. 2d 964 (N.D. Cal. 2009) ............................................................................ 7

*In re Volkswagen AG Sec. Litig.*,
  661 F. Supp. 3d 494 (E.D. Va. 2023) ............................................................................. 4, 5

*Wiggins v. Janus Capital Grp., Inc.*,
  566 F.3d 111 (4th Cir. 2009) .......................................................................................... 2, 3, 6, 8

OTHER AUTHORITIES

17 C.F.R. § 230.405 ............................................................................................................ 5

17 C.F.R. § 240.12b-2 ......................................................................................................... 5

\*\*\*

**Note on Citation Format**:  Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted.  References to Ex.__ correspond to the exhibits to AES's motion to dismiss the Consolidated Complaint (Dkt. 73); references to Pl.'s Ex.__ correspond to the exhibits attached to the Declaration of Christopher Moriarty in opposition to AES's motion to dismiss the Consolidated Complaint (Dkt. 79-1); and references to Reply Ex.__ correspond to the exhibits attached hereto.  Those exhibits have been excerpted in light of their length, but The AES Corporation and AES Grid Stability, LLC will provide unexcerpted versions promptly upon request.

AES respectfully submits this reply memorandum of law in further support of its motion to dismiss the Consolidated Complaint (Dkt. 73) ("Motion" or "Mot.").[1]

## **PRELIMINARY STATEMENT**

Plaintiff does not dispute that, to assert a control person claim against AES, the Consolidated Complaint must allege that AES possessed *both* "the power to control the general affairs" of the Fluence Defendants *and* "the power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability."  As explained in AES's Motion, Plaintiff pleads neither, and its control person claim against AES must therefore be dismissed.

In its Opposition, Plaintiff does not dispute that the Consolidated Complaint fails to allege that AES had any involvement in formulating, reviewing, or making Fluence's disclosures to investors, or that AES had any involvement in Fluence's alleged release of Gen 6 products before they were ready.  The Opposition likewise does not dispute that bare allegations that AES "caused" Fluence to hire certain executives or to effect a secondary public offering are insufficient to plead control.  Instead, Plaintiff relies principally on the contention that AES should be deemed a controller merely by virtue of its status as a large shareholder of Fluence and Fluence's customary related disclosures about AES's ownership stake.  This is insufficient as a matter of law.  Plaintiff also asserts that *AES* should be deemed to have signed, and therefore to have controlled, certain Fluence disclosures which Fluence's *Board members* signed.  This, too, is insufficient to plead control under Section 20(a) of the Exchange Act.[2]

---

[1] Unless otherwise noted, all defined terms are defined as set forth in AES's Motion.

[2] The claims asserted against AES additionally fail for the independent reason that Plaintiff has not stated a securities fraud claim against the Fluence Defendants, as explained in the Fluence Brief (….continued)

**LEGAL STANDARD**

Plaintiff does not dispute that, to allege control by AES, Plaintiff cannot rely on mere labels or conclusions, but "must plead *facts* showing that" AES *both* "[(1)] had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws and [(2)] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." *Wiggins v. Janus Capital Grp., Inc.*, 566 F.3d 111, 130 (4th Cir. 2009), *rev'd on other grounds, Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011); *In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 614, 639 (D. Md. 2010).[3] And while Plaintiff asserts that dismissal is not "ordinarily" appropriate if a plaintiff meets this burden,[4] it is equally clear that courts can and should dismiss

---

(Dkt. 69) and in the Fluence Defendants' reply memorandum of law in support of their motion to dismiss the Consolidated Complaint (Dkt. 81), in which AES joins in full.

[3] Indeed, Plaintiff's Opposition relies on numerous cases applying this conjunctive standard. *See, e.g.*, *Wiggins*, 566 F.3d at 130 (cited at Opp. 5, 6) (applying conjunctive standard); *In re Microstrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 661 (E.D. Va. 2000) (cited at Opp. 5, 6) (same); *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 602 (E.D. Va. 2015) (cited at Opp. 4, 5, 6, 9) (same).

