Exhibit F

EX-10.4 7 tm2120236d16_ex10-4.htm EXHIBIT 10.4

**Exhibit 10.4**

**STOCKHOLDERS AGREEMENT OF**
**FLUENCE ENERGY, INC.**

This STOCKHOLDERS AGREEMENT (as the same may be amended from time to time in accordance with its terms, the "Agreement") is entered into as of October 27, 2021, by and among (i) Fluence Energy, Inc., a Delaware corporation (the "Corporation"); (ii) AES Grid Stability, LLC ("AES"), a limited liability company duly organized and validly existing under the laws of Delaware; (iii) Siemens Industry, Inc. ("Siemens"), a corporation duly organized and validly existing under the laws of Delaware, (iv) Qatar Holding LLC, a Qatar Financial Centre entity ("QIA"), and (v) any other Person who becomes a party hereto pursuant to Section 11 (each a "Stockholder" and, collectively, the "Stockholders"). Certain terms used in this Agreement are defined in Section 7.

**RECITALS**

WHEREAS, each of Fluence Energy, Inc., AES and Siemens owns, directly or indirectly, outstanding membership interests in Fluence Energy, LLC, a Delaware limited liability company ("Fluence LLC"), which membership interests constitute and are defined as "Common Units" pursuant to the Third Amended and Restated Limited Liability Company Agreement of Fluence LLC, dated as of October 27, 2021, as such agreement may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time (the "LLC Agreement" and such membership interests, the "Common Units");

WHEREAS, the Corporation is contemplating an offering and sale of the shares of Class A common stock, par value $0.00001 per share, of the Corporation (the "Class A Common Stock") in an underwritten initial public offering (the "IPO") and using a portion of the net proceeds received from the IPO to purchase Common Units;

WHEREAS, pursuant to that certain Common Unit Subscription Agreement by and between the Corporation and Fluence LLC, dated as of October 27, 2021 (the "Common Unit Subscription Agreement"), the Corporation will hold Common Units;

WHEREAS, upon consummation of the transactions contemplated by the Common Unit Subscription Agreement, it is contemplated that the Corporation will be admitted as a member, and appointed as the sole managing member, of Fluence LLC;

WHEREAS, in connection with, and prior to, the issuance of Class A Common Stock of the Corporation to the underwriters in its initial public offering, it is anticipated that (a) AES, Siemens and the Corporation will enter into a series of related transactions pursuant to which AES and Siemens will become holders of the Corporation's Class B-1 Common Stock, par value $0.00001 per share (together with any Class B-2 Common Stock, the "Class B Stock") and (b) QIA shall, through the recapitalization of Fluence LLC contemplated by the LLC Agreement and certain related transactions, become a holder of shares of Class A Common Stock;

WHEREAS, immediately following the issuance of Class A Common Stock of the Corporation to the underwriters in its initial public offering, AES (together with its Permitted Transferees, in such capacity, the "AES Related Parties") will be the record holder of shares of Class B Stock;

WHEREAS, immediately following the issuance of Class A Common Stock of the Corporation to the underwriters in its initial public offering, Siemens (and together with its Permitted Transferees, in such capacity, the "Siemens Related Parties") will be the record holders of shares of Class B Stock;

**WHEREAS,** immediately following the issuance of Class A Common Stock of the Corporation to the underwriters in its initial public offering, QIA (and together with its Permitted Transferees, in such capacity, the "QIA Related Parties") will be the record holders of shares of Class A Common Stock; and

**WHEREAS**, in order to induce AES and Siemens (x) to approve the sale and issuance of Common Units by Fluence LLC to the Corporation and the appointment of the Corporation as the sole managing member of Fluence LLC in connection with the IPO and (y) to take certain other actions as shall be necessary to effectuate the transactions contemplated by the IPO, the parties hereto desire to set forth their agreement with respect to the matters set forth herein in connection with their respective investments in the Corporation.

**NOW, THEREFORE**, in consideration of the covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Corporation, AES, Siemens and QIA agree as follows:

**AGREEMENT**

Section 1.        Election of the Board of Directors.