[4] The cases Plaintiff cites for this proposition address control person claims against *individual officers* with close connections to the alleged fraud. *See Deluca v. Instadose Pharma Corp.*, 2024 WL 5279868, at *10 (E.D. Va. Dec. 23, 2024) (cited at Opp. 6) (sustaining control person claims against an individual who "served as [the primary violator's] President, Principal Executive Officer, Principal Financial Officer, Principal Accounting Officer, and a Director [of the primary violator] at all relevant times"); *Microstrategy*, 115 F. Supp. 2d at 624, 661 (cited at Opp. 5, 6) (sustaining control person claims against primary violator's co-founder/president/chief executive officer, chief operating officer, chief financial officer, and senior vice president, who allegedly "prepared, reviewed, executed, and disseminated many, if not all, of the public reports and/or press releases issued by, and otherwise acted on behalf of," the primary violator); *Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC*, 792 F. Supp. 2d 328, 338 (D. Conn. 2011) (cited at Opp. 6) (sustaining control person claim against an officer of primary violator who was allegedly one of only three people who participated in closed-door meetings related to the transactions giving rise to the primary violation and had written emails directly relating to the conduct at issue); *Kiken*, 155 F. Supp. 3d at 610 (cited at Opp. 4, 5, 6, 9) (sustaining control person claim against primary violator's "Chief Merchandising Officer," who was "direct[ly] involve[d] in [the primary violator's] sourcing activities in China," which were the basis of the primary claims). In further support of the purportedly lenient pleading standard for control, Plaintiff also cites to Justice Douglas's dissent from *Sennott v. Rodman & Renshaw*, 414 U.S. 926 (1973)—without noting that the citation is to a (….continued)

2

where—as here—a plaintiff cannot plead *facts* that satisfy the Fourth Circuit's standard for pleading control. *See, e.g., In re Mut. Funds Inv. Litig.*, 437 F. Supp. 2d 444, 448 (D. Md. 2006); *Constellation*, 738 F. Supp. 2d at 640; *Saunders v. Putnam Am. Gov't Income Fund*, 2006 WL 1888906, at *2 (D. Md. July 7, 2006); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 384 F. Supp. 2d 838, 845 (D. Md. 2005).

## ARGUMENT

I.    **Plaintiff Has Not Alleged That AES Controlled the "General Affairs" of the Fluence Defendants.**

As the Motion explained, to plead control, Plaintiff must allege that AES "had the power to control the general affairs of the entity primarily liable." *Wiggins*, 566 F.3d at 130; Mot. 5–7. Plaintiff does not dispute this requirement. Because Plaintiff has failed to plead control over the Fluence Defendants' general affairs, its control person claim against AES must be dismissed.

As a threshold matter, the Opposition does not even attempt to defend—or provide case law supporting the relevance of—several allegations in the Consolidated Complaint that are plainly insufficient to plead control. Specifically, while Plaintiff reasserts the conclusory claims that AES "caused" Fluence to hire certain individual defendants, that AES and Fluence were party to certain agreements, and that AES had the power to designate a minority of directors to Fluence's Board, Plaintiff does not dispute that these allegations are insufficient to plead control over AES's general affairs and fails to address the cases so holding. *See* Mot. 6–7 & n.6.[5]

---

dissent. Opp. 5. In *Sennott*, the Supreme Court *denied* a writ of certiorari where the appellate court had granted summary judgment to a control defendant. *Id.* at 928–29.

[5] Plaintiff claims that AES possessed control over certain alleged misstatements because they appeared in SEC filings that its board designees signed, but for the reasons set forth below, this too is insufficient to plead control for purposes of Section 20(a). *See* Section II, *infra*.

3

Instead, Plaintiff claims that AES can be held liable as a control person based on its possession of majority voting power for some portions of the alleged Class Period.[6]  Opp. 7–9. As explained in the Motion, however, this is incorrect.  Mot. 5.  As is clear from the many cases (from this Circuit and others) that were cited in Defendants' Motion, majority voting power or status as a corporate parent do *not* suffice to render an entity a control person for Section 20(a) purposes.  *Id*. at 5 & n.4 (citing, *inter alia*, *In re Volkswagen AG Securities Litigation*, 661 F. Supp. 3d 494, 503, 537 (E.D. Va. 2023) (dismissing control person claim against parent company that owned 100% of subsidiary, "directly monitor[ed] its day-to-day operations" and "participat[ed] in the preparation and dissemination of its public statements")[7]; *Saunders*, 2006 WL 1888906, at *2 (dismissing control person claim against parent company); *Li v. Eqonex Ltd.*, 2024 WL 4241951, at *16 (S.D.N.Y. Sept. 18, 2024) (dismissing control person claim against defendant's "sole shareholder")).  Plaintiff does not address any of these cases substantively, instead referring to them with little or no analysis as not "helpful," "meaningless," or "unremarkable."  Opp. 8–9.  But their holdings are clear and clearly applicable here.