(a)        Subject to this Section 1(a), the AES Related Parties shall be entitled to designate for nomination by the Board up to three (3) Directors from time to time (any Director designated by the AES Related Parties, a "AES Director"). The right of the AES Related Parties to designate for nomination the AES Directors as set forth in this Section 1(a) shall be subject to the following: (i) if at any time the AES Related Parties Beneficially Own, directly or indirectly, in the aggregate twenty percent (20%) or more of all issued and outstanding shares of Class A Common Stock (including for this purpose the Underlying Class A Shares), the AES Related Parties shall be entitled to designate for nomination three (3) AES Directors, (ii) if at any time the AES Related Parties Beneficially Own, directly or indirectly, in the aggregate less than twenty percent (20%) but at least ten percent (10%) or more of all issued and outstanding shares of Class A Common Stock (including for this purpose the Underlying Class A Shares), the AES Related Parties shall only be entitled to designate for nomination two (2) AES Directors, and (iii) if at any time the AES Related Parties Beneficially Own, directly or indirectly, in the aggregate less than ten percent (10%) but at least five percent (5%) or more of all issued and outstanding shares of Class A Common Stock (including for this purpose the Underlying Class A Shares), the AES Related Parties shall only be entitled to designate for nomination one (1) AES Director. The AES Related Parties shall not be entitled to designate for nomination any AES Directors in accordance with this Section 1(a) if at any time the AES Related Parties Beneficially Own, directly or indirectly, in the aggregate less than five percent (5%) of all issued and outstanding shares of Class A Common Stock (including for this purpose the Underlying Class A Shares).

2

(b)       Subject to this <u>Section 1(b)</u>, the Siemens Related Parties shall be entitled to designate for nomination by the Board up to three (3) Directors from time to time (any Director designated by the Siemens Related Parties, a "<u>Siemens Director</u>"). The right of the Siemens Related Parties to designate for nomination the Siemens Directors as set forth in this <u>Section 1(b)</u> shall be subject to the following: (i) if at any time the Siemens Related Parties Beneficially Own, directly or indirectly, in the aggregate twenty percent (20%) or more of all issued and outstanding shares of Class A Common Stock (including for this purpose the Underlying Class A Shares), the Siemens Related Parties shall be entitled to designate for nomination three (3) Siemens Directors, (ii) if at any time the Siemens Related Parties Beneficially Own, directly or indirectly, in the aggregate less than twenty percent (20%) but at least ten percent (10%) or more of all issued and outstanding shares of Class A Common Stock (including for this purpose the Underlying Class A Shares), the Siemens Related Parties shall only be entitled to designate for nomination two (2) Siemens Directors and (iii) if at any time the Siemens Related Parties Beneficially Own, directly or indirectly, in the aggregate less than ten percent (10%) but at least five percent (5%) or more of all issued and outstanding shares of Class A Common Stock (including for this purpose the Underlying Class A Shares), the Siemens Related Parties shall only be entitled to designate for nomination one (1) Siemens Director. The Siemens Related Parties shall not be entitled to designate for nomination any Siemens Directors in accordance with this <u>Section 1(b)</u> if at any time the Siemens Related Parties Beneficially Own, directly or indirectly, in the aggregate less than five percent (5%) of all issued and outstanding shares of Class A Common Stock (including for this purpose the Underlying Class A Shares).

(c)       Subject to this <u>Section 1(c)</u>, the QIA Related Parties shall be entitled to designate for nomination by the Board one (1) Director from time to time (any Director designated by the QIA Related Parties, a "<u>QIA Director</u>") if at any time the QIA Related Parties Beneficially Own, directly or indirectly, in the aggregate five percent (5%) or more of all issued and outstanding shares of Class A Common Stock (including for this purpose the Underlying Class A Shares). The QIA Related Parties shall not be entitled to designate for nomination a QIA Director in accordance with this <u>Section 1(c)</u> if at any time the QIA Related Parties Beneficially Own, directly or indirectly, in the aggregate less than five percent (5%) of all issued and outstanding shares of Class A Common Stock (including for this purpose the Underlying Class A Shares).

(d)       Subject to <u>Section 1(a)</u>, <u>Section 1(b)</u> and <u>Section 1(c)</u>, as of the date hereof, each of AES, Siemens and QIA hereby agree to vote, or cause to be voted, all outstanding shares of Class A Common Stock and Class B Stock, as applicable, held by the AES Related Parties, Siemens Related Parties and QIA Related Parties as of the date hereof, at any annual or special meeting of stockholders of the Corporation at which Directors of the Corporation are to be elected or removed, or to take all Necessary Action to cause the election or removal of the AES Directors, Siemens Directors and QIA Director as a Director, as provided herein and to implement and enforce the provisions set forth in <u>Section 3</u>.

(e)       So long as the Corporation qualifies as a "controlled company" for purposes of Stock Exchange rules, the Corporation may elect to be a "controlled company" for purposes of Stock Exchange rules, and will disclose in its annual meeting proxy statement that it is a "controlled company" and the basis for that determination. If the Corporation ceases to qualify as a "controlled company" for purposes of Stock Exchange rules, each Stockholder and the Corporation will take whatever Necessary Action may be reasonably necessary in relation to such party, if any, to cause the Corporation to comply with Stock Exchange rules as then in effect within the timeframe for compliance available under such rules.

3