By contrast, the Opposition cites only two unpublished, out-of-Circuit, district court decisions, both of which are more than 20 years old, in support of its contention.  *See* Opp. 13 (quoting *Rich v. Maidstone Fin. Inc.*, 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002); *In re Musicmaker.com Sec. Litig.*, 2001 WL 34062431 (C.D. Cal. June 4, 2001)).  Neither case, however, compels the conclusion Plaintiff seeks.  In *Maidstone*, the control defendant was not

---

[6] Plaintiff does not dispute (nor could it) that AES did not possess majority voting power throughout the entire alleged Class Period; for example, it is undisputed that AES did not possess majority voting power at Fluence's 2021 IPO.  *See* Mot. 3 n.1.

[7] Plaintiff attempts to distinguish *Volkswagen* on the ground that the parent was not alleged to have had final control over the specific statement at issue, Opp. 12, but Plaintiff similarly does not allege that AES had control over any statement at issue.  Mot. 8–9; see Point II, *infra*.

4

only a majority shareholder, but also allegedly knew of and facilitated the insider sales at issue, 2002 WL 31867724 at *1–4, and the *Musicmaker* decision's reasoning cannot be reconciled with more recent case law, including from within this Circuit. Indeed, the California district court in *Musicmaker* rested its conclusion on the fact that defendants in that case "ha[d] cited no authority, and the [c]ourt [there] had found none to support the contention that an allegation of majority . . . stock ownership does not suffice" to plead control, 2001 WL 34062431, at *17; of course, since the *Musicmaker* decision, many courts—including in this Circuit—have reached just such a conclusion, *see, e.g.*, *Saunders*, 2006 WL 1888906, at *2; *Volkswagen*, 661 F. Supp. 3d at 503, 537; *Li*, 2024 WL 4241951 at *16 (all holding that possession of majority voting power or status as a corporate parent are insufficient to plead control).[8]

Plaintiff also contends that Fluence's standard disclosures regarding the ownership stake of AES and other large shareholders somehow demonstrate that AES controlled Fluence, notwithstanding the clear legal authority that ownership does not alone equate to control. Plaintiff cites Fluence's disclosures:

- Describing "the significant influence that *Siemens AG and* AES Grid Stability, LLC have over us, including control over decisions that require the approval of stockholders," Pl.'s Ex. A (Fluence IPO Registration Statement ("Registration Statement")) at 66; *see also* Pl.'s Ex. B (Form S-3ASR) at 3 (same);

---

[8] Nor does 17 C.F.R. § 240.12b-2 support a finding of control here. On its face, that regulation applies only to Sections 12, 13, and 15(d) of the Exchange Act, not Section 20(a). *See* 17 C.F.R. § 240.12b-2. And the cases that consider this or other regulations, including from within this Circuit, also deem it not to be dispositive on control for purposes of Section 20(a). *See, e.g., Constellation*, 738 F. Supp. 2d at 639 (considering § 240.12b-2 in assessing a control person claim, but observing that "[a]n individual's position alone does not establish control person liability"); *Combs v. Safemoon LLC*, 2024 WL 1347409, at *24 (D. Utah Mar. 29, 2024) (considering similar definition of control from 17 C.F.R. § 230.405, but observing that "[p]ossession of a majority share in a company alone is insufficient to allege control"); *In re Kosmos Energy Ltd. Secs. Litig.*, 955 F. Supp. 2d 658, 674–75 (N.D. Tex. 2013) (considering § 230.405's definition of control, but finding that allegation that two control defendants together held more than 80% of primary violator's shares was not sufficient to plead control because "status alone as to persons not involved in day to day management is legally insufficient to support a control person claim").

5

- Noting that "We are controlled by the *Continuing Equity Owners*, whose interests may differ from those of our public stockholders. . . . The Continuing Equity Owners will, for the foreseeable future, have the ability to substantially influence us through their ownership position over corporate management and affairs." Pl.'s Ex. A (Registration Statement) at 56; and

- Identifying Fluence as a "*Siemens and* AES Company," Opp. at 4, 7 (quoting Ex. A (Fluence IPO Prospectus) at 1).

But these disclosures address only the potential *collective* influence possessed by AES *and* Siemens, or by AES *and* all other "Continuing Equity Holders," which includes Qatar Holding LLC.[9] Plaintiff does not identify Siemens or Qatar Holding LLC as control defendants here, nor does the Consolidated Complaint allege that AES acted in concert with them. Rather, Plaintiff names AES alone, which means Plaintiff must allege that AES *individually* possessed "the power to control [Fluence's] general affairs" to plead a Section 20(a) claim. *Wiggins*, 566 F.3d at 130. The referenced disclosures do not show this. Indeed, in their emphasis on AES and Siemens' collective control over "decisions requiring the approval of stockholders," these disclosures say little more than that AES and Siemens collectively held a majority of voting shares in Fluence and a majority of seats on its Board[10]—which, as already explained, are not sufficient to plead control for Section 20(a) purposes. Mot. 5 & n.4, 7 n.6; *see also Kosmos*, 955 F. Supp. 2d 658, 676–77 (statement in a primary violator's registration statement that it was a "controlled entity"

---

[9] Fluence's Registration Statement defined "Continuing Equity Owners" as "AES Grid Stability, Siemens Industry, and the Blocker Shareholder and their respective subsidiaries." Pl.'s Ex. A at ii. "Blocker Shareholder" referred to Qatar Holding LLC. *Id.*

[10] Throughout the Class Period, Siemens—like AES—had the power to appoint three members of Fluence's board of directors; the Qatar Investment Authority ("QIA") had the power to appoint one member. Reply Ex. F (Oct. 27, 2021 Stockholders Agreement of Fluence Energy, Inc. (the "Stockholders Agreement")) § 1(b)–(c) (granting Siemens and QIA the power to appoint directors); Reply Ex. G (Fluence 2024 10-K) at 48 (acknowledging AES's, Siemen's, and QIA's continuing rights under the Stockholders Agreement, including, *inter alia,* "the right of each of the AES Related Parties, Siemens Related Parties, and the QIA Related Parties (each as defined in the Stockholders Agreement) to nominate certain of [Fluence's] directors"); *see also* CC ¶¶ 32, 166 (incorporating the Stockholders Agreement and 2024 10-K by reference).

6

not sufficient to allege control); *Carlton v. Cannon*, 184 F. Supp. 3d 428, 495–96 (S.D. Tex. 2016) (dismissing control person claim against majority shareholder);[11] *Ark. Tchrs. Ret. Sys. v. Bankrate*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014) (ability to appoint majority of board not sufficient to allege control).[12]  Indeed, although the disclosures apply equally to Siemens, Plaintiff claims that Siemens was a *victim* of the fraud.  *See, e.g.,* CC ¶¶ 60–72.  The fact is, there is no basis to treat AES any differently and certainly no basis to allege it alone controlled Fluence.

The cases Plaintiff cites—all of which are from outside the Fourth Circuit—are distinguishable.  In each of them, the public disclosures at issue specifically addressed the potential influence possessed *by the control defendant(s) named in the case*—not, as here, the potential *collective* influence possessed by the control defendant *in combination with* other entities not named.  Further, in each of Plaintiff's cases, the disclosures were only one of a series of significantly stronger allegations supporting the control person claims.  *See, e.g., In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 979 (N.D. Cal. 2009) (cited at Opp. 8) (control defendant was also third-largest customer of primary violator, and its president, CEO, chairman, and largest shareholder was co-founder and chairman of primary violator); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2016 WL 215476, at *11 (S.D. Tex. Jan. 19, 2016) (cited at Opp. 8)

---

[11] Notably, in *Carlton*, the plaintiff's complaint and opposition to the defendant's motion to dismiss both cited public filings disclosing the majority shareholder's "control[]" over the primary violator.  *See* Third Am. Compl. ¶ 36, *Carlton v. Cannon*, No. 4:15-cv-00012 (S.D. Tex. 2016) (quoting primary violator's public filing as stating that majority shareholder "controlled the outcome of the voting on virtually all matters requiring stockholder approval"); Omnibus Mem. in Opp. to Mot. to Dismiss at 55, *Carlton v. Cannon*, No. 4:15-cv-00012 (S.D. Tex. 2016) (quoting same public filing).

[12] Further, none of the Fluence conduct at issue in this case, including the issuance of the allegedly misleading disclosures, required shareholder approval.  Plaintiff's failure to allege that AES had any control or influence over the disclosures at issue is alone dispositive.  *See* Point II, *infra*.

(control defendants had "ability to elect a majority" of primary violator's board of directors, and "a majority of the members of every Board Committee except the Audit Committee").[13]

In short, Plaintiff fails to allege that AES controlled Fluence's "general affairs," either based on its possession of majority voting power or on any other basis.

## II.   Plaintiff Has Not Alleged That AES Controlled the Specific Corporate Policies Giving Rise to the Alleged Section 10(b) Violation.

As the Motion explained, Plaintiff's failure to allege that AES "had the requisite power to directly or indirectly control or influence *the specific corporate policy* which resulted in the primary liability" provides an independent reason to dismiss all claims against AES. Mot. 8–9 (quoting *Wiggins*, 566 F.3d at 130).

In its Opposition, Plaintiff does not dispute that the Consolidated Complaint must satisfy this requirement to state a claim against AES. Nor does Plaintiff attempt to distinguish the many cases in which control claims were dismissed for this reason. *See id.* (citing *Constellation*, 738 F. Supp. 2d at 639; *Mut. Funds*, 437 F. Supp. 2d at 448; *Royal Ahold*, 384 F. Supp. 2d at 845). And Plaintiff is unable to point to any "specific corporate policy" over which AES had control, much less any policy related to Fluence's alleged release of Gen 6 products before they were ready—i.e., the conduct that Plaintiff claims resulted in Fluence's primary liability.

---

[13] *See also In re DDi Corp. Sec. Litig.*, 2005 WL 3090882, at *20 (C.D. Cal. July 21, 2005) (cited at Opp. 8) (majority of board consisted of "current representatives" or "former representatives" of control person defendant); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1048 (N.D. Cal. 2016) (cited at Opp. 8) (control person defendant had appointed majority of primary violator's board of directors). Notably, other case law cited by Plaintiff specifically concluded that similar public statements were *not* sufficient to allege control. *See In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *35 (C.D. Cal. Aug. 8, 2013) (concluding that statement in public filings that control defendant might "seek to influence [the primary violator's] management or the [b]oard" was not sufficient to plead control).

Instead, Plaintiff claims that AES had control over just seven specific statements (of the dozens challenged in the Consolidated Complaint) in Fluence's Registration Statement and Annual Reports for 2021 and 2023.  Opp. 9–10 (citing statements at CC ¶¶ 74–77, 79, 112–13). Plaintiff asserts that AES had control over these statements because "the AES Defendants [i.e., The AES Corporation and AES Grid Stability LLC] signed Fluence's Forms 10-K filed on December 14, 2021 and November 29, 2023."  Opp. 10.[14]  But Plaintiff's assertion is not accurate.  Fluence's *Board of Directors*—including those appointed pursuant to the Stockholders Agreement by AES, Siemens, and QIA—signed those Annual Reports and the Registration Statement.  *See* Ex. B (Fluence 2021 10-K) at 98, Ex. D (Fluence 2023 10-K) at 121; *see also* Reply Ex. H at II-6–7 (signature pages from Registration Statement).  Plaintiff suggests that AES's control over these statements may be *presumed* because its board designees signed the filings in which they appear, but this, too, is wrong.  The board designees themselves are not even alleged to have controlled the statements at issue, and even if they were, the Consolidated Complaint contains no allegation that AES "controlled [its board designees] merely because [they] were appointed to the [Fluence] Board" by AES.  *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 580–81 (S.D.N.Y. 2012) (rejecting control claims against funds on this basis, despite allegations that funds had the power to appoint director who "signed the two registration statements at issue"); *see also In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 719, 740–41 (S.D.N.Y. 2015) (dismissing control claims against the company's "largest shareholder," though it had appointed director alleged to have signed misleading statements).

---

[14] Plaintiff similarly argues that AES controlled the alleged misrepresentations in Fluence's Registration Statement because "several of the AES Defendants' executives signed the IPO Registration Statement" in their capacities as Fluence directors.  Opp. 9–10.

Plaintiff cites cases in which control claims *against individual directors* were sustained on the grounds that they signed allegedly misleading SEC filings. *See* Opp 10 n.9. But these cases do not support sustaining more attenuated control person claims against the shareholder entity who appointed such directors; indeed, one of Plaintiff's cases—*Bioscrip*—actually *dismissed* control person claims against the major shareholder that had appointed the directors. 95 F. Supp. 3d at 740–41. Plaintiff identifies only one case in which a control claim against a company was sustained on the grounds that its *board designees* signed an allegedly misleading SEC filing.[15] That out-of-Circuit case notably involved a public acknowledgement by the primary violator's CEO that, "through its board members, [control defendant] Lion Capital was going to be involved in management decisions as far as strategic issues." *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *37 (C.D. Cal. Aug. 8, 2013) (relying on this "acknowledgement of Lion Capital's control" *in addition to* designees' signatures to find control sufficiently alleged). Plaintiff identifies nothing similar here.

What is more, Plaintiff's theory that a shareholder with board appointment powers may be *presumed* to control the conduct of its designees ignores bedrock principles of fiduciary duty and corporate separateness. As directors of Fluence, AES's Board designees—who are not defendants here—had "fiduciary duties to act on behalf of the shareholders of [Fluence] itself,

---

[15] Many courts have found that an outside director's having signed an allegedly misleading disclosure is insufficient to plead a control claim even as to *that director*. *See, e.g.*, *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364 at *25 (C.D. Cal. July 1, 2008) (holding that allegations that individuals "are directors, who served on the Audit Committee, and who signed [allegedly misleading] SEC filings" are insufficient to support a claim of control person liability); *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 817, 895, 913 (S.D. Tex. 2004) (holding that allegation that a company's former chairman and CEO "signed SEC filings that incorporated [the company's admittedly] false financial statements" was insufficient to support a claim of control person liability). Any attempt to plead that *a company* was a controller solely by virtue of its affiliation with a director is obviously even more attenuated.

not on behalf of the entities that appointed them." *Duoyuan*, 887 F. Supp. 2d at 580. Absent allegations that Fluence's directors acted inconsistent with their duties—and Plaintiff offers none—Plaintiff cannot plead a control claim against AES by virtue of its power to appoint directors. *Id.*[16]  Plaintiff's theory is also at odds with other allegations in Plaintiff's own complaint: Siemens also appointed directors to Fluence's Board throughout the Class Period, *see* n.10, *supra*; Siemens' appointed directors also signed Fluence's Forms 10-K; yet, as noted, Plaintiff claims that Siemens was a *victim* of Fluence's supposed misrepresentations, not an orchestrator. *See, e.g.,* CC ¶¶ 60–72.

Because Plaintiff fails to allege that Fluence had the power to control or influence any specific Fluence corporate policy—including with respect to the statements in the Registration Statement and the 2021 and 2023 Annual Reports—Plaintiff's control person claim should be dismissed.

**III.    The Allegation That AES Sold Stock in Fluence's SPO Is Irrelevant to Plaintiff's Section 20(a) Claim.**

Plaintiff concedes that AES's supposed "motive" is irrelevant to pleading a control person claim. While Plaintiff reiterates the unsupported allegation that AES "caused" Fluence to conduct certain public offerings, Plaintiff does not dispute that AES's sale of stock in Fluence's secondary public offering is irrelevant to its Section 20(a) claim. *See* Mot. 9–10. Nor does Plaintiff dispute that, even if motive were relevant, its allegations that AES sold Fluence stock *after* allegedly damaging litigation against Fluence became public are completely inconsistent

---

[16] For this reason, Plaintiff's attempts to distinguish the *Bankrate* and *Aldridge* cases are unavailing. *See* Opp. 11. Like the plaintiffs in those cases, Plaintiff here also fails to allege "control over the alleged misrepresentations at issue," *Bankrate*, 18 F. Supp. 3d at 486, or "active[] participat[ion] in the decisionmaking process of the corporation," *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002).

with any inference of motive to mislead.  *Id*.

## CONCLUSION

For the foregoing reasons, AES respectfully requests that the claims against AES be dismissed with prejudice.

Dated:    July 31, 2025                                     Respectfully submitted,

<div style="margin-left: 50%;">

*/s/ Fiona R. Moran*

Fiona R. Moran (VSB No. 84235)
Mari Grace (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
1050 17th Street, NW
Washington, DC 20036
(202) 962-7000
fiona.moran@davispolk.com
mari.grace@davispolk.com

Edmund Polubinski (*pro hac vice*)
Marie Killmond (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
edmund.polubinski@davispolk.com
marie.killmond@davispolk.com

*Counsel for The AES Corporation and AES Grid Stability, LLC*

</div>

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2025, a true and correct copy of the above and foregoing

document was served via the Court's ECF system on all counsel of record.

/s/ *Fiona r. Moran*
Fiona R. Moran